

October 20, 2017

Floyd Landis
Chief Executive Officer
Floyd's of Leadville Inc.
1101 Poplar
Leadville, CO  80461

Dear Floyd,

This letter (together with Exhibits A, B, and C annexed hereto and made a part hereof, all of which taken together constitute this "Engagement Agreement" or "Agreement") confirms our complete understanding with respect to the retention of Alexander Capital, LP ("Alexander"), a registered broker/dealer as exclusive placement agent and financial advisor to Floyd's of Leadville LLC (the "Company") in connection with a private placement of up to $2,000,000 (the "Placement") in senior secured debt (the "Securities"). The terms of the Placement shall be subject to mutual agreement of the Company and each investor in the Placement.

Upon the terms and subject to the conditions set forth hereinafter, the parties hereto agree as follows:

1. Appointment.  The Company hereby retains Alexander, and Alexander hereby agrees to act as the Company's exclusive placement agent and financial advisor in connection with the Placement and the financial advisory services as more specifically set forth in paragraph 2 below, effective as of the date hereof (the "Effective Date").  For avoidance of doubt, the Company is nor prohibited from continuing discussions with any investor with whom the Company is currently in discussion with respect to a possible debt or equity financing outside of the Placement, and if a transaction with such an investor is consummated, no Placement Success Fee, as defined below, shall be due.

2. Scope and Certain Conditions of Services.  The Company hereby retains Alexander to consult with and advise the Company with respect to the Placement and anything incidental thereto, as directed by the Company.  The Company expressly acknowledges and agrees that the obligations of Alexander hereunder with respect to the Placement are on a reasonable best efforts basis only and that the execution of this Engagement Agreement does not constitute a commitment by Alexander to provide financing to the Company and does not ensure the success of securing any financing on behalf of the Company. Alexander may rely on other broker-dealers who are members of the Financial Investment Regulatory Authority to participate in placing a portion of the Financing, including, without limitation, such other broker-dealers as Alexander may determine with the prior written consent of the Company, such consent not to be unreasonably withheld.  The Company shall not contact nor solicit potential investors with respect to the Placement and the Company shall refer all inquiries and offers received with respect to the Placement to Alexander.

-

**EXHIBIT 1**

3. <u>Fees and Compensation</u>.  In consideration for the services rendered by Alexander hereunder, the Company agrees to pay Alexander the following fees and other compensation:

   a. A fee (the "Placement Success Fee"), payable upon the closing of the Placement in connection with the Proposed Transaction and actual receipt of funds by the Company:

      i. For senior and junior debt, a cash fee equal to ten percent (10%) of the net proceeds including Unfunded Commitments (as defined herein) of the Placement received by the Company. "Unfunded Commitments" includes, in the case of a revolving line of credit, delayed draw loan, or other unfunded lending commitment, the total funded amount.  Commitments to fund in the future and commitments subject to conditions precedent will be subject to a Placement Fee when and if the funds are actually received by the Company. The Placement Success Fee is due and payable to Alexander immediately upon the closing of the Placement from cash proceeds of the Placement and shall be disbursed directly to Alexander simultaneously with the delivery of the cash proceeds of the Placement to the Company, with additional Placement Success Fees due and payable when those funds are received by the Company.

   If the Financing is consummated by means of more than one closing, Alexander shall be entitled to the fees provided herein with respect to the net proceeds for each such closing at the time those funds are received by the Company.

   b. The Company agrees to reimburse Alexander for its reasonable expenses within 10 business days of the Company's receipt of detailed receipts supporting such expenses, not to exceed $1,000 in the aggregate without prior approval by the Company.  In the event the Placement includes instruments or arrangements not contemplated in this Agreement, then the Company agrees to negotiate with Alexander in good faith the fees due to Alexander.

4. <u>Term of Retention.</u>  The initial term of retention shall expire on the earlier of the (a) ninety days (90) from the date of execution of this Agreement and (b) the receipt of $2,000,000 by the Company in the Placement (the "Initial Term"). In the event, however, that the Company signs a conditional commitment letter, letter of interest, term sheet or commitment letter procured by Alexander during the Initial Terms, the exclusivity term shall extend through closing of the Placement, or until mutual agreement in writing between the Company and lender(s) or investor(s) not to proceed with the placement (the "Extended Term"). The Company agrees not to engage in any negotiations with any alternative financing or investment sources for the Placement during a): the Initial Term and, b) the Extended Term, and acknowledges that this would be a violation of the terms herein. Notwithstanding anything herein to the contrary, the obligation to pay the Fees and Compensation set forth in paragraph 3(a) and the Expenses as set forth in paragraph 3(b) shall survive any termination or expiration of this Engagement Agreement. Moreover, it is expressly understood and agreed by the parties hereto that any financing, whether debt or equity, of the Company, secured or placed within twelve (12) months of the termination or expiration of this Engagement Agreement with any investors, previously approved by the Company in writing, with whom a) Alexander has executed a confidentiality, non-disclosure or similar agreement pertaining to the Company, and  b) was previously identified in writing by Alexander to the Company and approved by the Company in writing while this Engagement Agreement was in effect (including those referred by the Company), shall result in such fees and compensation being due and payable by the Company to Alexander as required by paragraph 3 of this Engagement Agreement upon the consummation of such financing.  This Engagement Agreement will continue month-to-month following the expiration of the then applicable term unless cancelled by ten (10) business day's prior written notice.

**EXHIBIT 1**

5.     <u>Due Diligence.</u>  The role of Alexander as placement agent and financial advisor to the Company is subject to and contingent upon the satisfactory completion of a due diligence review of, among other things, the Company's assets, business, future prospects and current and projected financial condition.  If at the completion of its due diligence review Alexander is not satisfied with the results of its due diligence, this Engagement Agreement shall be immediately terminated by Alexander by providing written notice to the Company to that effect.  In the event of such termination, the Company shall have no further obligations to Alexander under this Agreement, including, without limitation, any obligation for payment of any fees.

6.     <u>Right of First Offer.</u>  If the Company closes a Placement commencing on or before the expiration of the Extended Term, subject to the fiduciary obligations of the Company's board of directors, Alexander shall have a right of first offer on market terms for a period of six (6) months following the closing of such Placement whereby the Company will offer Alexander the first opportunity to act as lead underwriter or lead placement agent and to provide any U.S. going-public financing arrangements to the Company, if any, to be determined at that time; provided, however, the Company may accept, financing from investors in the Company without paying any commissions or fees to Alexander.  After such period, the Company's obligation under this Section 6 shall terminate.

7.     <u>Public Announcements.</u>  Prior to any press release or other public disclosure relating to services hereunder which are legally permitted, the Company and Alexander shall confer and reach agreement upon the contents of any such disclosure.

8.     <u>Offers and Sales Only to Institutional and Accredited Investors.</u>   Offers and sales of any securities by the Company in connection with the Placement shall be made only to "qualified institutional buyers", as such term is defined in Rule 144A under the securities Act of 1933, as amended (the "Act"), and/or "accredited investors", as such term is defined in Rule 501 (a) of Regulation D promulgated under the Act.

9.     <u>No General Solicitation.</u>  Any offers made in connection with the placement of the Securities will be made only to prospective purchasers on an individual basis and no general solicitation or general advertising in any form will be used to place the Securities.

10.     <u>Governing Law; Jurisdiction; Waiver of Jury Trial</u>.  This Agreement (including all exhibits hereto) shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements made and to be fully performed therein, without regard to conflicts of law principles, as more specifically set forth in Exhibit C. The Company irrevocably submits to the exclusive jurisdiction of any State or Federal court sitting in New York County, New York for the purpose of any suit, action or other proceeding arising out of this Agreement, or any of the agreements or transactions contemplated hereby, which is brought by or against the Company, and agrees that service of process in connection with any such suit, action or proceeding may be made upon the Company in accordance with <u>Exhibit C </u>hereof.  The parties hereby expressly waive all rights to trial by jury in any suit, action or proceeding arising under this Agreement.

11.     <u>Amendments</u>.  This Agreement may not be modified or amended except in a writing duly executed by the parties hereto.

12.     <u>Successors and Assigns</u>.  The benefits of this Agreement shall inure to the parties hereto, their respective successors and assigns and to the indemnified parties hereunder and their respective successors and assigns, and the obligations and liabilities assumed in this Agreement shall be binding upon the parties hereto and their respective successors and assigns.  Notwithstanding

# EXHIBIT 1

Floyd's of Leadville Inc.
Page 4

anything contained herein to the contrary, neither Alexander nor the Company shall assign any of its obligations hereunder without the prior written consent of such other party.

13. <u>Counterparts.</u>  For the convenience of the parties, this Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original instrument, but all of which, taken together, shall constitute one and the same agreement.  Facsimile signatures shall be deemed originals for all purposes hereunder.

This Engagement Agreement constitutes the entire understanding and agreement between the parties hereto with respect to the subject matter hereof and there are no agreements or understandings with respect hereto which are not contained in this Engagement Agreement.  This Engagement Agreement may be modified only in writing signed by each party.

If the foregoing correctly sets forth out understanding with respect to the subject matter hereto, please confirm the same by executing and returning to us the duplicate copy of this Engagement Agreement. Alexander will remain committed to entering into this Agreement provided it is executed by you before October 30, 2017.

Very truly yours,

ALEXANDER CAPITAL, LP

By: _____
Title:

_____
Oct 23, 2017
Floyd Landis
Founder
Floyd's of Leadville Inc.

Agreed and Accepted

As of this _____ day of October 2017

*[Intentionally Left Blank]*

**EXHIBIT 1**

Floyd's of Leadville Inc.
Page 5

## EXHIBIT A
### STANDARD TERMS AND CONDITIONS

1. The Company shall promptly provide Alexander with all relevant information about the Company (to the extent available to the Company) that shall be reasonably requested or required by Alexander which information shall be true, accurate and correct in all material respects at the time furnished. The Company agrees it will promptly notify Alexander if any representation or warranty or information provided hereunder ceases to be accurate at any time during Alexander's engagement.

2. Alexander shall keep all information obtained from the Company strictly confidential except: (a) for information which is otherwise publicly available, or previously known to Alexander or was obtained by Alexander independently of the Company and without breach of Alexander' agreement with the Company; (b) Alexander may disclose such information to its affiliates, shareholders, officers, directors, representatives, agents, employees and attorneys, and to financial institutions, including prospective lenders and investors, but shall use its best efforts to ensure that all such persons will keep such information strictly confidential; (c) pursuant to any order of a court of competent jurisdiction or other governmental body (Alexander will give written notice to the Company of such order within forty-eight (48) hours of receipt of such order); and (d) upon prior written consent of the Company.

3. The Company recognizes that in order for Alexander to perform properly its obligations in a professional manner, it is necessary that Alexander be informed of and, to the extent practicable, participate in meetings and discussions between the Company, on the one hand, and investors and potential investors introduced relating to the matters covered by the terms of Alexander' engagement.

4. The Company agrees that any report or opinion, oral or written, delivered to it by Alexander is prepared solely for its confidential use and shall not be reproduced, summarized, or referred to in any public document or given or otherwise divulged to any other person, other than its employees and attorneys, without Alexander's prior written consent, except as may be required by applicable law or regulation, which consent shall not be unreasonably withheld or delayed.

5. The Company agrees to keep confidential the identity of prospective lenders and investors contacted pursuant to this Agreement, including those with whom the Company has direct contact or communication. The Company agrees to keep confidential the provisions and terms of all commitment letters, term sheets or financing proposals (if any) sourced pursuant to this Agreement until, a) accepted and duly executed by the Company and the lender or investor, and b) such disclosure is approved in writing by Alexander. Notwithstanding the provisions of this section, the Company acknowledges that commitment letters, term sheets or financing proposals (if any) sourced pursuant to this Agreement may contain additional terms which may be different or more restrictive than in this Agreement, and the Company agrees that this Agreement shall not supersede the terms of any commitment letters, term sheets or financing proposals.

6. No fee payable by the Company to any other financial advisor or lender shall reduce or otherwise affect any fee payable by the Company to Alexander.

7. The Company represents and warrants that; (a) it has full right, power and authority to enter into this Agreement and to perform all of its obligations hereunder; (b) the Agreement has been duly authorized and executed and constitutes a valid and binding agreement of the Company, enforceable in accordance with its terms, except as the same may be limited by bankruptcy, insolvency, moratorium, and other laws of general application affecting the enforcement of

**EXHIBIT 1**

creditors' rights; and (c) the execution and delivery of the Agreement and the consummation of the transactions contemplated hereby does not conflict with or result in a breach of (i) the Company's certificate of incorporation or by-laws or (ii) any material agreement to which the Company is a party by which any of their property or assets is bound.

8. The representations and warranties of the Company set forth herein shall survive the termination or expiration of the Agreement for a period of twelve months thereafter. Alexander shall have the benefit of, and shall be the intended third party beneficiary of, the identical representations and warranties provided to an investor(s) in a securities purchase agreement, subscription agreement, or similar document entered into in connection with a Placement.

9. Nothing contained in the Agreement shall be constituted to place Alexander and the Company in the relationship of partners or joint ventures. Neither Alexander nor the Company shall represent itself as the agent or legal representative of the other for any purpose whatsoever nor shall either have the power to obligate or bind the other in any manner whatsoever. Alexander in performing its services hereunder, shall at all times be an independent contractor.

10. The Agreement has been and is made solely for the benefit of Alexander, the Company and each of the persons, agents, employees, officers, directors and controlling persons referred to in Exhibit B and their respective heirs, executors, personal representatives, successors and assigns, and nothing contained in the Agreement shall confer any rights upon, nor shall this Agreement be construed to create any rights in, any person who is not a party to such Agreement, other than as set forth in this paragraph.

11. The rights and obligations of either party under this Agreement may not be assigned without the prior written consent of the other party hereto and any other purported assignment shall be null and void without force and effect.

12. Alexander represents and warrants to and covenants with the Company as follows: (a) it has full right, power and authority to enter into this Agreement and to perform all of its obligations hereunder; (b) the Agreement has been duly authorized and executed and constitutes a valid and binding agreement of Alexander, enforceable in accordance with its terms; (c) it possesses all applicable licenses required to held by it in order to perform its obligations hereunder; and (d) it will conduct the Placement in accordance with all applicable rules and regulations of FINRA and all applicable laws, including federal and state securities laws.

13. Each party affirms that neither it, nor any of its affiliates, is subject to any "Bad Actor" disqualification as set forth under Annex I.

14. All communications hereunder, except as may be otherwise specifically provided herein, shall be in writing and shall be mailed, hand delivered, or faxed and confirmed by letter or sent by overnight delivery service, to the party whom it is addressed at the following addresses or such other address as such party may advise the other in writing:

| | | |
|---|---|---|
| To the Company: | Floyd's of Leadville Inc.<br>1101 Poplar, Leadville, CO  80461<br>Attention: Floyd Landis, Chief Executive Officer | |
| To Alexander: | Alexander Capital, LP<br>17 State Street, 5th floor<br>New York, NY 10004<br>Attention:      Timothy Stack, CCO | Telephone: (212) 687-5650<br>Facsimile:   (212) 687-5649 |

# EXHIBIT 1

EXHIBIT B
INDEMNIFICATION

Recognizing that transactions of the type contemplated in this engagement sometimes result in litigation and that the role of Alexander Capital, LP is advisory, the Company agrees to indemnify and hold harmless Alexander and its affiliates and their respective officers, directors, employees, agents and controlling persons within the meaning of Section 15 of the Securities Act of 1933, as amended (the "Act") or Section 20(a) of the Securities Exchange Act and against any and all loss, charge, claim, damage, expense and liability whatsoever, including, but not limited to, all attorneys' fees and expenses (hereinafter a "Claim" or "Claims"), related to or arising in any manner out of, based upon, or in connection with (i) any untrue statement or alleged untrue statement of a material fact made by the Company or any omission or alleged omission of the Company to state a material fact required to be stated therein or necessary to make the statements therein not misleading or (ii) any transaction, proposal or any other matter (items (i) and (ii) being hereinafter referred to as a "Matter" or "Matters") contemplated by the engagement of Alexander hereunder, and will promptly reimburse Alexander for all expenses (including reasonable fees and expenses of legal counsel) as incurred in connection with the investigation of, preparation for or defense of any pending or threatened Claim related to or arising in any manner out of any Matter contemplated by the engagement of Alexander hereunder, or any action or proceeding arising there from (collectively, "Proceedings"), whether or not Alexander is a formal party to any such Proceeding. Notwithstanding the foregoing, the Company shall not be liable in respect of any Claims that a court of competent jurisdiction has judicially determined by final judgment (and the time to appeal has expired or the last right of appeal has been denied) resulted solely from the gross negligence or willful misconduct of an Indemnified Party. The Company further agrees that it will not, without the prior written consent of Alexander settle, compromise or consent to the entry of any judgment in any pending or threatened proceeding in respect of which indemnification may be sought hereunder (whether or not Alexander or any Indemnified Party is an actual or potential party to such Proceeding), unless such settlement, compromise or consent includes an unconditional release of Alexander hereunder from all liability arising out of such proceeding. Notwithstanding the foregoing, the Company shall not be obligated to indemnify any amount hereunder that exceeds the direct amount of damages incurred by Alexander pursuant to this Agreement.

Alexander agrees to indemnify and hold harmless the Company and its affiliates and their respective officers, directors, employees, agents and controlling persons within the meaning of Section 15 of the Securities Act of 1933, as amended (the "Act") or Section 20(a) of the Securities Exchange Act and against any and all loss, charge, claim, damage, expense and liability whatsoever, including, but not limited to, all attorneys' fees and expenses (hereinafter a "Claim" or "Claims"), related to or arising in any manner out of, based upon, or in connection with any untrue statement or alleged untrue statement of a material fact made by Alexander or any omission or alleged omission of Alexander to state a material fact required to be stated therein or necessary to make the statements therein not misleading and will promptly reimburse the Company for all expenses (including reasonable fees and expenses of legal counsel) as incurred in connection with the investigation of, preparation for or defense of any pending or threatened Claim related to or arising from such misstatement. Notwithstanding the foregoing, Alexander shall not be liable in respect of any Claims that a court of competent jurisdiction has judicially determined by final judgment (and the time to appeal has expired or the last right of appeal has been denied) resulted solely from the gross negligence or willful misconduct of the Company.

In order to provide for just and equitable contribution in any case in which (i) either the Company or Alexander (collectively referred to as an "Indemnified Party") is entitled to indemnification pursuant to this Engagement Agreement but it is judicially determined by the entry of a final judgment decree by a court of competent jurisdiction and the time to appeal has expired or the last right of appeal has been denied) that such indemnification may not be enforced in such case, or (ii) contribution may be required by the Company or Alexander in circumstances for which an Indemnified Party is otherwise entitled to

**EXHIBIT 1**

Floyd's of Leadville Inc.
Page 8

indemnification under the Agreement, then, and in each such case, the Company or Alexander shall contribute to the aggregate losses, Claims, damages and/or liabilities in an amount equal to the amount for which indemnification was held unavailable.  Notwithstanding the foregoing, Alexander shall not be obligated to contribute any amount hereunder that exceeds the amount of fees previously received by Alexander pursuant to this Agreement. In no event shall an Indemnified Party be entitled to receive consequential or punitive damages resulting from a breach or violation of this Agreement.

The Company and Alexander further agree that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company and Alexander for or in connection with Alexander's engagement hereunder except for Claims that a court of competent jurisdiction shall have determined by final judgment (and the time to appeal has expired or the last right of appeal has been denied) resulted solely from the gross negligence or willful misconduct of such Indemnified Party. The indemnity, reimbursement and contribution obligations of the Company set forth herein shall be in addition to any liability which the Company or Alexander may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Indemnified Party.

The indemnity, reimbursement and contribution provisions set forth herein shall remain operative and full force and effect regardless of (i) any withdrawal, termination or consummation of or failure to initiate or consummate any Matter referred to herein, (ii) any investigation made by or on behalf of any party hereto or any person controlling (within the meaning of Section 15 of the Securities act of 1933 as amended, or Section 20 of the Securities Exchange Act of 1934, as amended) any party hereto, (iii) any termination or the completion or expiration of this Engagement Agreement with Alexander and (iv) whether or not Alexander shall, or shall not be called upon to, render any formal or informal advice in the course of such engagement.

Unless otherwise defined, capitalized terms used herein shall have the meaning ascribed to them in the Engagement Agreement.

# EXHIBIT 1

EXHIBIT C
JURISDICTION

Each of the Company and Alexander hereby irrevocably; (a) submits to the jurisdiction of any court of the State of New York or any federal court sitting in the New York County, New York for the purposes of any suit, action or other proceeding arising out of the Agreement between the Company and Alexander which is brought by or against either party; (b) agrees that all claims in respect of any suit, action or proceeding may be heard and determined in any such court; and (c) to the extent that the Company or Alexander has acquired, or hereafter may acquire, any immunity from jurisdiction of any such court or from any legal process therein, each of them hereby waives, to the fullest extent permitted by law, such immunity.

Each of Alexander and the Company hereby waives, and the Company agrees not to assert in any such suit, action or proceeding, in each case, to the fullest extent permitted by applicable law, any claim that: (a) the Company is not personally subject to the jurisdiction of any such court; (b) it is immune from any legal process (whether through service or notice, attachment prior to judgment, attachment in the aid of execution, execution or otherwise) with respect to it or its property; (c) any such suit, action or proceeding is brought in an inconvenient forum; (d) the venue of any such suit, action or proceeding is improper; or (e) this Agreement may not be enforced in or by any such court.

Nothing in these provisions shall affect any party's right to serve process in any manner permitted by law or limit its rights to bring a proceeding in the competent courts of any jurisdiction or jurisdictions or to enforce any lawful manner a judgment obtained in one jurisdiction in any other jurisdiction.

ANNEX I

"Bad Actor" Disqualification
Rules 506(d)(1) and (2) of the Securities Act of 1933

(1) No exemption under this section shall be available for a sale of securities if the issuer; any predecessor of the issuer; any affiliated issuer; any director, executive officer, other officer participating in the Placement, general partner or managing member of the issuer; any beneficial owner of 20% or more of the issuer's outstanding voting equity securities, calculated on the basis of voting power; any promoter connected with the issuer in any capacity at the time of such sale; any investment manager of an issuer that is a pooled investment fund; any person that has been or will be paid (directly or indirectly) remuneration for solicitation of purchasers in connection with such sale of securities; any general partner or managing member of any such investment manager or solicitor; or any director, executive officer or other officer participating in the Placement of any such investment manager or solicitor or general partner or managing member of such investment manager or solicitor:

     (i)     Has been convicted, within ten years before such sale (or five years, in the case of issuers, their predecessors and affiliated issuers), of any felony or misdemeanor:

     (A)     In connection with the purchase or sale of any security;

     (B)     Involving the making of any false filing with the Commission; or

     (C)     Arising out of the conduct of the business of an underwriter, broker, dealer, municipal securities dealer, investment adviser or paid solicitor of purchasers of securities;

     (ii)     Is subject to any order, judgment or decree of any court of competent jurisdiction, entered within five years before such sale, that, at the time of such sale, restrains or enjoins such person

**EXHIBIT 1**

from engaging or continuing to engage in any conduct or practice:

    (A)    In connection with the purchase or sale of any security;

    (B)    Involving the making of any false filing with the Commission; or

    (C)    Arising out of the conduct of the business of an underwriter, broker, dealer, municipal securities dealer, investment adviser or paid solicitor of purchasers of securities;

(iii)    Is subject to a final order of a state securities commission (or an agency or officer of a state performing like functions); a state authority that supervises or examines banks, savings associations, or credit unions; a state insurance commission (or an agency or officer of a state performing like functions); an appropriate federal banking agency; the U.S. Commodity Futures Trading Commission; or the National Credit Union Administration that:

    (A)    At the time of such sale, bars the person from:

        (1)    Association with an entity regulated by such commission, authority, agency, or officer;

        (2)    Engaging in the business of securities, insurance or banking; or

        (3)    Engaging in savings association or credit union activities; or

    (B)    Constitutes a final order based on a violation of any law or regulation that prohibits fraudulent, manipulative, or deceptive conduct entered within ten years before such sale;

(iv)    Is subject to an order of the Commission entered pursuant to section 15(b) or 15B(c) of the Securities Exchange Act of 1934 (15 U.S.C. 78 *o* (b) or 78 *o* -4(c)) or section 203(e) or (f) of the Investment Advisers Act of 1940 (15 U.S.C. 80b-3(e) or (f)) that, at the time of such sale:

    (A)    Suspends or revokes such person's registration as a broker, dealer, municipal securities dealer or investment adviser;

    (B)    Places limitations on the activities, functions or operations of such person; or

    (C)    Bars such person from being associated with any entity or from participating in the Offering of any penny stock;

(v)    Is subject to any order of the Commission entered within five years before such sale that, at the time of such sale, orders the person to cease and desist from committing or causing a violation or future violation of:

    (A)    Any scienter-based anti-fraud provision of the federal securities laws, including without limitation section 17(a)(1) of the Securities Act of 1933 (15 U.S.C. 77q(a)(1)), section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. 78j(b)) and 17 CFR 240.10b-5, section 15(c)(1) of the Securities Exchange Act of 1934 (15 U.S.C. 78 *o* (c)(1)) and section 206(1) of the Investment Advisers Act of 1940 (15 U.S.C. 80b-6(1)), or any other rule or regulation thereunder; or

    (B)    Section 5 of the Securities Act of 1933 (15 U.S.C. 77e).

# EXHIBIT 1

Floyd's of Leadville Inc.
Page 11

   (vi) Is suspended or expelled from membership in, or suspended or barred from association with a member of, a registered national securities exchange or a registered national or affiliated securities association for any act or omission to act constituting conduct inconsistent with just and equitable principles of trade;

   (vii) Has filed (as a registrant or issuer), or was or was named as an underwriter in, any registration statement or Regulation A offering statement filed with the Commission that, within five years before such sale, was the subject of a refusal order, stop order, or order suspending the Regulation A exemption, or is, at the time of such sale, the subject of an investigation or proceeding to determine whether a stop order or suspension order should be issued; or

   (viii) Is subject to a United States Postal Service false representation order entered within five years before such sale, or is, at the time of such sale, subject to a temporary restraining order or preliminary injunction with respect to conduct alleged by the United States Postal Service to constitute a scheme or device for obtaining money or property through the mail by means of false representations.

(2) Paragraph (1) of this section shall not apply:

   (i) With respect to any conviction, order, judgment, decree, suspension, expulsion or bar that occurred or was issued before September 23, 2013;

   (ii) Upon a showing of good cause and without prejudice to any other action by the Commission, if the Commission determines that it is not necessary under the circumstances that an exemption be denied;

   (iii) If, before the relevant sale, the court or regulatory authority that entered the relevant order, judgment or decree advises in writing (whether contained in the relevant judgment, order or decree or separately to the Commission or its staff) that disqualification under paragraph (1) of this section should not arise as a consequence of such order, judgment or decree; or

   (iv) If the issuer establishes that it did not know and, in the exercise of reasonable care, could not have known that a disqualification existed under paragraph (1) of this section.

(3) For purposes of paragraph (1) of this section, events relating to any affiliated issuer that occurred before the affiliation arose will be not considered disqualifying if the affiliated entity is not:

   (i) In control of the issuer; or

   (ii) Under common control with the issuer by a third party that was in control of the affiliated entity at the time of such events.

**EXHIBIT 1**