UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FLOYD'S OF LEADVILLE, INC., N/K/A VALUED, INC.,<br><br>     Plaintiff,<br><br>     *vs.*<br><br>ALEXANDER CAPITAL, L.P., NESA MANAGEMENT, LLC, JOSEPH ANTHONY AMATO, ROCCO GERARD GUIDICIPIETRO, JONATHAN GAZDAK, GREGORY HURLEY, HOWARD DASILVA, RONALD BARRIE CLAPHAM, MARK LEONARD, THIEN TRUONG, PROVISION HOLDING, INC., TIMOTHY KELLY, and THREE DDD, LLC,<br><br>     Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS CLAIMS AGAINST DEFENDANT GREGORY HURLEY**<br><br>**[1:22-cv-03318-MKV]** |

# INTRODUCTION[1]

  Defendant, Gregory Hurley, requests that the Court dismiss Plaintiff's claims against defendant under Rules 9(b) and 12(b)(6), Fed. R. Civ. P., on the grounds that the pleadings do not state a claim upon which relief can be granted. The Complaint does not meet the heightened pleading standard required for fraud claims and aiding and abetting claims sounding in fraud. Plaintiff also fails to adequately plead multiple elements required to state a claim against defendant Hurley, upon which relief can be granted, for tortious interference of prospective economic relations and civil conspiracy.

---

[1] Portions of this document were prepared with assistance from the New York Legal Assistance Group's Clinic for Pro Se Litigants in the SDNY.

**STATEMENT OF FACTS**

Plaintiff, Floyd's of Leadville, Inc. n/k/a/ Valued, Inc. ("FOL") makes the following allegations against Defendant Hurley:

- He used his "position [as a member of FOL's Advisory Board] to actively plot a hostile takeover of FOL and to make plans to run FOL's business after they and Alexander Capital acquired FOL's assets in litigation" and "upon information and belief, did so with full knowledge of Alexander Capital's fraud against FOL" Complaint, ¶¶ 156, 232

- "Hurley advised Alexander Capital not to give FOL contact information for the investors" and "upon information and belief…the Advisory Board instructed the other investors not to accept any payment from FOL, not to respond to FOL's offer, and not to negotiate with FOL" ¶¶ 159-161

- Hurley is part owner of Redemption Holdings, Inc. ("Redemption"), which was formed to "acquire FOL's assets," ¶ 164, and he worked with some of the co-defendants to "convince the investors to assign their rights in the investments to Redemption" ¶ 167

- "If Redemption were to succeed in acquiring FOL's assets," the "co-conspirators" would secure 80% of the ultimate value of that business" which "would be worth more than $110 million" ¶ 169

- He "knew about Alexander Capital and Gazdak's breach of [fiduciary] duties" and substantially assisted the breach by, *inter alia*, agreeing to form and join Redemption, accepting confidential FOL information while on the Advisory Board, and agreeing to serve as agent for the investors and manager of a newly formed company ¶¶ 246-247

Plaintiff relies on these allegations to support claims against Hurley for aiding and abetting fraud ("Count V"), aiding and abetting breach of fiduciary duty ("Count VII"), intentional interference

with prospective economic relations ("Count VIII"), and civil conspiracy ("Count XII"). Notably, the allegations about Hurley are speculative and conclusory, with many of them made solely "upon information and belief." *See, e.g.*, ¶¶ 145,155, 161.

## **ARGUMENT**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. A court "need not accord legal conclusions, deductions or opinions couched as factual allegations" a presumption of truthfulness, and merely listing out the elements of a claim does not suffice in meeting the pleading requirements of the claim. *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). A well-pleaded complaint requires more than a formulaic recitation of a cause of action's elements. *Twombly*, 550 U.S. at 548.

The complaint here makes conclusory assertions that are not supported by concrete factual allegations. Plaintiff's complaint cannot survive a motion to dismiss where, as here, none of Plaintiff's well-pleaded facts regarding defendant's actions allows the court to infer more than the mere possibility of misconduct. *Lynch v. City of New York*, 952 F.3d 67, 71, 2020 U.S. App. LEXIS 6772, *1 (2d Cir. 2020).

I. PLAINTIFF FAILS ADEQUATELY TO PLEAD A CLAIM AGAINST HURLEY FOR AIDING AND ABETTING FRAUD

A claim sounding fraud must satisfy the heightened pleading requirements of Fed. R. Civ.

P. 9(b) by stating with particularity the circumstances constituting fraud. The Second Circuit has read Rule 9(b) to require that a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)). The heightened pleading requirement of Rule 9(b) applies equally to "claims alleging aiding and abetting fraud" and "claims alleging aiding and abetting breach of fiduciary duty sounding in fraud." *Berman v. Morgan Keegan & Co.*, 2011 U.S. Dist. LEXIS 27867, *20, 2011 WL 1002683 (citing *Wight v. BankAmerica Corp.*, 219 F.3d 79, 90 (2d Cir. 2000); *Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240, 245 (S.D.N.Y. 1996)). Under New York law, in order to properly plead claim for aiding and abetting fraud, the complaint must allege: "(1) the existence of an underlying fraud; (2) knowledge of this fraud on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in achievement of the fraud." *Berman*, 2011 U.S. Dist. LEXIS 27867 at *26. Actual knowledge regarding the underlying fraud is required for aiding and abetting claims. *See Kolbeck v. LIT America, Inc.*, 939 F. Supp. at 246.

  Plaintiff's non-speculative factual allegations against defendant Hurley may be summarized in one sentence: Hurley was an investor and advisory board member, had access to confidential information, and refused to sign a non-disclosure agreement. ¶¶ 145, 148. The complaint concedes that "the ostensible purpose" of the advisory board "was to advise FOL on how to improve its financial condition." ¶ 147. However, the complaint makes the conclusory claim, without pleading any specific supporting facts, that the "real purpose was to pressure FOL to turn over majority control of the company," ¶ 148, and that the Advisory Board members "frequently had secret conversations with Gazdak and Alexander Capital about their plans to

4

gain control of FOL." ¶ 150. Plaintiff concludes that Hurley used his position on the advisory board to "actively plot a hostile takeover … upon information and belief…with full knowledge of defendant Alexander Capital's fraud against plaintiff," and that Hurley sought to aid and abet that fraud. ¶ 156.

These allegations are conclusory and therefore insufficient to support a fraud-based claim against Hurley. Plaintiff provides no concrete allegations about how they know the supposed real purpose of the advisory board was to take over the company; how they know that Hurley supposedly had secret conversations with Gazdak and Alexander Capital about plans to take control of FOL; what the basis is for the allegation that on information and belief Hurley had full knowledge of Alexander Capital's alleged fraud against Plaintiff. The complaint points to nothing Hurley ever said or did to demonstrate his supposed knowledge of the alleged fraud. The complaint provides no examples of how Hurley supposedly used his advisory board position to actively plot a hostile takeover. These speculative and conclusory allegations fall far short of the specificity required to adequately plead a claim sounding in fraud.

The complaint alleges that Hurley "knew that Alexander Capital had promised the Investors terms different than those represented to FOL," ¶ 156, and that he knew about the alleged fraudulent scheme. ¶ 232. Here, too, the complaint lacks the requisite specificity to support the allegation about Hurley's supposed knowledge. The complaint contains no indication of how Plaintiff came to believe that Hurley supposedly knew that Alexander Capital had promised the investors different terms than those represented to FOL, how Hurley supposedly came to learn this, or what Hurley did as a result of this supposed knowledge. Simply stating that Hurley was aware of an alleged fraud, without any support, is not a sufficient basis for a fraud claim.

5

The complaint asserts that the "co-conspirators" stood to gain "80% of" FOL's lifetime value, "if Redemption were to succeed in acquiring FOL's assets" and if they used such assets to run a CBD business in FOL's place. ¶¶ 169, 233. But the allegation that Hurley would have had a profit motive to support the alleged fraudulent scheme is insufficient to support an inference that he had actual knowledge of the alleged fraud or that he acted to further it. *See Mazzaro de Abreu v. Bank of Am. Corp.*, 525 F. Supp. 2d 381, 393 (S.D.N.Y. 2007) (holding that allegations that defendant had an interest in substantial bank fees was insufficient to create a reasonable inference of fraudulent intent and actual knowledge of the underlying fraud).

The complaint also fails to allege with specificity that Hurley acted in furtherance of the alleged fraudulent scheme. The actions the complaint points to that Plaintiff says furthered the alleged fraudulent scheme are routine business activities by Hurley. These business activities by Hurley, such as his agreement "to form and join the group of Redemption," his acceptance of "confidential and proprietary FOL information … while serving on the Advisory Board," and his "agreeing to serve as an agent for the investors" ¶ 233 are consistent with lawful business practices. Stating in conclusory fashion that Hurley undertook these activities to further the alleged fraudulent scheme is not sufficient to support claims sounding in fraud.

Likewise, the complaint's allegations that Hurley agreed to use Redemption Holdings, Inc., as a vehicle to defraud plaintiff, ¶¶ 164, 233, are similarly insufficient to support the fraud-based claims against Hurley. The complaint contains no description of when and under what circumstances Hurley supposedly agreed to use Redemption Holdings to defraud plaintiff. The complaint merely points out that "all but a few" investors decided to sign over their notes and rights to Redemption. ¶ 168. The only support for the fraud claim is that Hurley and some others

made a pitch to the investors to assign their rights to Redemption.² Without pleading specific facts to the effect, these wholly lawful business transactions do not support a conclusion that Hurley's actions with respect to Redemption were fraudulent. Under these circumstances, the claims against Hurley sounding in fraud should be dismissed. *See Krys v Pigott*, 749 F3d 117, 131 (2d Cir. 2014) (affirming dismissal of a complaint where plaintiff did not assert facts to show that defendant knew or even had reason to suspect that business decisions were for unlawful reasons).

II.   PLAINTIFF FAILS TO PLEAD WITH ADEQUATE SPECIFICITY THAT HURELY AIDED AND ABETTED FIDUCIARY BREACHES

A claim for aiding and abetting a breach of fiduciary duty under New York law requires: (1) a breach by a fiduciary of obligations to another, (2) knowing participation by defendant in the breach, and (3) damages to plaintiff as a result of the breach. *Kolbeck*, 939 F. Supp. at 245 (citing *S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843, 847-48 (2d Cir. 1987)). Rule 9(b)'s particularity requirements also apply to aiding and abetting claims where the underlying violations are based on fraud, as is the case in this complaint. *S & K Sales Co. v. Nike, Inc.*, 816 F.2d at 847-48. Plaintiff therefore must allege concrete facts showing actual knowledge by Hurley. Constructive knowledge on the part of the aider and abettor of the primary wrong is not sufficient. *Mazzaro de Abreu v. Bank of Am. Corp.*, 525 F. Supp. 2d at 393.

Plaintiff alleges that Alexander Capital and Gazdak breached their fiduciary duties by fabricating documents and misrepresenting information, ¶ 239, but Plaintiff fails adequately to allege that Hurley had the requisite actual knowledge of the alleged breach. Despite the complaint's bare assertion that Hurley "knowingly and substantially assisted" the alleged

---

² This is further discussed under the "Intentional Interference with Prospective Economic Relations" claim.

breaches of fiduciary duty by Alexander Capital and Gazdak, ¶ 247, it never describes the basis for Hurley's supposed knowledge. There are no allegations about how Hurley became aware of the alleged fiduciary breaches. "[F]ailure to allege sufficient facts to support the inference that the aider and abettor had actual knowledge … warrants dismissal of the claim at the pleading stage." *Krys*, 749 F.3d at 127.

Plaintiff also fails to allege any concrete facts supporting a conclusion that Hurley substantially furthered the alleged fiduciary breaches. Plaintiff alleges (¶ 247) that Hurley assisted the claimed fiduciary breaches by "making false and misleading statements to the investors to solicit them to assign their lending documents to Redemption," which prevented Plaintiff from negotiating with the investors on an individual basis. However, Plaintiff does not identify what precisely Hurley said that was supposedly false, when he made the allegedly false statements and specifically to whom. Plaintiff also alleges that Hurley furthered the claimed fiduciary breaches by agreeing to run a rival CBD company after Redemption acquired FOL's assets, supposedly improperly. However, such an agreement by Hurley would be wholly consistent with lawful business activities, and as such cannot serve as the predicate for a claim of aiding and abetting a breach of fiduciary duty, particularly where, as here, there are no adequate allegations that Hurley was aware of the alleged fiduciary breaches.

III.   PLAINTIFF FAILS ADEQUATELY TO PLEAD CLAIMS OF INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS AGAINST HURLEY

To state a claim for intentional interference with a prospective economic relationship, a plaintiff must allege: (1) business relations with a third party; (2) defendants' interference with those business relations; (3) that defendants used dishonest, unfair, or improper means or acted with the sole purpose of harming the plaintiff; and (4) injury to the relationship. *Huizenga v. NYP*

8

*Holdings, Inc.*, 2019 U.S. Dist. LEXIS 65059, *9 (citing *Purgess v. Sharrock*, 33 F.3d 134, 141 (2d Cir. 1994)).

Plaintiff supports the claim that Hurley interfered with prospective economic relations by alleging that Hurley formed a company, Redemption, and falsely made statements to investors regarding receiving payments on their investments from FOL. ¶ 253. These allegations are insufficient to support a claim of interference with prospective economic relations. To begin with, the complaint fails to identify the supposed statements made by Hurley with any kind of specificity (there is no indication of what he said, when and to whom). Moreover, it does not include nor demonstrate any interactions Hurley had with any other investors before the notes were assigned to Redemption, .and thus it does not adequately allege facts in support of the second element of the cause of action.

Plaintiff also alleges (¶ 147) that it could not renegotiate the lending documents because it had no direct line of communication with the investors due to Hurley advising Alexander Capital to withhold such access. Again, nothing in the complaint demonstrates that Hurley advised as such or even had such influence over Alexander Capital. Additionally, for this alleged advice by Hurley to support a claim for tortious interference, plaintiff must allege facts demonstrating that Hurley's advice constituted "wrongful means" or that "acted solely out of malice." *Waldbaum v. Laufer Delena Cadicina Jensen & Boyd, LLC*, No. 18-CV-4225, 2019 U.S. Dist. LEXIS 166869, 2019 WL 4735386, at *5 (S.D.N.Y. Sept. 27, 2019). The allegations in the complaint support neither a conclusion that Hurley engaged in wrongful means or that he acted solely out of malice.

Plaintiff suggests that Hurley used wrongful means in communicating with investors, alleging that Hurley used "pressure tactics, misleading statements, and lies," ¶ 253, to encourage

investors to end their relationship with plaintiff. However, these allegations are insufficient because the complaint never describes the substance of the supposed pressure tactics or the content of the alleged misrepresentations (why they are false, or when and to whom they were made) or the nature of the pressure tactics. "[W]hile misrepresentations can be the basis for a tortious interference with prospective economic advantage claim, … the Court must perforce know what the misrepresentations are in order to assess whether the alleged misrepresentations, accepted as true, suffice to state such a claim." *Fifth St. Fin. Corp. v Toll*, 2013 US Dist LEXIS 100656, at *12 (S.D.N.Y. July 17, 2013. Similarly, while the New York Court of Appeals has indicated that extreme and unfair economic pressure may constitute wrongful means, *Carvel Corp. v Noonan*, 3 N.Y.3d 182, 192 (2004), without a description of the acts that supposedly caused this pressure, there is no basis for the court to conclude that the alleged pressure rose to the level of wrongful means.

   Likewise, plaintiff's bare assertion Hurley acted "maliciously" (¶ 258) does not suffice to support the third element of the claim. *See Campeggi v. Arche Inc.*, 2016 U.S. Dist. LEXIS 124814, 2016 WL 4939539, at *9 (SDNY Sept. 14, 2016). Nor is it enough to simply state that Hurley stood to gain some profit, with no other factual allegations to show the requisite malicious intent. The allegations that Hurley communicated with investors to encourage them to assign their investments to Redemption so that they could recover outstanding principal and interest owed by FOL, ¶ 253, are equally compatible with normal economic self-interest as an investor. If a "defendant's 'motive for interfering… was normal economic self-interest,' the defendant did not use unlawful means." *MMS Trading Co. PTY Ltd. v. Hutton Toys, LLC*, 2021 U.S. Dist. LEXIS 60376, *41, 2021 WL 1193947 (E.D.N.Y. Mar. 29, 2021, No. 20-CV-1360 (MKB)).

Finally, plaintiff claims injury on the grounds that FOL "was prevented from renegotiating the lending documents and entering new contractual business relationships" with investors and was denied "an opportunity to renegotiate the investments on terms that were mutually acceptable to FOL." ¶ 256. This allegation is defective. Plaintiff's alleged injury is simply a disappointed expectation of "direct[ly and separately] negotiat[ing] with the investors", ¶ 160, assumingly on self-serving, advantageous terms. Plaintiff does not allege, beyond the speculative potential of their expectations, that such "mutually acceptable" terms would have been negotiated in the absence of the collective transfer, and therefore plaintiff has not adequately pleaded injury. *See Clean Coal Tech., Inc. v Leidos, Inc.*, 377 F Supp 3d 303, 322 (S.D.N.Y. 2019) (stating that a plaintiff must also establish causation by demonstrating that plaintiff would have entered into an economic relationship but for the defendant's wrongful conduct). In fact, plaintiff concedes that they did reach out to "all the investors it could identify" to negotiate with them, and these allegations stem from their disappointment that some of those investors refused their offer. ¶ 160 If the simple hope or inchoate idea of some economic prospect was sufficient to show an injury to a relationship, anyone would be able to plead injury predicated on their disappointed hopes.

IV.  **PLAINTIFF FAILS TO ADEQUATELY PLEAD FACTS SHOWING THAT DEFENDANT HURLEY PARTICIPATED IN A CIVIL CONSPIRACY**

Under New York law, there is no independent action for civil conspiracy. *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 237 (2d Cir. 2006). Instead, civil conspiracy is a derivative cause of action requiring an independent underlying tort to serve as the basis of the conspiracy. *Treppel v. Biovail Corp.*, 2005 U.S. Dist. LEXIS 2737, *27, 2005 WL 427538 (S.D.N.Y. Feb. 22. 2005); *Alexander & Alexander Inc. v. Fritzen*, 68 N.Y.2d 968, 969, 503 N.E.2d 102, 510 N.Y.S.2d 546 (1986)). In order to sufficiently allege civil conspiracy, a plaintiff

must allege (1) an independent actionable tort, (2) a corrupt agreement between two or more parties, (3) an overt act in furtherance of the agreement, (4) the parties' intentional participation in the furtherance of the agreed to plan, and (5) resulting damage or injury. *Green v. Beer*, 2009 U.S. Dist. LEXIS 27503, *37, 2009 WL 911015 (S.D.N.Y. Mar. 30, 2009) (citing *Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir. 1986)).

Plaintiff's complaint fails to identify the independent tort underlying the civil conspiracy claims. The complaint refers to alleged "theft, misappropriation of intellectual property, fraud, extortion, and violations of securities and banking law," ¶ 293, but provides no specific facts supporting the allegation that these torts took place. The failure to identify the predicate torts with any kind of specificity should result in the dismissal of the civil conspiracy claim.

Even more problematic for the civil conspiracy claim, the complaint does not allege with specificity that there was a corrupt agreement between Hurley and any other parties, that Hurley engaged in any specific overt act in furtherance of the purported agreement, or that Hurley engaged in any specific act to intentionally further the supposed conspiracy. With respect to the supposed corrupt agreement between Hurley and other defendants, plaintiff *speculates* that there was "meeting of the minds," an "agree[ment] to commit these tortious acts in furtherance of their overall agreement and a common scheme," ¶¶ 292-294, but alleges no concrete facts to support this speculation. Plaintiff simply does not allege with specificity the existence of a corrupt agreement, or even any facts that would support an inference that such an agreement existed. Similarly, while the complaint contains the broad, unsubstantiated allegation that there were "consequent unlawful and and/or wrongful overt acts [by each co-conspirator] in furtherance of that object," ¶¶ 292-294, plaintiff fails to describe, even in cursory fashion, any such purported overt acts. Without specific allegations about the nature of the purported corrupt agreement –

that Hurley took specific actions in furtherance of the supposed agreement or that Hurley took specific steps to further the conspiracy – the conspiracy claim against him fails.

## CONCLUSION

For the foregoing reasons, defendant Gregory Hurley respectfully requests that this Court dismiss the claims against him in this action in their entirety, with prejudice.

June 22, 2022

SIGNATURE

*Gregory Hurley*
_____
Gregory Hurley
11 Jacob Arnold Rd
Morristown, NJ  07960
+1 (917) 301-3077