# Exhibit A

Case 1:22-cv-03318-DEH    Document 201-1    Filed 09/26/24    Page 1 of 17

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

Civil Action No.: 1:22-CV-03318-DEH

Floyd's of Leadville, Inc. N/K/A Valued, Inc.,

      Plaintiff,

v.

Alexander Capital L.P., et al.

      Defendants.

---

**AMENDED NOTICE OF DEPOSITION**

---

TO: Alexander Capital and all counsel and parties of record

      NOTICE IS HEREBY GIVEN that Plaintiff Floyd's of Leadville, Inc. n/k/a Valued, Inc., will take the deposition of Alexander Capital L.P. commencing on October 4, 2024, at 8:00 a.m. MT, and continuing from day to day until said deposition is completed. The deposition will be taken virtually before a certified shorthand reporter. The deposition will be recorded by audio, audio-visual means, and stenographic means.

      Pursuant to Fed. R. Civ. P. 30(b)(6), the organization is required to designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf as to the topics listed in Exhibit A to this notice.
Virtual appearance information to follow under separate cover.

Dated: September 18, 2024

                                            Respectfully submitted,

                                            /s/ Daniel J. Vedra
                                            Daniel J. Vedra
                                            Vedra Law LLC
                                            1444 Blake Street
                                            Denver, CO 80202
                                            Phone: (303) 937-6540
                                            Fax: (303) 937-6547
                                            Email: dan@vedralaw.com

## EXHIBIT A

## TOPICS

1. Your representations to FOL concerning the terms of the Promissory Notes including:

    a. The identity of the person(s) responsible for communicating the terms of the Promissory Notes to FOL;

    b. The terms of the Promissory Notes as communicated to FOL;

    c. Any documentary evidence of the terms of the Promissory Notes as communicated to FOL;

    d. The negotiation of the terms of the Promissory Notes with FOL;

    e. ~~The advisability of borrowing money on the terms contained in the Promissory Notes;~~

    f. ~~FOL's ability to refinance the Promissory Notes when due;~~

    g. Any conversion rights available under the Promissory Notes;

    h. redemption rights available under the Promissory Notes;

    i. ~~Your Communications with FOL and/or Floyd Landis concerning the terms represented to Lenders; and~~

    j. ~~All advice provided to FOL under the terms of the Engagement Agreement.~~

2. Your representations to Lenders or Potential Lenders concerning the terms of the Promissory Notes including:

    a. The identity of the person(s) responsible for communicating the terms of the Promissory Notes to Lenders or Potential Lenders;

    b. The terms of the Promissory Notes as communicated to Lenders or Potential Lenders;

    c. Any documentary evidence of the terms of the Promissory Notes as communicated to Lenders or Potential Lenders;

    d. The negotiation of the terms of the Promissory Notes with Lenders or Potential Lenders;

    e. Any conversion rights available under the Promissory Notes;

  f. ~~redemption rights available under the Promissory Notes; and~~

  g. ~~The authenticity of all Communications from Lenders concerning the terms of the Promissory Notes.~~

3. Your knowledge of the execution of the Promissory Notes including:

  a. Your knowledge of whether Floyd Landis executed any of the Promissory Notes;

  b. Your observations of the execution of the Promissory Notes by the Lenders;

  c. Any Promissory Notes that were sent to Lenders or Potential Lenders including the purported signature of Floyd Landis.

4. Your process, policy, and procedures for the execution of offering documents in the private placement of securities.

5. All due diligence that You performed on FOL in connection with the offering of the Promissory Notes including:

  a. Your compliance or efforts to comply with Your WSP Section 14.2.2 relating to due diligence;

  b. ~~Any valuation of FOL~~;

  c. Any analysis You performed on whether FOL could repay the Promissory Notes; and

  d. Whether any of the due diligence was communicated to FOL.

6. All due diligence that You performed on FOL in connection with the offering of any equity in FOL including:

  a. Your compliance or efforts to comply with Your WSP Section 14.2.2 relating to due diligence;

  b. ~~Any valuation of FOL~~; and

  c. FOL's ability to function as a going concern.

7. Your engagement agreement(s) with FOL including

  a. The terms of any engagement agreement with FOL;

  b. Your compliance with the terms of any engagement agreement with FOL;

    c. Any modifications or amendments to any engagement agreement with FOL; and

    d. The termination of any engagement agreement with FOL.

8. Your compliance with Your WSP with respect to the private offering of FOL securities including:

    a. Compliance with Section 14.2 and all subsections of Your WSP;

    b. Compliance with your policies and procedures for the retention of documents related to the offering of securities in private placements;

    c. Your review of the private offering of FOL securities including upon offering materials completion, receipt of subscription documents, and receipt of payments for securities;

    d. All documentation of Your review of the private offering of FOL securities including the review of copies of Documents and Correspondence (such as purchase agreements, promissory notes, subscription agreements, escrow agreements) and all notes taken in connection with the private offering of FOL securities;

    e. All suitability analysis performed on or for any Lender or Potential Lender in FOL;

    f. The supervision of the Private offering of FOL securities by Your Private Placements Principals to ensure compliance with all applicable SEC and FINRA regulations;

    g. Your efforts to ensure that any securities sold by FOL were sold only to "Accredited Investors" as that term is used by Rule 501 and Your WSP;

    h. Your reliance on information provided by FOL to You; and

    i. The preparation of a "Private Placement Offering Memorandum" or the decision not to prepare a "Private Placement Offering Memorandum".

9. All Communications sent to any Lender or Potential Lender in FOL for the private placement of the Promissory Notes, including:

    a. The authenticity of any e-mails and documents attached to those e-mails that have been produced by You in this action;

    b. The authorization by FOL and/or You of any communications sent to any Lender or Potential Lender in FOL;

    c. The veracity of statements contained in any such Communications;

    d. Your approval of any Communications sent to Lenders or Potential Lenders in FOL; and

    e. The approval by FOL of any Document sent to effect the private placement of the Promissory Notes.

10. All Communications sent to any Lender or Potential Lender in FOL for the private placement of equity in FOL, including:

    a. The authenticity of any e-mails and documents attached to those e-mails that have been produced by You in this action;

    b. The authorization by FOL and/or ACLP of any communications sent to any Lender or Potential Lender in FOL;

    c. The veracity of statements contained in any such Communications; and

    d. Your approval of any Communications sent to Lenders or Potential Lenders in FOL.

11. Your review and approval of the following Documents

    a. Subscription Agreement(s) for the sale of FOL Promissory Notes;

    b. Promissory Notes;

    c. Escrow Agreements;

    d. Share Purchase Agreements; and

    e. All Escrow Release Notices

12. Your knowledge of the Document identified as ACLP 084851 including:

    a. The creation of the Document;

    b. The use of the Document;

    c. The transmission of the Document to FOL; and

    d. The approval of the Document by You for any purpose.

13. Your policies and procedures for the retention of Documents related to the private placement of securities including

    a. A custodian of records capable of authenticating Documents produced by You in this litigation; and

    b. ~~A custodian of records capable of authenticating Communications produced by You in this litigation.~~

14. Alexander Capital, L.P.'s corporate structure from the period of 2017 to the present including:

    a. Ownership and control of Alexander Capital, L.P.;

    b. The identity of Alexander Capital, L.P.'s general partner(s);

    c. The identity of Alexander Capital, L.P.'s limited partner(s); and

    d. Alexander Capital, L.P.'s officers and directors.

15. Your participation in the sale of shares in FOL alleged to be owned and sold by Mark Leonard including:

    a. Your knowledge of his acquisition of the shares;

    b. Your participation in the sale of the shares;

    c. Your Communications and interactions with CMD or Pete DiChiara with respect to the sale of the shares;

    d. Your compliance or attempted compliance with Section 14.3 of Your WSPs;

    e. Any compensation received by You for the sale of the shares;

    f. Your approval of the offering documents including any "Share Purchase Agreement" or similar Document(s); and

    g. Your Communications with FOL concerning the sales including the exact timing of Your communications with FOL.

16. Your relationship and interactions with Three DDD LLC including:

    a. Approval of disbursements from escrow to Three DDD LLC; and

    b. Your knowledge of the owner(s) of Three DDD LLC.

17. Your relationship and interactions with Timothy Kelly including:

    a. Any private placement in which Timothy Kelly was involved;

    b. Your belief that Timothy Kelly was an agent of FOL.

18. Your relationship and interactions with Ronald Barrie Clapham including:

    a. His participation in the Advisory Board;

- b. His purchase of equity in FOL;
- c. His funding of Redemption; and
- d. His purchase or sale of any security or securities in which You have participated as an investment advisor or broker-dealer.

19. Your platform as described by Joseph Amato and Rocco Guidicipietro during their depositions including:
    - a. Whether any private placement for FOL was available on the platform; and
    - b. The requirements to be approved to be on the platform;

20. Your relationship and interactions with CMD and/or Pete DiChiara concerning FOL including:
    - a. Whether You disclosed to FOL that CMD and/or DiChiara represented You prior to allegedly representing FOL;
    - b. ~~Whether CMD and/or DiChiara represented You after allegedly representing FOL; and~~
    - c. ~~All Communications between You and CMD and/or DiChiara.~~

21. Your knowledge and participation in the Advisory Board including:
    - a. The formation of the Advisory Board;
    - b. Any reason for the participation of Frank DiMartini on the Advisory Board;
    - c. Communications between Ronald Barrie Clapham and Jonathan Gazdak while serving on the Advisory Board;
    - d. Communications between Mark Leonard and Jonathan Gazdak while Jonathan Gazdak served on the Advisory Board;
    - e. The development of the "Eight Point Plan" (that is actually nine points) presented to FOL;
    - f. The decision to form Redemption Holdings, LLC;
    - g. The creation of Redemption Holdings, LLC;
    - h. The ownership and structure of Redemption Holdings, LLC;
    - i. The funding of Redemption Holdings, LLC;
    - j. The purpose of Redemption Holdings, LLC; and

k. Any person(s) who sought to operate a competitive business to FOL.

22. Your Communications with Lenders after the funding of their investments including any representations that:

    a. FOL had no plan to repay Lenders;

    b. Advising Lenders on assigning investments to Redemption Holdings, LLC;

    c. The risks and consequences of not assigning their investments to Redemption Holdings, LLC;

    d. The benefits of assigning their investments to Redemption Holdings, LLC;

    e. Settlement offers made by FOL to Lenders; and

    f. Whether FOL was able to repay the Lenders.

23. Your failure or refusal to provide FOL with contact information for the Lenders and the reasons for Your failure or refusal to act.

24. Your relationship and involvement with Provision Holding, Inc. including:

    a. Any financial advisory services You provided to Provision Holding, Inc.;

    b. Payments from Provision Holding, Inc. and/or Mark Leonard to You;

    c. The negotiation of any debt-restructuring by Provision Holding, Inc.;

    d. Your involvement in any loan made by FOL to Provision Holding, Inc.; and

    e. Whether You received any remuneration from Provision Holding, Inc. following FOL's loan to Provision Holding, Inc.

25. Your policies and procedures for resolving or handling conflicts of interest such as owing duties to both lenders and borrowers simultaneously.

26. Your Communications with Greg Hurley and/or Redemption Holdings, LLC.

27. Your knowledge of any "Continuing Member Application" submitted on Your behalf to FINRA including:

    a. The authenticity of such applications; and

    b. The veracity of such applications.

28. The reasons for DiMartini's resignation.

29. Any representations You made to FOL concerning the terms of the Promissory Notes including whether it was advisable to FOL to borrow money on the terms contained in the Promissory Notes.

30. Any representations You made to FOL concerning the Promissory Notes including whether FOL would be able to refinance the Promissory Notes when due.

31. Your Communications with FOL and/or Floyd Landis concerning the terms of the Promissory Notes as represented to Lenders.

32. All advice You provided to FOL under the terms of the Engagement Agreement.

33. Your representations to Lenders or Potential Lenders concerning the terms of the Promissory Notes including whether the Promissory Notes had redemption rights

34. The authenticity of all Communications from Lenders concerning the terms of the Promissory Notes.

35. All due diligence that You performed on FOL in connection with the offering of the Promissory Notes or any equity offering in FOL, including whether any of the due diligence was communicated to FOL.

36. All valuations that You performed on FOL in connection with the offering of the Promissory Notes or any equity offering in FOL.

37. Your valuation of FOL.

38. A custodian of records capable of authenticating Communications produced by You in this litigation.

39. Whether CMD and/or DiChiara represented You after allegedly representing FOL.

40. All Communications between You and CMD and/or DiChiara concerning FOL.

41. Your knowledge of:

    a. The decision to form Redemption Holdings, LLC;

    b. The creation of Redemption Holdings, LLC;

    c. The ownership and structure of Redemption Holdings, LLC;

    d. The funding of Redemption Holdings, LLC; and

    e. The purpose of Redemption Holdings, LLC.

42. Your knowledge of any person(s) who sought to operate a competitive business to FOL.

Case 1:22-cv-03318-DEH   Document 201-1   Filed 09/26/24   Page 12 of 17

**DEFINITIONS**

1. "Advisory Board" shall mean the board convened for the ostensible purpose of advising FOL on the restructure of the Loans.

2. "Alexander Capital" shall refer to Alexander Capital, L.P., including any person or entity acting or purporting to act on Alexander Capital's behalf or directly or indirectly under its control, including without limitation, parents, predecessors, affiliated entities, subsidiaries, successors-in-interest, officers, directors, investors, employees, agents, representatives, attorneys, paralegals, legal assistants, consultants, advisors, trustees, and other personnel, and specifically including without limitation Rocco Guidicipietro, Joseph Amato, Jonathan Gazdak, Shawn Weadock, Stephen Walsh, Michele Misiti, Chris Carlin, Patrick Mooney, Toni Maisano, Bari Latterman and (while employed by Alexander Capital) Frank DiMartini, as well as any person(s) involved in preparing responses to these Requests.

3. The terms "You" and/or "Your" shall mean and refer to Alexander Capital.

4. The term "person" shall include corporations and other entities, as well as individuals. "Person" also includes any expert witness, investigator, medical professional, mental health provider or other professional.

5. "DiMartini" shall mean and refer to Frank J. DiMartini including any person or entity acting or purporting to act on Frank J. DiMartini's behalf or directly or indirectly under his control.

6. "Engagement Agreement" shall refer to the October 20, 2017, agreement between You and FOL, including all revisions, amendments, exhibits, extensions, renewal, or contracts related to that Agreement.

7. "FOL" shall mean and refer to Floyd's of Leadville, Inc. (n/k/a Valued, Inc.), including its officers, directors, managers and employees.

8. "Redemption" shall refer to Redemption Holdings, Inc., including any person or entity acting or purporting to act on Redemption's behalf or directly or indirectly under its control, including without limitation, parents, predecessors, affiliated entities, subsidiaries, successors-in-interest, officers, directors, investors, employees, agents, representatives, attorneys, consultants, advisors, trustees, and other personnel, and specifically including without limitation Hurley, DaSilva, Clapham, Leonard, and Truong.

9. "CMD" shall refer to the law firm Carmel, Milazzo & DiChiara LLP (n/k/a Carmel, Milazzo & Feil, LLP), including any person or entity acting or purporting to act on CMD's behalf or directly or indirectly under its control, including without limitation, parents, predecessors, affiliated entities, subsidiaries, successors-in-interest, officers, directors, investors, employees, agents, representatives, attorneys, paralegals, legal assistants, consultants, advisors, trustees, and other personnel, and specifically including without limitation Peter DiChiara and Kirill Nikonov.

10. "Lending Documents" shall refer to any of the following documents: "12% Senior Secured Promissory Notes of Floyds of Leadville Inc.," "Subscription Agreement Floyd's of Leadville Inc.," "Security Agreement" concerning FOL, "Amendment to 12% Series A Senior Secured Promissory Note," or any drafts, amendments, revisions or copies of these documents.

11. "Promissory Notes" shall mean the 12% Senior Secured Promissory Notes of Floyds of Leadville Inc.

12. "Lenders" shall refer to all Persons who executed any of the following documents: "12% Senior Secured Promissory Notes of Floyds of Leadville Inc.," "Subscription Agreement Floyd's of Leadville Inc.," "Security Agreement" concerning FOL, "Amendment to 12% Series A Senior Secured Promissory Note," or any drafts, amendments, revisions or copies of these documents in connection with the possibility of investing in or lending money to FOL.

13. "Potential Lenders" shall refer to all Persons who were sent any of the following documents: "12% Senior Secured Promissory Notes of Floyds of Leadville Inc.," "Subscription Agreement Floyd's of Leadville Inc.," "Security Agreement" concerning FOL, "Amendment to 12% Series A Senior Secured Promissory Note," or any drafts, amendments, revisions or copies of these documents in connection with the possibility of investing in or lending money to FOL.

14. "Loans" shall refer to any obligation or alleged obligation of FOL to pay the Lenders, whether under the Lending Documents or otherwise.

15. "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Document Requests any information that may otherwise be construed to be outside their scope. The term "each" includes "every" and vice versa. The terms "a," "an," and "any" include "all," and "all" includes "a," "an," and "any." The use of the singular form of any word includes the plural, and vice versa. Similarly, references to the masculine gender shall include references to the feminine gender and vice versa.

16. "Related to" or "relating to" are used in the broadest sense to mean in any way, whether directly or indirectly, in whole or in part: involving, discussing, describing, indicating, pointing out, reflecting on, commenting on, showing, embodying, constituting, memorializing, mentioning, containing, making reference to, analyzing, explaining, studying, reporting on, recounting, affirming, confirming, denying, evidencing, constituting, setting forth, considering, recommending, endorsing, advocating, praising, criticizing, questioning, disparaging, doubting, revoking, amending, canceling, negating, minimizing, modifying, changing, altering, representing, noting, displaying, depicting, stating, divulging, disclosing, expressing, itemizing, tabulating, documenting, exhibiting, enumerating, recognizing, bearing upon, appertaining to, having any connection to, or touching upon.

17. The terms "communication," "document" and "concerning" shall be defined as indicated in Local Rule 26.3.

18. "Correspondence" shall have the meaning used in Your WSP.

19. "Written Supervisory Procedures" or "Written Supervisory Policies and Procedures" ("WSP") shall mean the policies and procedures You have adopted to comply with applicable law and the rules and regulations of FINRA, in particular, the document produced at ACLP236104.

**SPECIAL INSTRUCTION**

  If any topic includes or refers Documents or Communications, the topic includes designating a witness who can authenticate Documents or Communications produced by You in this litigation.

**CERTIFICATE OF SERVICE**

  I hereby certify that on the date first written above the foregoing was served CM/ECF on all parties of record by e-mail:

/s/ Daniel J. Vedra
Daniel J. Vedra
