

**Bryan Ward**
Direct Line: 404.892.5695
bryan.ward@holcombward.com

October 11, 2024

<u>Via ECF Filing</u>

Hon. Dale E. Ho
District Court Judge
United States District Court for the Southern District of New York

    re:    *Floyd's of Leadville, Inc., n/k/a Valued, Inc. v. Alexander Capital, L.P., et al.*, Civil Action No. 1:22-CV-03318-DEH

Dear Judge Ho:

    Defendants Alexander Capital, L.P., NESA Management LLC, Joseph Amato, Rocco Guidicipietro, and Jonathan Gazdak ("ACLP Defendants") seek an order compelling plaintiff Floyd's of Leadville, Inc. n/k/a Valued, Inc. ("FOL") to produce documents responsive to ACLP Defendants' discovery requests.[1]

    On September 25th FOL sat for a Rule 30(b)(6) deposition in this case and, on the following day, September 26th, Floyd Landis, owner and CEO of FOL, sat for his own deposition. During those depositions, FOL's corporate representative, Bob Bell, and Mr. Landis both gave testimony describing documents in FOL's possession, custody, or control that have not yet been produced in this case or in the related Colorado litigation.[2]

    On September 27th, ALCP Defendants sent FOL a letter detailing the items that Mr. Bell and Mr. Landis had testified to but which did not appear in FOL's production to date. (*See* Letter B Ward to D Vedra, "Exhibit E.") Over the week of September 30th, ACLP Defendants reached out to FOL on multiple occasions to discuss the letter. (*See*

---

[1] ACLP Defendants' First Request for Production of Documents is attached as "Exhibit A"; FOL's Objections and Responses to ACLP Defendants' First Request for Production of Documents is attached as "Exhibit B"; ACLP Defendants' Second Request for Production of Documents is attached as "Exhibit C"; and FOL's Objections and Responses to ACLP Defendants' Second Request for Production of Documents is attached as "Exhibit D."

[2] As the Court is aware, the parties agreed to allow the cross-use of discovery from the related Colorado Action. (Dkt. 119 ¶ 10.)

email correspondence re: Discovery Letter, "Exhibit F.") It was not until Friday, October 4th that FOL provided a substantive response, asking ACLP Defendants to identify the requests for production to which items in the Discovery Letter were responsive. (*See id.*) ACLP Defendants did so promptly. (*See id.*) ACLP Defendants then requested that the Discovery Letter be included in the meet-and-confer call that ACLP Defendants and FOL were scheduled to have later that day, but FOL declined to discuss it. (*See* relevant email chain, "Exhibit G.") On Monday, October 7th, ACLP Defendants requested that a meet-and-confer be scheduled to discuss this and an additional matter. (*See* email chain concerning meet and confer from week of October 7, "Exhibit H.")

On October 7th, ACLP Defendants proposed a time for a meet-and-confer on October 8th, and, when FOL's counsel did not respond, sent a second email about the proposed meeting. (Exhibit H.) FOL's counsel informed ACLP defendants that the requested time did not work but failed to propose an alternative, requiring ACLP Defendants to follow up again requesting a time. (*Id.*) FOL's counsel responded, on August 8th, "I will speak to you at 7 p.m. MT tomorrow as that is the first time I am available .[sic.]" (*Id.*) ACLP Defendants' counsel noted that call would occur at 9 p.m. for them, a time decidedly outside of business hours. (*Id.*) FOL's counsel then offered two more times outside of business hours (8:30 pm and 7:45 pm Eastern), during which he would be calling "from a car" and presumably unable to access case documents. (*Id.*) While ACLP Defendants could have filed on October 9th, given FOL's unwillingness to meet and confer in a timely manner, they decided to delay filing to hold a meet and confer on October 10, 2024. This call, which involved other matters as well, was held from approximately 3 p.m. Eastern to 4:30 p.m. Eastern.

During the call, FOL took the position that the items requested did not exist and that it believed that the requests rested on misunderstanding of what Mr. Bell and Mr. Landis testified.[3] FOL would not commit to producing the documents requested if they did exist. ACLP Defendants believe that these requests are well supported by the testimony given, that the items sought are responsive to existing discovery requests, and that they should be produced or that FOL should affirm, in writing, that these documents do not exist.

In responding to ACLP Defendants' discovery requests, FOL generally took the position that it would produce the documents sought in the First Request but only for a narrower timeframe than the one ACLP Defendants had requested and asserted that all responsive documents had been produced or that no responsive documents existed for ACLP Defendants' Second Request. (*See* Exhibits B and D.) Notwithstanding FOL's agreement to produce the responsive documents, during the course of the September 26th

---

[3] ACLP Defendants do not have Mr. Floyd's deposition transcript but, yesterday, received Mr. Bell's deposition transcript, excerpts of which are attached as "Exhibit I." ACLP Defendants will supplement the record when Mr. Floyd's transcript is available.

Judge Dale E. Ho
October 11, 2024
Page 3

and 27th depositions, Mr. Bell and Mr. Landis testified to the existence of various types of responsive documents as well as specific documents that were not produced.

      Mr. Bell testified that FOL had copies of all work-related communications its employees sent or received using the messaging service Wire[4], the messaging service WhatsApp, standard text messaging, and emails. (Exhibit I, 44:11-16, 45:8-11, 46:14-47:16, 47:17-49:15, 55:22-25.) Mr. Landis confirmed in his deposition that FOL had access to all emails sent from FOL's domain name: "@Floydsofleadville.com." Despite FOL's testimony that these documents were retained and still in FOL's possession, FOL has produced almost no messages sent via Wire, WhatsApp, or text, and it has produced almost no purely internal emails sent by its employees.

      If FOL has, in fact, preserved these records, as it asserted under oath that it had, ACLP Defendants would expect to see internal and external communications sent by Wire, WhatsApp, and text, yet, with the exception of one WhatsApp text log, these documents do not appear to be a part of FOL's production. Mr. Landis explicitly testified to having communication via WhatsApp with Defendant Clapham, non-party Howard DaSilva, and with unspecified other individuals, yet the production reflects only the communication with Mr. DaSilva.

      In addition to these broad categories of documents, Mr. Bell and Mr. Landis testified to the existence of specific, responsive, documents that have not yet been produced. Those are detailed in the September 27 letter, and FOL has produced none of them since receiving the letter. (*See* Exhibit E.) As an example, Mr. Bell testified that Mr. DiChiara, the lawyer representing FOL in the transaction at issue, had stated in emails that he was representing ACLP in that transaction. (Exhibit I, 183:16 – 184:13.) This document would, obviously, be highly relevant to the case, but FOL has not produced it.

      As ACLP Defendants have properly and timely sought these documents, and as FOL has agreed to produce them, and as FOL and Mr. Landis have testified to their existence, ACLP Defendants request this Court order that the documents described in Exhibit E (other than Item 1, which has been withdrawn) be produced. If any such documents do not exist, ACLP Defendants further ask this Court to order that FOL affirm that such documents do not exist, identifying which items sought do not exist and explaining the reason such documents do not exist.

---

[4] Concerningly, Mr. Landis, acting as FOL's 30(b)(6) witness in the Colorado Litigation, testified that FOL did not have access to all employee communications via the Wire messaging application, including, potentially, his own. (*See* Excerpts from the 30(b)(6) deposition of FOL, "Exhibit J.")

Judge Dale E. Ho
October 11, 2024
Page 4

                                                            Sincerely,

                                                            Bryan Ward