# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| FLOYD'S OF LEADVILLE, INC., N/K/A VALUED, INC., | : |
| Plaintiff, | : |
| vs. | : Case No.: 1:22-cv-03318-MKV |
| ALEXANDER CAPITAL, L.P., NESA MANAGEMENT, LLC, JOSEPH ANTHONY AMATO, ROCCO GERARD GUIDICIPIETRO, JONATHAN GAZDAK, GREGORY HURLEY, HOWARD DASILVA, RONALD BARRIE CLAPHAM, MARK LEONARD, THIEN TRUONG, PROVISION HOLDING, INC., TIMOTHY KELLY, and THREE DDD, LLC, | : |
| Defendants. | : |

---

## ALEXANDER CAPITAL DEFENDANTS'
## FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Defendants Alexander Capital, LP ("Alexander Capital"), NESA Management, LLC ("NESA"), Joseph Amato, Rocco Guidicipietro, and Jonathan Gazdak (collectively, "Alexander Capital Defendants") hereby submit this First Request for the Production of Documents to Plaintiff pursuant to Fed. R. Civ. P. 26(b), Fed R. Civ. P. 34, and the Case Management Plan in the above-captioned case.

Alexander Capital Defendants request that Plaintiff produce all documents and things designated below within **30 days** of service of this request to Bryan Ward, Holcomb + Ward, LLP, 3455 Peachtree Rd NE, Suite 500, Atlanta, GA 30326. Alexander Capital Defendants will accept production via electronic means.

1

### I. DEFINITIONS

The following Definitions are applicable to each Request and other Definitions:

1.  The terms "And" and "Or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of this request any document which might otherwise be construed to be outside the scope of this request.

2.  The terms "Floyd's of Leadville, Inc.," "Floyd's," and "FOL" mean Floyd's of Leadville, Inc. n/k/a Valued, Inc., as well as its officers, representatives, servants, employees, agents, members, affiliates, and businesses owned by it, in addition to any other person or entity claiming to act on its behalf.

3.  The term "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

4.  The term "Copy" means a reproduction of an original; a duplicate.

5.  The term "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A), in the possession, custody or control of Plaintiff or any agent, representative (including, without limitation, attorneys, investment advisors and accountants), or other person acting or purporting to act for or on behalf of Plaintiff or in concert with it, including, but not limited to, writings, emails, text messages, social media messages, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations — stored in any medium from which information can be obtained either directly or, if necessary, after translation by Plaintiff into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of this term.

6.  The term "Draft" means any earlier, preliminary, preparatory or tentative version of all or part of a Document, whether or not such Draft was superseded by a later Draft and whether

or not the terms of the Draft are the same as or different from the terms of the final Document and shall include each and every version of a Document regardless of whether the Document was reduced to paper medium, and the term "copies" means each and every copy of any Document which is not identical in every respect with the document being produced. Identification and production of copies of the same document is requested only if the original or copies contain some material, handwritten or otherwise, that is not on the other copies or the original.

7. The term "to identify," when referring to a person, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person. When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

8. The terms "Plaintiff" and "Defendant," as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

9. The term "Person" or "Persons," as used herein, includes any natural person or any legal entity, including, without limitation, any business or governmental entity or association, firms, partnerships, associations, joint ventures, corporations, professional corporations, business trusts, and banking institutions.

10. The terms "Referring or Relating To," in addition to other customary and usual meanings, means assessing, compromising, concerning, constituting, containing, contradicting, describing, discussing, evidencing, identifying, interpreting, mentioning, pertaining to, recording, reflecting, regarding, setting forth, stating, summarizing and/or touching upon, in each instance, directly or indirectly and in whole or in part.

11. The use of the term "Including" shall be construed without limitation.

12. The terms "Each," "Any," and "All," shall each be construed as having the meanings of the other two as necessary to bring within the scope of this request any documents which might otherwise be construed to be outside the scope of this request.

13. "You" means Plaintiff, as well as their representatives and attorneys, accountants, servants, employees, members, agents, affiliates, or businesses owned by Floyd's of Leadville, Inc. (n/k/a Valued, Inc.) and any other person or legal entity purporting to represent Floyd's of Leadville, Inc. (n/k/a Valued, Inc.) or to act under its direction or control.

14. "ACLP" and "Alexander Capital" mean Alexander Capital, L.P. as well as its representatives, servants, employees, agents, members, affiliates, and businesses owned by it, in addition to any other person or entity claiming to act on its behalf or which Plaintiff believed was acting on its behalf.

## II.   Instructions

1. With respect to each of the following requests for production, You are requested to produce all Documents that are known to You that can be located or discovered by You through diligent effort on the part of yourself, your attorneys, agents or representatives. You are requested to categorize each Document so as to conform to each numbered request.

2. All Documents shall be produced as they are kept in the ordinary course of business and shall be identified by the title of the file, the individual owner or custodian, and the location

       of the file in which the documents were located. The originals of all documents produced in copy form shall be available for inspection. When producing the Documents, designate the specific paragraph or paragraphs of this request in response to which each Document is produced.

3. If an objection is taken to any of the following Requests, or if a Request is otherwise not answered in full, state the nature of the objection, the subject matter to which the objection pertains, and the legal rule upon which you rely in effecting your objection. Further, respond to the Request to the full extent to which there is no objection.

4. In the event that a particular Document called for by this Request is withheld on the basis of any claim of privilege or any similar claim, as to each Document, provide the following so as to allow a ruling to be had thereon: (a) the date of the Document, communication or item of information; (b) the author(s) and addressee(s) of such Document, communication or item of information; (c) the nature of the Document, communication or item of information (e.g., letter, memorandum, tape recording); (d) the subject matter of the Document, communication, or item of information; (e) the nature of the privilege or immunity claimed; (f) when not apparent, the relationship of the author(s) and addressee(s) to each other; and (g) the request for production or part of the request for production calling for such Document.

5. If any Document requested herein or fairly comprised within the scope of the following request has been lost or destroyed, you are required to provide, in lieu of a true and correct copy thereof, a list of each Document so lost or destroyed together with the following information: (a) the date and origin of such Document; (b) a brief description of such

Document; (c) the author(s) of the Document, the addressee(s), and the recipient(s) of any indicated or blind copies; (d) the number of pages, as well as the existence and number of pages of any attachments, exhibits, or appendices; (e) all persons to whom the Document was distributed, shown or explained; (f) the date of loss, destruction or disposal; (g) the identity of the person or persons authorizing destruction or disposal; and (h) the identity of the person or persons destroying or disposing of the Document.

6. In the event that any such Document has been, but is no longer, in your possession, custody or control, identify the person or persons to whom it was transferred and its present custodian(s). A Document is deemed to be in your control if you have the right to secure the document or a copy thereof from another person or public or private entity having actual physical possession thereof.

7. Unless otherwise set forth herein, this Request seeks documents for the time period from **October 1, 2017 through April 22, 2022** (the "Relevant Time Period").

8. The plural shall include the singular and the singular shall include the plural.

9. Whenever the male gender is used, the request is also deemed to refer to the female gender and the neutral gender. Whenever the female gender is used, the request is also deemed to refer to the neutral gender and the male gender. Whenever the neutral gender is used, the request is also deemed to refer to the male gender and female gender.

10. This Request shall be deemed continuing so as to promptly require further and supplemental production if you receive, discover, or create additional responsive documents which fall within the scope of the following requests at any time prior to the

conclusion of this litigation. Moreover, Alexander Capital Defendants reserve the right to serve additional requests for production of documents, pursuant to the Case Management Plan.

11. For any page of any Document that has any information on either its front side or its back side, Plaintiff shall produce copies of all information contained

### III.   Requests

Please produce each Document, Draft, and Copy in Your possession, custody, or control which can be discovered through a good faith search which is responsive to the following Requests:

1. All Documents disclosed in Plaintiff's Rule 26(a)(1) Initial Disclosures. Documents already produced need not be reproduced.

2. All Documents reflecting, containing, or referring to any communication You had with any of the individuals identified in either Plaintiff's Rule 26(a)(1) Initial Disclosures or in Alexander Capital's Rule 26(a)(1) Initial Disclosures.

3. All Documents concerning or reflecting any internal discussions or deliberations about your decision to enter into any contract or agreement with Alexander Capital.

4. All Documents concerning or reflecting any internal discussions or deliberations about your decision to enter into any contract or agreement with Carmel, Milazzo & DiChiara LLP (n/k/a Carmel, Milazzo & Feil, LLP).

5. All Documents reflecting, containing, or referring to any communications between Floyd Landis and Tim Kelly.

6. All Documents reflecting, containing, or referring to any communications between Floyd Landis and/or FOL and Frank DiMartini.

7. All Documents reflecting, containing, or referring to Tim Kelly's representation to

7

FOL that he worked as a broker and/or agent of Alexander Capital.

8. All Documents concerning, reflecting, or relating to any agreements, contracts, proposals, or business discussions had by or on behalf of FOL with any investment banking firm, financial advisor, or other entity or person engaged in the business of raising capital, other than Alexander Capital, from October 20, 2017 to January 1, 2020.

9. All Documents that support your allegation that the lending documents, as defined in Paragraphs 31 and 57 of your Complaint, were based on Alexander Capital templates.

10. All Documents concerning, reflecting, or relating to any objections by FOL to the receipt of additional investment funds in senior secured debt raised by Alexander Capital in excess of the $2,000,000 private placement raise contemplated in the Engagement Agreement.

11. All Documents concerning, reflecting, or relating to FOL's understanding of the terms of the lending documents as described in Paragraphs 32 through 34 of your Complaint.

12. All Documents concerning or reflecting any internal discussions or deliberations about the terms of the lending documents.

13. All Documents concerning or reflecting any internal discussions or deliberations about the amount of capital to be raised pursuant to the engagement with ACLP.

14. All Documents reflecting communications between FOL and Alexander Capital concerning or relating to FOL's contention that Alexander Capital recommended that FOL borrow money in excess of the $2,000,000 referenced in the Engagement Agreement.

15. All Documents reflecting communications between Alexander Capital and the investors concerning, reflecting, or relating to the alleged "secret side deal" described in Paragraphs 66 through 68 your Complaint.

16. All Documents reflecting communications between FOL and Alexander Capital concerning or relating to FOL's contention that Alexander Capital recommended that FOL utilize the legal services of Carmel, Milazzo & DiChiara as described in Paragraphs 38 and 39 of your Complaint.

17. All Documents concerning, reflecting, or relating to FOL's contention that Carmel, Milazzo & DiChiara and DiChiara were actively representing Alexander Capital in connection with the FOL engagement, including advising Alexander Capital concerning the lending documents that are the subject of this lawsuit, as described in Paragraph 38 of your Complaint.

18. All Documents concerning, reflecting, or relating to FOL's contention that Alexander Capital promised FOL that the 12% senior secured notes would be renegotiated before maturity as described in paragraph 60 of your Complaint.

19. All Documents reflecting, containing, or referring to any communications from Jonathan Gazdak in which he revealed he was aware of a "secret side deal" as alleged in Paragraph 79 of your Complaint.

20. All Documents that support your contention that Alexander Capital inserted Floyd Landis's electronic signatures into the lending documents as alleged in Paragraphs 82, and 85 through 87 of your Complaint.

21. All Documents referred to in Paragraph 92 of your Complaint.

22. All Documents that support your contention in Paragraph 99 of your Complaint that Alexander Capital applied scanned signature pages supplied by the Investors

9

to various documents that Alexander Capital "changed at will."

23. All Documents that support your contention in Paragraph 104 of your Complaint that Alexander Capital placed Tim Kelly in control of the escrow account maintained by CMD in which funds solicited from the investors were temporarily held.

24. All Documents that support your contention in Paragraph 105 of your Complaint that Alexander Capital arranged for unauthorized kickbacks to be paid to Three DDD and CMD.

25. All Documents reflecting, containing, or referring to any communications between Peter DiChiara and FOL that support the contention in Paragraph 106 of your Complaint that Tim Kelly and Frank DiMartini were working together on the FOL engagement and that Tim Kelly was entitled to receive a commission even though he was not an employee of Alexander Capital.

26. All Documents that support your contention that Alexander Capital threatened to "cut off FOL's access to funds" from investors solicited by Alexander Capital as alleged in Paragraph 109 of your Complaint.

27. All Documents that support your contention that Alexander Capital received a $50,000 secret cash kickback from Provision in connection with FOL's contract with Provision as alleged in Paragraphs 127 and 132 of your Complaint.

28. All Documents that support your contention that Mark Leonard's sale of his shares of common stock in FOL was fraudulent as alleged in Paragraphs 129 to 130 of your Complaint.

29. All Documents reflecting, containing, or referring to any communications between FOL and John Burgess.

30. All Documents reflecting, containing, or referring to any communications between Alexander Capital and FOL concerning the allegations in Paragraphs 137 through 140 of your Complaint that Alexander Capital proposed that FOL execute a reverse IPO with a Canadian company.

31. All Documents reflecting, containing, or referring to any communications between FOL and the Advisory Board in June of 2020 in which a "secret side deal" was revealed to FOL for the first time as alleged in Paragraph 158 of your Complaint.

32. All Documents that support your contention that the Advisory Board instructed investors not to negotiate with or accept payment from FOL as alleged in Paragraph 161 of your Complaint.

33. All Documents that support your contention that Alexander Capital participated in creating Redemption Holdings, Inc. as alleged in Paragraph 164 of your Complaint.

34. All Documents that support your contentions in Paragraphs 177 and 178 of your Complaint.

35. All documents relating to, containing, or referencing the calculation of damages in this matter, including any reports created by any expert witnesses hired by you and communications related to same.

36. All documents relating to, containing, or referencing any report or analysis by an expert witness or other expert hired by You or on Your behalf to provide analysis or expert testimony in this case, including any communications, drafts, or support relating to same.

37. All documents showing any efforts on Your part to mitigate the damages alleged in this matter.

Respectfully submitted this 30th day of September 2022.

/s/ *Bryan Ward*
Bryan Ward (*Pro Hac Vice*)
Holly Cole (*Pro Hac Vice*)
Holcomb + Ward, LLP
3455 Peachtree Road NE
Suite 500
Atlanta, Georgia 30326
404-601-2803
Bryan.Ward@holcombward.com
Holly.Cole@holcombward.com

*Counsel for Defendants Alexander Capital LP, Joseph Amato, Rocco Guidicipietro, Jonathan Gazdak, and NESA Management, LLC*