# Exhibit E



**Bryan Ward**
Direct Line: 404.892.5695
bryan.ward@holcombward.com

September 27, 2024

**VIA EMAIL**

Daniel J. Vedra, Esq.
Vedra Law, LLC
1444 Blake Street
Denver, CO 80202
dan@vedralaw.com

    Re:    *Floyd's of Leadville, Inc., n/k/a Valued, Inc. v. Alexander Capital, L.P., et al.*; Civil Action No. 1:22-cv-03318-DEH

Dear Dan:

Based on the testimony in the last two days of, respectively, Mr. Bell on behalf of Floyd's of Leadville, Inc. ("Floyd's") and Mr. Landis, CEO of Floyd's, it appears that we are missing documents responsive to, at least, ACLP Defendants' First Document Requests Nos. 2, 5, 6, 7, 8, and 25, as well as ACLP Defendants' Second Document Requests Nos. 2, 3, 4, and 5. I am writing to request that Floyd's supplement its production.

1. Mr. Bell testified that Floyd's had an employee handbook that governed document retention. We have not seen it in the production. Please produce it promptly.

2. Mr. Bell testified that Floyd's had the communications that its employees and agents made using Wire. We have not seen these in the production. Please produce them promptly.

3. Mr. Bell testified that Floyd's had the communications that its employees and agents made using WhatsApp. With one exception, we have not seen these in the production. Please produce them promptly.

4. Mr. Landis testified that he had WhatsApp communications with Barrie Clapham, Howard DaSilva, and others. We have seen WhatsApp messages between Mr. Landis and Mr. DaSilva only. Please affirm that no other such communication exists. Please produce the WhatsApp communications

Daniel J. Vedra, Esq.
September 27, 2024
Page 2

    with Mr. Clapham and with any of the other individuals that Mr. Landis communicated with using that application who are relevant to the case.

5. Mr. Bell testified that Floyd's had the communications its employees and agents made using text messaging. We have not seen these in the production. Please produce them promptly.

6. Mr. Bell testified that Floyd's had the email transmitting its signed engagement agreement with CMD to CMD. We have not seen it in the production. During Mr. Landis's deposition, we were provided with a forward of an email transmitting the CMD engaged agreement to Mr. Landis, but it was not produced in a usable or Bates-labeled format. Please include a usable and Bates-labeled version of that email and its attachment in your production.

7. Mr. Landis testified that he had access to all emails sent to or from email addresses ending in "@floydsofleadville.com" and that no emails have been deleted. We have seen minimal purely internal communications from those accounts. A high-level review of Floyd's production suggests that Floyd's produced only purely internal communications involving the Tim@floydsofleadville.com email address. We would expect that there should be purely internal communication responsive to ACLP Defendants' First Document Requests Nos. 1, 2, 3, 4, 7, 8, 11, 12, 26, 28, 30, 31, 35, and 37, as well as ACLP Defendants' Second Document Requests Nos. 3, 4, and 5. Please confirm that such emails have been searched and, if responsive, provided.

8. On a related note, the production appears to be missing almost all, if not all, of Floyd's direct communication with CMD and Mr. DiChiara. As Floyd's has repeatedly asserted that Mr. DiChiara was not Floyd's lawyer and that he represented Alexander Capital on the same matter or, in the alternative, as Floyd's has made the representation a central issue in this case and since Mr. Landis expressly waived any attorney-client privilege by email on July 2, 2020, please produce all such correspondence promptly. If Floyd's claims privilege over any communications between itself and CMD, please produce a privilege log.

9. Mr. Bell testified that Floyd's had an email in which Mr. DiChiara stated he represented Alexander Capital in relation to the Floyd's deal. We have not seen it in the production. Please produce it promptly.

10. Mr. Bell testified that Floyd's had an email in which Ms. Latterman sent Mr. DiChiara a copy of Floyd Landis's electronic signature. We have not seen it in the production. Please produce it promptly.

Daniel J. Vedra, Esq.
September 27, 2024
Page 3

11. Although he may have given varying accounts (and we don't have a transcript at this point to confirm his testimony), Mr. Bell appeared to testify that Floyd's had paid all of the interest due on the Senior Secured Notes. If that is Floyd's position, please produce the documents showing the payments made on the interest. In particular, please produce evidence of any payments made in or after the fourth quarter of 2019.

12. Mr. Landis testified that some of Floyd's noteholders had received interest payments in or around mid-2020. We have not seen the documents evidencing those payments. Please produce them.

13. Mr. Bell and Mr. Landis testified that Floyd's had the money to repay the notes in full at the time they came due. Please produce the documents showing that Floyd's had sufficient funds to repay the notes in full.

14. Mr. Landis testified that the notes had been repaid in full, by way of the settlement in the Redemption Holdings case. He asserted that this was accomplished by transferring Floyd's interest in the Oregon dispensaries to the Senior Noteholders and by transferring a two million dollar note in the same to the Senior Noteholders. Mr. Landis later amended his testimony to state that Floyd's had canceled the note and that the Oregon dispensaries had given Redemption Holdings value equal to that note. We have seen no documents supporting his contention that Floyd's transferred any ownership interest in the Oregon dispensaries to Redemption Holdings. If this is simply a difference of opinion over the terms of the settlement agreement in the Redemption Holdings case that was marked as an exhibit, then simply let us know. Otherwise, please produce any documents beyond the settlement agreement supporting either the contention that Floyd's transferred the Oregon dispensaries note to Redemption Holdings or that Floyd's cancellation of the Oregon Dispensaries note constituted satisfaction of the Senior Notes. Also, please confirm that ACLP Defendants may continue to use the Redemption Holdings settlement agreement in discovery and whether ACLP Defendants may file it with, or present it as evidence before, the Court in this matter and, if so, whether it needs to do so under seal.

15. Mr. Bell testified that Mr. Kelly had sent him screenshots of text messages with Mr. DiMartini. We have not seen those emails. While you sent the screenshots by email during the deposition, Floyd's has not produced the referenced email or produced a Bates-labeled version those screenshots. Please produce them promptly.

16. Mr. Bell testified that all of his communications with individuals, other than counsel, in preparation for his deposition was telephonic. However, his testimony also seemed to suggest that he had received the screenshots

Daniel J. Vedra, Esq.
September 27, 2024
Page 4

   from Tim Kelly as part of his deposition preparation. Please confirm that Mr. Bell had no written communications, by email, letter, text, WhatsApp, Wire, or other messaging service, with any person other than counsel, or, in the alternative, please produce any such written communications. In addition, please produce any recordings of such calls.

17. On a related note, it is apparent that Floyd's has had other contacts with related parties – including the noteholders, individuals involved with defendants, parties to the Colorado litigation, and the Senior Noteholders. Please promptly produce any communications, including written communications and audio recordings of verbal communications, that have not already been produced.

18. Mr. Bell testified that he had seen evidence that Mr. DiMartini was fired for sexual harassment. Since that has not been testified to in any of the depositions, we assume he is making reference to some document that he has seen, such a document has not been produced. Please produce it promptly.

19. Mr. Bell testified that there were screenshots of texts showing that Rocco Guidicipietro wanted to get rid of Floyd Landis. These documents have not been produced. We believe that Mr. Bell may have misspoken and misdescribed the texts that you sent during the course of the deposition. However, if a text of the sort that Mr. Bell described exists, please produce it.

20. Mr. Landis described screenshots showing that Mr. Guidicipietro wanted to get rid of Mr. Landis and his "posse." Mr. Landis was specific about the use of the word "posse" in the text, referencing it several times. This document has not been produced. Please produce it.

21. Mr. Bell and Mr. Landis testified as to the links in Defendants' exhibit D-224. The linked documents have not been produced. Please produce them.

22. Mr. Landis testified that the attachments to Exhibit D-224, as well as other documents belonging to Floyd's, were stored in Floyd's Protonmail cloud storage. When producing the attachments to D-224, please affirm that Floyd's Protonmail cloud storage has been searched for responsive documents and that all responsive documents have now been produced.

23. Mr. Landis testified to the existence of litigation by Floyd's against Jake Sitler. We believe this to be *Valued Inc. v. Sitler et al.*; Case No. 1:23-cv-00926-SKC-SBP. Mr. Landis also testified that he had given a deposition in that case. Mr. Landis described Mr. Sitler's causing substantial harms to Valued Inc, including causing it to lose valuable property and important

Daniel J. Vedra, Esq.
September 27, 2024
Page 5

    distributors, ultimately costing it millions of dollars. Obviously, documents showing that other intervening parties caused the damages to Floyd's would be responsive to ACLP Defendant's First Request number 35. Mr. Landis further testified that he blamed Alexander Capital for those damages. Accordingly, documents related to that case would be responsive to ACLP Defendant's First Request numbers 1 and 35. Please produce all documents filed by Valued, Inc. in that case, transcripts of all depositions in that case, and any documents referring to, reflecting, or concerning the calculation of damages in that case.

24. Mr. Landis testified to the existence of bank accounts under his control in the name of other corporate entities that are either subsidiaries of Floyd's or wholly owned by Mr. Landis. In particular, he testified to the existence of a bank account related to PBVille, LLC. Please produce PBVille LLC's financial information responsive to ACLP Defendant's Second Request number 2. Please further produce the responsive financial information of any other corporate entity that operated as part of the Valued Inc. group of entities.

25. Relatedly, Plaintiff's production in response to ACLP Defendants' Second Request Item 2 appears to be missing several documents. This includes any tax returns for 2022 or 2023 as well as balance sheets, profit and loss statements, and invoices. Please produce all documents responsive to that item.

26. Mr. Landis testified that PBVille LLC was, at one point in time, a wholly owned subsidiary of Valued Inc. He further testified that it is no longer a subsidiary of Valued Inc. as he had "unsubsidiariyized" it and that Alexander Capital knew of and approved of this change. Please produce any and all legal documents transferring the ownership of PBVille away from Valued, Inc. Please further produce any documents evidencing that Alexander Capital was aware of or approved of this transfer. Please produce the same for any and all other entities which are or which were once subsidiaries of Valued Inc., but that Plaintiff contends it transferred ownership of.

27. Mr. Landis testified that he had filed a complaint with FINRA concerning Alexander Capital. Please produce a copy of that complaint, along with any related correspondence.

28. Mr. Landis testified to the existence of loans to Floyd's from various insiders, including Mr. Bell, Mr. Landis's sister, and Mr. Ryan. Please produce all documents evidencing those loans and any documents evidencing repayment or forgiveness of the same.

Daniel J. Vedra, Esq.
September 27, 2024
Page 6

      29. Mr. Landis testified that there were prospective buyers of the Oregon dispensaries in 2020 and that, absent, Redemption Holdings' filing suit against Floyd's, it could have sold the Oregon dispensaries and repaid the Senior Noteholders. Please produce all documents reflecting Floyd's communication or negotiation with any prospective buyers of the Oregon dispensaries in 2019, 2020, or 2021.

      To the extent any of the above has already been produced in the Colorado case, please identify the Bates number(s) at which the responsive documents were produced. If you have any questions or want to discuss any of the items above, I would be happy to do so.

      Sincerely,

      Bryan Ward

cc:   Paul Rachmuth, Esq.
      Aaron Wright, Esq.
      Holly Cole, Esq.