# Exhibit F

1 UNITED STATES DISTRICT COURT
  SOUTHERN DISTRICT OF NEW YORK
2 --------------------------------------------

3 FLOYD'S OF LEADVILLE, INC., n/k/a VALUED, INC.,

4              Plaintiff,

5         -v-      No. 1:22-cv-03318

6 ALEXANDER CAPITAL, LP; NESA MANAGEMENT LLC;
  JOSEPH ANTHONY AMATO; ROCCO GERARD
7 GUIDICIPIETRO; JONATHAN GAZDAK; GREGORY F.
  HURLEY; HOWARD DASILVA; RONALD BARRIE CLAPHAM;
8 MARK DAVID LEONARD; THIEN TRUONG; PROVISION
  HOLDING INC., TIMOTHY KELLY; and THREE DDD LLC,

9              Defendants.

10 --------------------------------------------

11

12

13      REMOTE VIDEOCONFERENCE DEPOSITION OF

14 ALEXANDRA MERLE-HUET, a Witness herein, taken by

15 the Defendant, on Wednesday, September 4, 2024,

16 at 11:30 a.m., before Jeffrey Shapiro, a

17 Stenographic Reporter and Notary Public, within

18 and for the State of New York.

19

20

21

22

23

24

25



```
 1   A P P E A R A N C E S :

 2   HOLCOMB & WARD, LLP

 3      Attorneys for the Witness

 4      3455 Peachtree Road, Suite 500

 5      Atlanta, Georgia 30326

 6   BY:  BRYAN WARD, ESQ.
             HOLLY COLE, ESQ.
 7           AARON WRIGHT, ESQ.

 8

 9
     LAW OFFICE OF PAUL RACHMUTH, ESQ.
10
        Attorneys for the Defendants RONALD BARRIE
11      CLAPHAM and MARK DAVID LEONARD

12      265 Sunrise Highway, Suite 62

13      Rockville Centre, New York 11570

14   BY:  PAUL RACHMUTH, ESQ.

15

16   VEDRA LAW, LLC

17      Attorneys for the Plaintiff

18      1444 Blake Street

19      Denver, Colorado 80202

20   BY:  DANIEL VEDRA, ESQ.

21

22   Also Present:

23   GEORGE ELLIS, Videographer

24

25
```



1

2

3

4

5

6        IT IS HEREBY STIPULATED AND AGREED by

7   and between the attorneys for the respective

8   parties hereto, that the filing, sealing and

9   certification be, and the same are hereby

10  waived;

11

12       IT IS FURTHER STIPULATED AND AGREED

13  that all objections, except as to the form of

14  the questions, shall be reserved to the time of

15  the trial;

16

17       IT IS FURTHER STIPULATED AND AGREED

18  that the within examination may be subscribed

19  and sworn to before any notary public with the

20  same force and effect as though subscribed and

21  sworn to before this Court.

22

23

24

25



```
 1                    Merle-Huet

 2                (Time noted:  11:40 a.m.)

 3                (A videographer was requested.  A

 4     recess was taken.)

 5                (Time noted:  12:13 p.m.)

 6                THE VIDEOGRAPHER:  We are now on the

 7         record.  The time is 12:13 p.m., Eastern

 8         Time, on September 4th, 2024.  This

 9         begins the video conference deposition of

10         Alexandra Merle-Huet, taken in the matter

11         of Floyd's of Leadville, Incorporated,

12         n/k/a Valued, Incorporated versus

13         Alexander Capital LP, et al.  The case

14         number is 1:22-CV-03318-DEH, and it's

15         filed in the United States District Court

16         Southern District of New York.

17                My name is George Ellis, and I'm

18         your remote videographer.  Our court

19         reporter is Jeffrey Shapiro, and we are

20         representing Esquire Deposition

21         Solutions.

22                Counsel, please state your name and

23         who you represent, after which the court

24         reporter will swear in the witness.

25                MS. COLE:  Good morning.  This is
```



1                     Merle-Huet

2       Holly Cole at Holcomb & Ward.  Also with

3       me here remotely are Bryan Ward and Aaron

4       Wright.  And We represent Alexander

5       Capital, Nesa Management, Joseph Amato,

6       Rocco Guidicipietro and Jonathan Gazdak.

7            MR. RACHMUTH:  This is Paul

8       Rachmuth.  Paul Rachmuth Law Office PLLC,

9       representing Barrie Clapham and Mark

10      Leonard.

11           MR. VEDRA:  Good morning.  This is

12      Dan Vedra on behalf of the plaintiff

13      Lloyd's of Leadville, also appearing on

14      behalf of the witness, Alexandra

15      Merle-Huet.

16           THE VIDEOGRAPHER:  Will the reporter

17      swear in the witness?

18           THE REPORTER:  Would you raise your

19      right hand?

20           (The witness complied.)

21           Do you swear that your testimony

22      today shall be the truth, the whole

23      truth, and nothing but the truth?

24           THE WITNESS:  I do.

25           THE REPORTER:  State your name and



```
 1                    Merle-Huet
 2        address for the record.
 3             THE WITNESS:  Alexandra Merle-Huet.
 4        61 Stoneyside Drive, Larchmont, New York
 5        10538.
 6
 7             DIRECT EXAMINATION
 8   BY MS. COLE:
 9        Q.    Good morning, Ms. Merle-Huet.  Is
10   there anyone present in the room with you this
11   morning?
12        A.    Just my dog.
13        Q.    Okay.  An initial matter, if I say
14   "FOL," will you understand that I'm referring
15   to Floyd's of Leadville, also known as Valued,
16   Inc.?
17        A.    I'm sorry, can you repeat that?
18        Q.    Sure.  I'm going to refer to
19   Floyd's of Leadville as FOL, with the initials,
20   will you understand that if I say "FOL"
21   throughout the questioning today, that I'm
22   referring to Floyd's of Leadville, also known
23   as Valued, Inc.?
24        A.    Okay.  F as like "Frank"?
25        Q.    Like Floyd's, O is of, L is
```



```
 1                 Merle-Huet
 2   Leadville?
 3        A.    Yes.
 4        Q.    Have you been deposed before?
 5        A.    Yes.
 6        Q.    And when were you deposed?
 7        A.    I don't remember.
 8        Q.    Have you been deposed more than one
 9   time?
10        A.    No.
11        Q.    Do you remember when you were
12   deposed if it was in connection with a lawsuit
13   filed by Redemption Holdings in the State of
14   Colorado?
15        A.    I don't recall.
16            THE VIDEOGRAPHER:  I'm sorry to
17        interrupt, Counsel.  I just wanted to
18        inform the witness.  Because it's a video
19        deposition, you're being cut off on the
20        video.  If you could adjust your camera
21        (indicating).
22            THE WITNESS:  Okay.
23            THE VIDEOGRAPHER:  There you go.
24        Thank you so much.  Yes, much better.
25        Thank you.
```



```
 1                    Merle-Huet
 2    BY MS. COLE:
 3         Q.   Did you do anything to prepare for
 4    your deposition today?
 5         A.   Not that I'm aware of.
 6         Q.   Did you meet with anyone to discuss
 7    the deposition before today?
 8         A.   No.
 9         Q.   Did you review any documents before
10    today?
11         A.   No.
12         Q.   Are you represented by counsel for
13    the purpose of this deposition this morning?
14         A.   I think so.
15           Dan, are you on?
16           MR. VEDRA:  I'm here.
17           THE WITNESS:  Okay.  Yes.
18    BY MS. COLE:
19         Q.   So, Mr. Vedra is your counsel today
20    for purposes of the deposition?
21         A.   I believe so, yes.  But I never
22    quite know personal, you know, I'm not a
23    lawyer, so I don't know any of the
24    technicalities.
25         Q.   And when did you engage him to
```



```
 1                    Merle-Huet
 2   represent you for today?
 3          A.    That, I don't know.
 4          Q.    Are you paying Mr. Vedra to
 5   represent you this morning for the deposition?
 6          A.    I'm not sure.
 7          Q.    Is Floyd's of Leadville paying for
 8   Mr. Vedra's representation this morning?
 9          A.    I don't know.
10          Q.    Are you familiar with the
11   allegations and claims asserted by Floyd's of
12   Leadville against Alexander Capital in this
13   litigation for which you're testifying this
14   morning?
15          A.    I don't recall them.
16          Q.    Have you read any of the pleadings
17   of the case?
18          A.    No.
19          Q.    You have a master's degree in
20   international affairs from Columbia University;
21   correct?
22          A.    Yes.
23          Q.    And you also have a bachelor's of
24   science degree in language from Georgetown; is
25   that correct?
```



```
 1                    Merle-Huet
 2         A.    Yes.
 3         Q.    Are you currently married to Floyd
 4  Landis?
 5         A.    I'm not sure about that.
 6         Q.    You're not sure if you're currently
 7  married to him?
 8         A.    No.
 9         Q.    Were you previously married to
10  Floyd Landis?
11         A.    I don't -- I'm not sure -- I'm
12  unsure about that.
13         Q.    You're unsure about whether you
14  have ever been married to Floyd Landis?
15         A.    Yes.
16         Q.    Do you recall testifying in a
17  deposition in 2022 that you and Mr. Landis were
18  husband and wife?
19         A.    I do not remember that.
20         Q.    Are you currently employed?
21         A.    I'm unsure.
22         Q.    You're unsure whether you're
23  currently employed?
24         A.    I'm unsure.
25         Q.    Can you explain that to me, how you
```



```
 1                    Merle-Huet
 2   don't know whether you're employed or not?
 3         A.    I'm unsure.
 4         Q.    Do you have a job?
 5         A.    I don't know.
 6         Q.    Are you employed at the Federal
 7   Reserve Bank of New York?
 8         A.    No.
 9         Q.    Were you employed at the Federal
10   Reserve Bank of New York?
11         A.    When?
12         Q.    At any time.
13         A.    Yes.
14         Q.    And when was the last time that you
15   were employed at the Federal Reserve Bank of
16   New York?
17         A.    I don't recall.
18         Q.    Were you employed there in 2022?
19         A.    I don't recall.
20         Q.    Do you recall testifying in a
21   deposition that you were employed at the
22   Federal Reserve Bank of New York in 2022?
23         A.    I don't recall the details.
24         Q.    Let's go through your employment
25   history, can you tell me about the first job
```



1                    Merle-Huet
2    that you had after graduating with your
3    master's degree from Columbia University?
4          A.    I don't remember that.  That was a
5    very long time ago.
6          Q.    Do you remember any places you have
7    worked since you graduated?
8          A.    No.  Except for the Federal
9    Reserve, which I just answered you I had worked
10   at.
11         Q.    And how long did you work there?
12         A.    I don't remember exactly.
13         Q.    So, you don't recall whether you
14   started working at the Federal Reserve Bank
15   right after you got your master's degree from
16   Columbia?
17         A.    No.
18         Q.    What were your roles and
19   responsibilities at the Federal Reserve Bank of
20   New York?
21         A.    I don't know what time period
22   you're referring to or when, so I don't know.
23         Q.    I don't know what time period I'm
24   referring to either because you don't recall
25   when you were employed there.  So, the last



1                    Merle-Huet

2    time that you were employed there, what was

3    your last position there?

4           A.    I don't recall.

5           Q.    You don't recall what your position

6    was when you -- the last day of your employment

7    was at the Federal Reserve Bank of New York?

8           A.    I'm unsure.

9           Q.    You were formerly employed at

10   Floyd's of Leadville; correct?

11          A.    I don't recall that.

12          Q.    You don't recall ever being

13   employed at Floyd's of Leadville?

14          A.    I'm not sure.

15          Q.    You're not sure if you recall or

16   you're not sure if you were employed?

17          A.    I'm unsure.

18          Q.    About what?

19          A.    What's your question?

20          Q.    I asked you:  Were you formerly

21   employed at Floyd's of Leadville?

22          A.    And I'm unsure about that.

23          Q.    Okay.  Do you recall testifying

24   previously in 2022 that you were employed by

25   Floyd's of Leadville?



```
 1                    Merle-Huet
 2          A.    No.
 3          Q.    Do you recall ever testifying that
 4   you began your employment at Floyd's of
 5   Leadville in either the end of September 2018
 6   or the beginning of October 2018?
 7          A.    No, I don't remember that.
 8          Q.    You don't remember testifying that
 9   or you don't remember whether that was true?
10          A.    I don't remember testifying that.
11          Q.    Were you employed with Floyd's of
12   Leadville in September of 2018?
13          A.    I'm unsure.
14          Q.    Were you employed with Floyd's of
15   Leadville in October of 2018?
16          A.    I'm unsure.
17          Q.    Did you ever advise Floyd's of
18   Leadville in any capacity, regardless of
19   whether you were employed with the company or
20   not?
21          A.    I'm unsure.
22          Q.    Did you advise Floyd Landis on
23   administrative things in connection with his
24   company, Floyd's of Leadville?
25          A.    I'm unsure.
```



1                      Merle-Huet

2          Q.    Were you ever the chief operating

3     officer of Floyd's of Leadville?

4          A.    I am unsure.

5          Q.    If I were to show you documents

6     showing that you were identified as the chief

7     operating officer, would you have any reason to

8     dispute that?

9          A.    I don't know.  I'd have to see the

10    documents.

11         Q.    Okay.  Were you part of the

12    executive team at Floyd's of Leadville?

13         A.    I don't recall.

14         Q.    Did you serve as president of

15    Floyd's of Leadville at any time?

16         A.    I'm unsure.

17         Q.    I'm going to share with you a

18    document that's been identified, that I have

19    marked as Defendant's Exhibit 2 (indicating).

20             (Exhibit 2 was so marked for

21         identification.)

22    BY MS. COLE:

23         Q.    Would you let me know if you could

24    see the exhibit?

25         A.    It's hard to see.



1                    Merle-Huet

2          Q.    Is it too small for you to see it?

3          A.    It's a little small.

4          Q.    Is that better?

5          A.    No, it didn't change.

6               THE VIDEOGRAPHER:  Counsel, sorry,

7          if I may.  In the exhibits, the witness

8          can zoom, as well.

9               THE WITNESS:  Thank you, Mr. Ellis.

10         I see it.

11              THE VIDEOGRAPHER:  You're welcome.

12              THE WITNESS:  Okay.

13   BY MS. COLE:

14         Q.    Are you able to zoom in on the

15    document so that you can read it?

16         A.    Yes.

17         Q.    Do you recognize the document

18    marked as Defendants' Exhibit 2?

19         A.    No.

20         Q.    Do you see here on the top third of

21    the page, it says "forwarded message from

22    Alexandra Merle" with the e-mail address

23    Alex@FloydsofLeadville.com?

24         A.    I can see that on the document.

25         Q.    Is this an e-mail that you sent



                        Merle-Huet

1    from that e-mail address to

2    Tim@FloydsofLeadville.com on September 18th,

3    2018?

4         A.    That, I don't know.  I don't know.

5         Q.    Do you have any reason to believe

6    that it's not an e-mail that you sent to

7    Tim@FloydsofLeadville.com on September the

8    18th?

9         A.    I mean, I can think of a lot of

10   different ways that I didn't send an e-mail, so

11   I don't know if it was me.

12        Q.    Do you have any reason to dispute

13   that you sent this e-mail?

14        A.    Sure, somebody could have hacked

15   into my e-mail address.

16        Q.    Have you ever been made aware that

17   someone hacked into your

18   Alex@FloydsofLeadville.com e-mail address?

19        A.    They could have hacked into my

20   e-mail address and not made me aware of it.

21   That happens every day on the Internet.

22        Q.    Right.  I didn't ask if they made

23   you aware.  I asked whether you were ever

24   aware?



1                    Merle-Huet

2          A.    I don't know.

3          Q.    Did you have an e-mail address at

4    FloydsofLeadville.com?

5          A.    I don't recall.

6          Q.    You don't recall ever sending

7    e-mails or receiving e-mails?

8          A.    I do not recall.

9          Q.    Do you know who

10   Tim@FloydsofLeadville.com is?

11         A.    I don't recall who that is.

12         Q.    Is it Tim Kelly?

13         A.    I don't know.

14         Q.    Do you know who Tim Kelly is?

15         A.    I don't know.

16         Q.    You don't know who Tim Kelly is?

17         A.    I said that three times.  I do not

18   know who Tim Kelly is.  I don't remember who

19   Tim Kelly is.

20         Q.    Well, those are two different

21   things.  So, I've asked if you knew him, so

22   either you know him or you don't remember him,

23   so you're saying that you don't remember him?

24         A.    I don't remember knowing him.

25         Q.    Could you please scroll to the



1                    Merle-Huet

2    second page of this document (indicating)?

3          A.    Okay.

4          Q.    Do you recognize this document

5    which is the attachment to the e-mail we were

6    just looking at?

7          A.    I do not.

8          Q.    Have you ever seen a document like

9    this before?

10         A.    I don't recall seeing one like this

11   before.

12         Q.    Could you please take a look at

13   page 10 of this document (indicating)?

14             Are you at page 10?

15         A.    Not yet.

16         Q.    It's page 10 of the slide, but page

17   11 of the exhibit.

18         A.    So, where am I supposed to be

19   looking?

20         Q.    Do you see a document that has the

21   number 10 in the lower left corner?

22         A.    No.

23         Q.    Do you see a document that says

24   "the executive team" at the top?

25         A.    Yes.



1                     Merle-Huet

2          Q.    Do you see your name second from

3      the top here in the list of names?

4          A.    I see Alexandra Merle.

5          Q.    And what does it say besides the

6      name?

7          A.    It says, "President and Chief

8      Operating Officer."

9          Q.    Were you the president and chief

10     operating officer of Lloyd's of Leadville on

11     September 18th, 2018?

12         A.    I'm unsure.

13         Q.    Can you think of a reason why this

14     document would identify you as the president

15     and chief operating office of Lloyd's of

16     Leadville if you were, in fact, not the

17     president or chief operating officer?

18         A.    I don't know, I don't know.

19         Q.    Okay.  I am going to show you an

20     exhibit marked as Defendants' Exhibit 4.

21             (Exhibit 4 was so marked for

22         identification.)

23     BY MS. COLE:

24         Q.    And if you need to zoom in on the

25     document so that you can see it better and read



1                    Merle-Huet

2    it, please do so.

3            MR. VEDRA:  Are we skipping Exhibit

4        3?

5            MS. COLE:  Yeah, we used Exhibit 3

6        in the Grella deposition.

7            MR. VEDRA:  Which deposition?

8            MS. COLE:  Gary Grella.

9            MR. VEDRA:  Okay.  Thank you.

10           MS. COLE:  You're welcome.

11   BY MS. COLE:

12           Q.   Are you able to see Defendants'

13   Exhibit 4?

14           A.   Yes.

15           Q.   Do you recognize the document

16   marked as Exhibit 4?

17           A.   I do not.

18           Q.   Is it an e-mail that you sent on

19   February 5th, 2019 with the subject line "FOL

20   Debt"?

21           A.   I'm unsure.

22           Q.   You're unsure?

23           A.   I'm unsure.

24           Q.   I can't hear you very well.  I

25   can't tell if you're saying I'm sure or unsure,



```
 1                    Merle-Huet
 2      I'm just trying to clarify.
 3            A.    Okay.  I am not sure.
 4            Q.    Okay.  Thank you.  Do you have any
 5      reason to believe that you did not send this
 6      e-mail on this date?
 7            A.    I'm unsure.
 8            Q.    You're unsure if you have a reason?
 9            A.    Correct.
10            Q.    So, you don't have a reason to
11      dispute it?
12            A.    I'm unsure how to answer your
13      question.
14            Q.    Do you have a reason to believe
15      that this is not an e-mail that you sent on
16      February 7th, 2019?
17            A.    I don't know.
18            Q.    So, you cannot identify a reason
19      that you did not send this e-mail; is that
20      correct?
21            MR. VEDRA:  Objection to form.
22            THE WITNESS:  I can or cannot.  I
23         don't know.
24   BY MS. COLE:
25            Q.    Well, if you can, would you please
```



```
 1                    Merle-Huet
 2    do so?
 3          A.    If I can what?
 4          Q.    You said you can or you cannot, but
 5    if you can, would you please provide a reason?
 6          A.    A reason for?
 7          Q.    Why you would not have sent this
 8    e-mail, since you say you do not recognize it
 9    today?
10          A.    I don't know.
11          Q.    Can I get you to go to the second
12    page of this document, please (indicating)?
13          A.    Okay.
14          Q.    Do you recognize the document which
15    is attached to the e-mail we were just looking
16    at?
17          A.    I do not.
18          Q.    Could you please go to page 15 of
19    this document?
20          A.    Okay.
21          Q.    Do you see page 15 that says "the
22    executive team" at the top of the page?
23          A.    Yes.
24          Q.    Do you see your name second from
25    the top of the list of three names there?
```



```
 1                    Merle-Huet
 2         A.    I see Alexandra Merle.
 3         Q.    What does it say beside your name?
 4         A.    "President and Chief Operating
 5    Officer."
 6         Q.    Were you the president and chief
 7    operating officer of Floyd's of Leadville on
 8    February 5th, 2019?
 9         A.    I'm unsure.
10         Q.    Did you create this deck?
11         A.    I do not recall.
12         Q.    Did you participate in the creation
13    of this deck?
14         A.    I do not recall.
15         Q.    Do you recall whether you had any
16    input into the content of the deck?
17         A.    I do not.
18         Q.    I'm going to show you an exhibit
19    marked as Defendants' Exhibit 4A (indicating).
20             (Exhibit 4A was so marked for
21        identification.)
22    BY MS. COLE:
23         Q.    And you can zoom in on this exhibit
24    once you have it in front of you, so that you
25    can see it clear enough to read from it, and
```



```
 1                    Merle-Huet
 2     then let me know when you're ready.
 3          A.    Okay.
 4          Q.    I will represent to you that this
 5     is the metadata for the document that we were
 6     just looking at as Exhibit 4.
 7          Do you see on the fifth line down, it
 8     states that the document's last author to be
 9     Merle-Huet -- Alex Merle, I'm sorry.
10          A.    No.
11          MR. VEDRA:  Objection; foundation.
12  BY MS. COLE:
13          Q.    Do you see where it says,
14     "Production date start"?
15          A.    No.
16          Q.    At the top, very top of the
17     document, metadata for Exhibit 4, right under
18     that, it says, "Production date start"?
19          A.    Yes.
20          Q.    And then under that it says,
21     "e-mail sent."
22          Do you see that?
23          A.    Yes.
24          Q.    Under that, it says "E-mail
25     received."
```



1                     Merle-Huet

2          Do you see that?

3          A.    Yes.

4          Q.    Under that, it says, "Document

5     title."

6          Do you see that?

7          A.    Yes.

8          Q.    And under that, it says, "Document

9     last author," what does it say there?

10         A.    It says, "Alex Merle."

11         Q.    Does this refresh your recollection

12    at all whether or not you created or modified

13    the document marked as Exhibit 4 that we were

14    looking at?

15         MR. VEDRA:  Objection to form and

16       foundation.

17         THE WITNESS:  Definitely not.

18   BY MS. COLE:

19         Q.    I'm going to show you an exhibit

20    marked as Defendants' Exhibit 5.

21         (Exhibit 5 was so marked for

22       identification.)

23   BY MS. COLE:

24         Q.    And again, you can zoom in so that

25    you're able to read this.



1                      Merle-Huet

2          Do you recognize the document marked

3   as Exhibit 5?

4          A.    No.

5          Q.    Does it look like an e-mail that

6   you sent to Jonathan Gazdak on April 16th of

7   2020 with the subject, "Recent Presentation"?

8          A.    I'm unsure.

9          Q.    You're unsure if it looks like an

10  e-mail?

11         A.    Was that the question before?

12         Q.    It was.

13         A.    I'm unsure.

14         Q.    Do you know what an e-mail looks

15  like?

16         A.    I'm unsure.

17         Q.    Do you have any reason to believe

18  that this is not an e-mail that you sent to

19  Jonathan Gazdak on April the 16th of 2020?

20         A.    I'm unsure.  I don't have a way to

21  verify a document here.  I don't know.

22         Q.    Who is Chris Ryan?

23         A.    I'm unsure.

24         Q.    You don't know who Chris Ryan is?

25         A.    I'm unsure.



```
 1                   Merle-Huet
 2        Q.    Have you ever met Chris Ryan?
 3        A.    Unsure.
 4        Q.    Do you know who Floyd Landis is?
 5        A.    I'm unsure.
 6             MS. COLE:  Let's take a break and go
 7        off the record for a few minutes.  So,
 8        we'll take a five-minute break.
 9             THE VIDEOGRAPHER:  Off the record.
10        The time is 12:39.
11             (Recess taken.)
12             THE VIDEOGRAPHER:  We are back on
13        the record.  The time is 12:47.
14             (Discussion off the record.)
15   BY MS. COLE:
16        Q.    Ms. Merle-Huet, is there any reason
17    that you cannot testify fully and truthfully
18    today?
19        A.    Not that I know of except for sound
20    issues if I mishear your questions.
21        Q.    Do you have any health issues today
22    that would impede your ability to recollect
23    events and testify to them truthfully?
24        A.    Not that I'm aware of.  I don't
25    know.
```



1                    Merle-Huet

2         Q.    Are you on any medications today

3    that would impede your ability to recollect

4    events and testify to them truthfully?

5         A.    I mean, unless there are side

6    effects I'm not aware of, I don't know.

7         Q.    Have you ever had issues

8    remembering things based on the medications

9    you're currently taking?

10        A.    I wouldn't know.  I don't know.

11        Q.    You wouldn't know if you had issues

12   with your memory before today?

13        A.    No.

14        Q.    I'm sorry to pry into your personal

15   health.  What medications are there, that you

16   were not sure about the side effects?

17        A.    I don't know.

18        Q.    You don't know what medications

19   you're taking?

20        A.    No.

21        Q.    Are you taking any medication?

22        A.    I'm not sure.  I'm unsure.

23        Q.    Did you take any medication this

24   morning?

25        A.    Not that I remember.



```
 1                    Merle-Huet
 2         Q.    Do you know any person by the name
 3    of Floyd Landis?
 4         A.    Yes.
 5         Q.    And how do you know a person by the
 6    name of Floyd Landis?
 7         A.    I don't recall how I know him, but
 8    I know him.
 9         Q.    And in what context do you know
10    him?
11         A.    I'm not sure what that means, "in
12    what context."
13         Q.    Well, when you say you know a
14    person named Floyd Landis, what is that answer
15    based on?
16         A.    Knowing him.
17         Q.    And how do you know him?
18         A.    I know him in different ways.
19         Q.    Tell me about those ways.
20         A.    I know him as a person.
21         Q.    How do you know him as a person?
22         A.    I'm not sure what you're getting
23    at.  I don't understand question.
24         Q.    You don't understand what it means
25    to know someone, how you know someone?
```



```
 1                    Merle-Huet
 2        A.    No.
 3        Q.    Have you met a person named Floyd
 4   Landis?
 5        A.    I have.
 6        Q.    And where did you meet this person
 7   named Floyd Landis?
 8        A.    I don't recall.
 9        Q.    The person that you know as Floyd
10   Landis, was he an athlete in cycling?
11        A.    I'm unsure, but he was a cyclist.
12        Q.    So, that was my question.  So, he
13   is a cyclist, is that the Floyd Landis that you
14   know?
15        A.    He was a cyclist.
16        Q.    Are you married to this Floyd
17   Landis?
18        A.    I don't know.
19        Q.    How is it that you don't know
20   whether you're married to someone?
21        A.    Because there is different ways of
22   being married in different states.
23        Q.    Okay.  Are you married to Floyd
24   Landis in any way?
25        A.    I'm unsure.
```



1                    Merle-Huet

2          Q.    When you said there's different

3    ways to be married, what are those ways?

4          A.    So, I believe that if you live with

5    someone for a long time in certain states,

6    there's -- and you become married somehow, but

7    I'm not sure how it works.

8          Q.    Have you ever lived with Floyd

9    Landis?

10         A.    I have.

11         Q.    And what state do you live with

12   him?

13         A.    I don't live with him now.

14         Q.    Okay.  When did you live with him?

15         A.    I don't recall when it was.

16         Q.    Do you recall how long you lived

17   with him?

18         A.    No.

19         Q.    What are the other ways that you

20   could be married to someone?

21         A.    I'm unsure.

22         Q.    Well, you testified there are

23   multiple ways, so do you know more than one

24   way?

25         A.    No, I'm unsure.



```
 1                    Merle-Huet
 2        Q.    Do you live alone right now?
 3        A.    No.
 4        Q.    Who do you live with now?
 5        A.    My dog and my daughter.
 6        Q.    And who is the father of your
 7   daughter?
 8        A.    I'm unsure, I never verified that.
 9        Q.    Who does your daughter think is her
10   father?
11        A.    I don't know what she thinks.
12        Q.    Your daughter does not know who her
13   father is?
14        A.    I'm unsure.
15        Q.    When you lived with Mr. Landis, was
16   that more than five years?
17        A.    I don't recall.
18        Q.    Did you live with him more than a
19   day?
20        A.    I don't recall.
21        Q.    Do you know what Floyd's of
22   Leadville is?
23        A.    Unsure.
24        Q.    You're unsure?
25        A.    Unsure.
```



```
 1                    Merle-Huet
 2        Q.    Have you ever been to Leadville,
 3   Colorado?
 4        A.    I don't recall.
 5        Q.    Do you know who Frank DiMartini is?
 6        A.    Unsure.
 7        Q.    Do you know a person by the name of
 8   Frank DiMartini?
 9        A.    Unsure.
10        Q.    Do you know a person with the name
11   Chris Ryan?
12        A.    Unsure.
13        Q.    Have you ever met a person named
14   Chris Ryan?
15        A.    Was that the same question as
16   before?
17        Q.    I'll phrase it differently.  Have
18   you ever met a person by the name of Chris
19   Ryan?
20        A.    Unsure.
21        Q.    Have you ever been to the State of
22   Colorado?
23        A.    I don't recall.
24        Q.    Have you ever had a wedding
25   ceremony in which you were the bride?
```



1                    Merle-Huet

2          A.    What time frame?

3          Q.    Any time frame.

4          A.    Yes.

5          Q.    When was that?

6          A.    I'm not sure what the dates were.

7   Long time ago.

8          Q.    Who was the groom at that wedding

9   ceremony?

10         A.    Jean-Michel Huet.

11         Q.    And did you get divorced from

12  Mr. Huet?

13         A.    I did.

14         Q.    When was that?

15         A.    I don't remember.

16         Q.    Was it a long time ago?

17         A.    I'm not sure.

18         Q.    Well, you said the wedding was a

19  long time ago, so I was just trying to figure

20  out if the divorce was also a long time ago.

21             You don't recall exactly?

22         A.    No.

23         Q.    Are you familiar with the

24  investment banking firm Alexander Capital that

25  is named as a defendant in this lawsuit?



1                    Merle-Huet

2          A.    Unsure.

3          Q.    Do you have any understanding why

4    you were subpoenaed to testify in this case

5    today?

6          A.    No.

7          Q.    Is it your understanding that

8    Mr. Vedra accepted service of a subpoena on

9    your behalf?

10         A.    I don't know.

11         Q.    Do you have an understanding of why

12   he would do so?

13         A.    I think yes, if he got a subpoena,

14   then he has to accept it.

15         Q.    Well, the subpoena was not to him.

16   Have you had a wedding ceremony with any other

17   individual than Mr. Huet?

18         A.    No.

19         Q.    I'm sorry, I don't remember your

20   answer to one of my recent questions.  I'm just

21   going to repeat it, I apologize for that.  But

22   are you familiar with an investment banking

23   company called Alexander Capital?

24         A.    Unsure.

25         Q.    Have you ever heard of the



1                    Merle-Huet

2      investment banking company Alexander Capital

3      LP?

4            A.    I don't recall.

5            Q.    Did you and Floyd Landis ever

6      discuss proposed terms for a capital raise for

7      Floyd's of Leadville with Alexander Capital in

8      October or November of 2017?

9                MR. VEDRA:  Objection; foundation.

10               THE WITNESS:  I don't recall.

11     BY MS. COLE:

12           Q.    Did you and Frank DiMartini ever

13     discuss proposed terms for a capital raise for

14     Floyd's of Leadville in October or November

15     2017?

16               MR. VEDRA:  Same objection.

17               THE WITNESS:  I don't recall.

18     BY MS. COLE:

19           Q.    Do you know someone by the name of

20     Peter DiChiara?

21           A.    Unsure.

22           Q.    Do you recall whether you had any

23     discussions about the proposed terms of a

24     capital raise for Floyd's of Leadville with

25     Peter DiChiara?



1              Merle-Huet

2        A.    I don't recall.

3        Q.    Do you know if Peter DiChiara was

4   an attorney representing Floyd's of Leadville

5   in connection with a capital raise from 2017

6   through 2019?

7        A.    No.

8        Q.    Are you aware that Floyd's of

9   Leadville raised capital from 2017 to 2019 in

10  the form of senior secured promissory notes?

11       A.    Unsure.

12       Q.    Do you know what a senior secured

13  promissory note is?

14       A.    No.

15       Q.    Do you know what a promissory note

16  is?

17       A.    No.

18       Q.    Have you ever heard the term

19  "promissory note"?

20       A.    I have.

21       Q.    In what context have you heard the

22  term promissory note?

23       A.    I don't remember.

24       Q.    Do you have an understanding of

25  what a promissory note is?



```
 1                    Merle-Huet
 2         A.    I don't know.
 3         Q.    Do you have a mortgage on your
 4    home?
 5         A.    Yes.
 6         Q.    And is it your understanding that a
 7    mortgage is a loan?
 8         A.    I'm not sure.
 9             MR. VEDRA:  Objection; form and
10        foundation.
11    BY MS. COLE:
12         Q.    You're not sure whether a mortgage
13    is a loan?
14         A.    I'm not sure.
15         Q.    Are you aware that Floyd's of
16    Leadville received over $4 million in capital
17    raised from 2017 to 2019?
18             MR. VEDRA:  Objection; form and
19        foundation.
20             THE WITNESS:  I don't recall.
21    BY MS. COLE:
22         Q.    I'm going to show you a document
23    that I have marked as Defendants' Exhibit 6
24    (indicating).
25             (Exhibit 6 was so marked for
```



```
 1                    Merle-Huet
 2      identification.)
 3   BY MS. COLE:
 4           Q.    Do you recognize the document
 5      marked as Exhibit 6?
 6           A.    I have to zoom in.  No.
 7           Q.    Do you know a person by the name of
 8      Kirill Nikonov; N-I-K-O-N-O-V?
 9           A.    I'm not sure.
10           Q.    Is this an e-mail from an
11      individual named Kirill Nikonov@CMDLLP.com to
12      Frank DiMartini, and then CCing other
13      individuals, including
14      Alex.Merle@FloydsofLeadville.com?
15           A.    I mean, that's what the words on
16      the page say, but I can't verify where this
17      comes from or if this is a real e-mail, so no,
18      I don't know for sure.
19           Q.    So, you don't recall receiving this
20      e-mail; is that correct?
21           A.    I don't recall.
22           Q.    Was
23      Alex.Merle@FloydsofLeadville.com ever your
24      e-mail address?
25           A.    I'm not sure.
```



1              Merle-Huet

2        Q.    How many e-mail addresses do you

3    have?

4        A.    I don't know.

5        Q.    Do you have more than one e-mail

6    address?

7        A.    I think so.

8        Q.    Is it possible that you had an

9    e-mail address

10   Alex.Merle@FloydsofLeadville.com?

11       A.    I'm unsure.

12       Q.    Do you have a reason to believe

13   that you did not receive this e-mail on

14   December 21st, 2018?

15       A.    I can't attest as to whether or not

16   I got this e-mail.  I don't know.

17       Q.    Do you know the reason why you

18   would not have received this e-mail?

19       A.    It could have bounced back.  I have

20   no way of knowing that.  I don't know.

21       Q.    So, it could have bounced back.

22   Does that mean that you had an

23   Alex.Merle@FloydsofLeadville.com e-mail address

24   from which this e-mail could have bounced back

25   from?



                        Merle-Huet

1

2          A.      Well, if it's not an e-mail

3    address, then it would have bounced back.

4          Q.      What are your current e-mail

5    addresses?

6          A.      I'm not sure.

7          Q.      Can you tell me one?

8          A.      I have AlexMerleHuet@Hotmail.com.

9          Q.      Is that the e-mail address that you

10   use primarily to send electronic

11   communications?

12         A.      No.

13         Q.      What is the e-mail address that you

14   use primarily to send electronic

15   communications?

16         A.      I'm not sure.

17         Q.      So, you remember the Hotmail e-mail

18   address even though it's not the one you use

19   primarily, but you don't remember the address

20   of the e-mail that you do use primarily?

21         A.      Correct.

22         Q.      Do you recall any other e-mail

23   addresses other than the AlexMerleHuet@Hotmail

24   e-mail address?

25         A.      I don't recall.



```
 1                    Merle-Huet
 2         Q.    Do you have more than one e-mail
 3    address?
 4         A.    Probably.
 5         Q.    Did you create more than one e-mail
 6    address?
 7         A.    I think so.
 8         Q.    Do you recall, other than the
 9    Hotmail, any of the other e-mail addresses that
10    you have created?
11         A.    No.
12         Q.    When was the last time you sent an
13    e-mail?
14         A.    The last time, I don't know.
15         Q.    Did you send an e-mail yesterday?
16         A.    Maybe.  I don't know.
17         Q.    I'm going to show you a document I
18    marked as Exhibit 7 (indicating).
19              (Exhibit 7 was so marked for
20    identification.)
21    BY MS. COLE:
22         Q.    Can you see the document?
23         A.    Yes.
24         Q.    And does this look like an e-mail
25    sent from the e-mail address
```



```
 1                  Merle-Huet
 2   Alex@FloydsofLeadville.com?
 3         A.    I don't know.  It's hard for me to
 4   verify.  I don't know if you just typed it in
 5   on a piece of paper or where it comes from.  I
 6   don't know.
 7         Q.    I just asked you if it looks like
 8   an e-mail.  I didn't ask you to verify where it
 9   came from or whether I created it for purposes
10   of this deposition.
11            Does it look like an e-mail to you?
12         A.    I'm not sure.
13         Q.    Have you ever seen an e-mail?
14         A.    I have.
15         Q.    Does this look like an e-mail you
16   ever sent?
17         A.    I'm not sure.
18         Q.    Have you ever printed out an
19   e-mail?
20         A.    Not that I remember.
21         Q.    Did you go by Alexandra as your
22   first name?
23         A.    No.
24         Q.    What do you go by?
25         A.    Alex.
```



```
 1                    Merle-Huet
 2        Q.    So, is it possible that you sent
 3   this e-mail that's signed Alex?
 4        A.    Maybe.  I'm not sure.
 5        Q.    So, you acknowledge that you might
 6   have sent this e-mail; is that correct?
 7        A.    No.
 8        Q.    So, what did you mean by "maybe"?
 9        A.    I said unsure.
10        Q.    When you said "maybe," are you
11   changing that answer now to unsure?
12        A.    Maybe could be unsure.  I'm not
13   sure.  So, could be maybe.  I don't know.
14        Q.    Do you have any reason to believe
15   other than you think I might have created this
16   document, but this is not an e-mail that you
17   sent from Alex@FloydsofLeadville.com?
18        A.    Unsure.
19        Q.    So, you're unsure if there's a
20   reason you can think of or you don't have a
21   reason?
22        A.    I'm unsure of a reason.
23        Q.    Have you sent any e-mails today?
24        A.    Not that I know of.
25        Q.    How did you communicate to Mr.
```



1                      Merle-Huet

2    Vedra that you could only participate in this

3    deposition until 1:30?

4          A.    We talked on the phone.

5          Q.    How long did you talk on the phone?

6          A.    I do not know.

7          Q.    Was it more than one minute?

8          A.    I don't know.

9          Q.    Did you communicate -- and I don't

10   want to know the contents of it, but did you

11   communicate anything other than the fact that

12   you needed to stop at 1:30 today?

13         A.    Well, if I can't tell you what I

14   said to him, then I'm not sure how to answer

15   your question.

16         Q.    You can tell me if you discussed

17   anything else with a yes or no answer?

18         A.    Okay.  So, can you please repeat

19   the question?

20         Q.    Okay.  So, you said that you spoke

21   with Mr. Vedra on the phone today to

22   communicate to him that you needed to stop at

23   1:30 today; is that correct?

24         A.    Yes.

25         Q.    Did you communicate -- did you



1                    Merle-Huet

2    discuss anything else with Mr. Vedra during

3    that phone call?  Just yes or no?

4         A.    I don't remember.

5         Q.    What time did you speak with him on

6    the phone today?

7         A.    I didn't look at the time.  I don't

8    know.

9         Q.    Was it this morning or was it an

10   hour before we were supposed to log on at

11   11:30?  Do you have any sense of the time?

12        A.    What time zone are you asking

13   about?

14        Q.    Well, you're in Eastern Daylight

15   time zone; correct?

16        A.    I am.

17        Q.    So, right now, it's 1:11 p.m.;

18   right?

19        A.    Yes.

20        Q.    And so, the deposition was

21   scheduled to begin at 11:30 a.m.; correct?

22        A.    That's what I was told.

23        Q.    So, about how far in advance of the

24   deposition did you have this phone call with

25   Mr. Vedra?



```
 1                    Merle-Huet
 2          A.    I don't remember.  I didn't look at
 3     the time, I cannot answer your question.
 4          Q.    What time did you wake up this
 5     morning?
 6          A.    6:41.
 7          Q.    What time did you eat breakfast?
 8          A.    I didn't look at the time.  I don't
 9     know.
10          Q.    What time do you normally eat
11     breakfast?
12          A.    Depends on the day.
13          Q.    Did you eat breakfast today?
14          A.    I did.
15          Q.    Do you take your daughter to
16     school?
17          A.    Sometimes.
18          Q.    Did you take your daughter to
19     school today?
20          A.    I did.
21          Q.    What time does she go to school?
22              MR. VEDRA:  I'm going to object on
23         relevance grounds.
24              MS. COLE:  I'm trying to get a sense
25         of how long this communication was
```



1              Merle-Huet

2    because she can't tell me what time she

3    made it, so I'm trying to pin her down on

4    the time.

5          MR. VEDRA:  So, I'm sorry, but how

6    is what she had for breakfast or when she

7    ate it relevant to any fact of

8    consequence in this case.

9          MS. COLE:  I'm trying to refresh her

10   recollection as to what time she might

11   have placed the phone call to you, Dan.

12         MR. VEDRA:  And how is that

13   relevant?

14         MS. COLE:  Are you objecting to

15   form?

16         MR. VEDRA:  I am.

17         MS. COLE:  Okay.  Well, objections

18   based on relevance aren't proper for

19   depositions, so we're going to move on.

20         MR. VEDRA:  You're going to move on?

21         MS. COLE:  Yes, I'm the one taking

22   the deposition.

23         MR. VEDRA:  Okay.  Let's stop

24   talking about breakfast.

25         THE WITNESS:  I mean, I'm happy to



```
 1                   Merle-Huet
 2         talk about breakfast all you want, if
 3         that's what you want to talk about.
 4    BY MS. COLE:
 5         Q.    So, I think I pulled up Exhibit 7.
 6    Do you have that in front of you?
 7         A.    I don't know what exhibit number
 8    this is.
 9         Q.    There's a sticker at the bottom
10    that's yellow, that says "DEF-7" --
11         A.    Yes.
12         Q.    -- do you see that?
13         A.    Yes.
14         Q.    Can you go to the second page of
15    the document, please?
16         A.    Okay.
17         Q.    Do you recognize this document?
18         A.    No.
19         Q.    Have you ever seen a document like
20    this?
21         A.    Not that I recall.
22         Q.    Do you know -- taking a look at
23    line 1, does this look like a spreadsheet to
24    you?
25         A.    It could be a Word document, it
```



1                    Merle-Huet

2    could be in PowerPoint or it could be in Excel,

3    or it could be in Google Docs, I'm not sure

4    what you mean by "spreadsheet."

5         Q.    Okay.  Where it says at the top

6    number, and then there's a row that says number

7    1, do you see that?

8         A.    Yes.

9         Q.    And then there's a column for date

10   beside that, and then a column for subscriber,

11   do you see that?

12        A.    Yes.

13        Q.    And under subscriber, it says

14   "3DDD."

15        Do you know what "3DDD" is?

16        A.    No, I do not.

17        Q.    Have you ever heard of "3DDD"?

18        A.    I don't recall.

19        Q.    Do you know a person by the name of

20   Greg Hurley?

21        A.    I don't recall.

22        Q.    Do you know a person by the name of

23   Howard DiSilva?

24        A.    Unsure.

25        Q.    Have you ever heard of an entity by



```
 1                    Merle-Huet
 2   the name of Redemption Holdings?
 3        A.    Unsure.
 4        Q.    Do you recall being named as a
 5   defendant personally on a lawsuit filed by
 6   Redemption Holdings against you and others in
 7   Colorado?
 8        A.    No, I don't recall.  I think the
 9   name -- what was the first name you asked me
10   about?
11        Q.    Greg Hurley?
12        A.    He may -- I may remember his name
13   because he was a pedophile, so I think that
14   that's why I remember his name.
15        Q.    And what information did you have
16   personal knowledge of that causes you to
17   believe that a person by the name of Greg
18   Hurley is a pedophile?
19        A.    I remember reading he was arrested,
20   and it was some sort of court document.
21        Q.    And under what circumstances caused
22   you to be reading court documents about Greg
23   Hurley?
24        A.    Well, that, I don't recall.
25        Q.    When did you read those documents?
```



1                        Merle-Huet

2          A.    I don't remember that.

3          Q.    Do you have any reason to dispute

4    that Redemption Holdings Incorporated filed a

5    lawsuit against you personally in the State of

6    Colorado?

7          A.    I don't remember, so I can't -- I'm

8    not sure what I would dispute.

9          Q.    But other than your memory, do have

10   any reason to dispute that you were personally

11   a defendant in a lawsuit in Colorado filed by

12   Redemption Holdings Incorporated?

13         A.    I don't understand your question if

14   I don't remember.

15         Q.    I'm asking if there is a reason why

16   you don't remember or a reason why you would

17   dispute that.  Have you ever been sued?

18         A.    I don't know.

19         Q.    Has anyone ever filed a lawsuit

20   against you?

21         A.    I don't recall.

22         Q.    Have you had to hire a lawyer to

23   represent you?

24         A.    I'm unsure.

25         Q.    Did you go to court when you got



```
 1                   Merle-Huet
 2   divorced from Mr. Huet?
 3        A.    Not that I remember.
 4        Q.    Have you ever signed any check on
 5   behalf of Floyd's of Leadville, Incorporated?
 6        A.    I don't know.
 7        Q.    Have you ever signed any checks on
 8   behalf of Valued Incorporated?
 9        A.    I don't know.
10        Q.    Have you ever loaned money to
11   Floyd's of Leadville, Incorporated?
12        A.    I don't know.  Not that I'm aware
13   of.
14        Q.    So, you're not aware that you
15   loaned $100,000 to Floyd's of Leadville,
16   Incorporated?
17        A.    I'm not aware.  I don't remember.
18        Q.    Do you recall signing personal
19   checks?  Have you ever signed a personal check?
20        A.    Have I ever what a personal check?
21        Q.    Signed a personal check?
22        A.    I have signed a personal check.
23        Q.    You have a checking account?
24        A.    I have a checking account, yes.
25        Q.    When was the last time you signed a
```



```
 1                     Merle-Huet
 2    personal check from your checking account?
 3         A.    I have not checked.  I don't know.
 4         Q.    I'm going to show you a document
 5    that has been marked as Defendants' Exhibit 8
 6    (indicating).
 7              (Exhibit 8 was so marked for
 8    identification.)
 9    BY MS. COLE:
10         Q.    And you can zoom in so you can see
11    this document.  Do you recognize this document
12    that I'm showing you that's been marked as
13    Defendants' Exhibit 8?
14         A.    I don't see a document.  I just
15    see -- I see a list, just Exhibit DEF-7,
16    Exhibit DEF-6.
17              THE SPEAKER:  It just came up.
18              THE WITNESS:  Okay.
19    BY MS. COLE:
20         Q.    Do you see a document that's got a
21    sticker at the bottom, a yellow sticker that
22    says DEF-8?
23         A.    Yes.
24         Q.    Do you recognize this document
25    marked as Exhibit 8?
```



1                    Merle-Huet

2         A.    No.

3         Q.    Do you see at the top, there is

4    some text that says "from," then "sent," then

5    "to," then "CC"?

6         A.    I do.

7         Q.    Do you see where -- in the line

8    that says "CC," it identifies

9    Alex@FloydsofLeadville.com and

10   FloydLandis@FloydsofLeadville.com.

11        A.    I see those words written down.

12        Q.    Have you ever sent an e-mail to

13   FloydLandis@FloydsofLeadville.com?

14        A.    I don't recall.

15        Q.    Is it possible that you sent an

16   e-mail to Mr. Landis at that e-mail address?

17        A.    If I don't recall, I don't know.

18        Q.    Can you think of any reason why you

19   would have sent an e-mail to Floyd Landis at

20   that e-mail address?

21        A.    Not right now.

22        Q.    The Floyd Landis that you know,

23   that you testified a few moments ago that you

24   know, does he have an affiliation with a

25   company FloydsofLeadville.com?



```
 1                    Merle-Huet
 2         A.    I don't know.
 3         Q.    I'm sorry, Floyd's of Leadville,
 4    Incorporated?
 5         A.    I don't know.
 6              (Discussion off the record.)
 7    BY MS. COLE:
 8         Q.    Looking down a little bit below
 9    midway on this page, do you see where it says
10    "Pete," and then "please see below and let me
11    know if you have any questions," do you see
12    where I'm talking about on this page?
13         A.    No.
14         Q.    In the middle of the page?
15         A.    Which page?
16         Q.    Do you have Defendants' Exhibit 8
17    open in front of you?
18         A.    Correct.
19         Q.    Do you see on the middle of the
20    page the word Pete, comma?
21         A.    Pete, comma?  No, I don't see Pete,
22    comma.  Can you zoom in?  It's not a zoom
23    issue -- oh, I see please, Pete -- oh, Pete,
24    comma, yes.
25         Q.    Under Pete, comma, it says, "Please
```



1                    Merle-Huet

2   see below and let me know if you have any

3   questions."  And then under that, there is some

4   sentences that start with the word "note," and

5   then a number.

6           Do you see that?

7           A.    Yes.

8           Q.    And the second sentence that starts

9   with "note," it says, "Note 35 and 63," and it

10  says "Greg Hurley."  Is this the Greg Hurley

11  that you said you recognize the name for?

12          A.    There's no way for me to know that.

13          Q.    Okay.  Well, when I asked you

14  earlier if you knew a Greg Hurley, that's what

15  you said.  And so, I'm asking you about him in

16  connection with this case.  And here, we see

17  his name on a document.  So, I'm just curious

18  why you would be reading court documents about

19  Greg Hurley if it wasn't because of his

20  connections with this case --

21          A.    Okay.  You said that's what I said.

22  What did I say that you were just referring to?

23          Q.    You said that you had heard of an

24  individual named Greg Hurley when I asked you

25  about the Redemption Holdings, Incorporated



```
 1                    Merle-Huet
 2   lawsuit.
 3        A.    Yes, Greg Hurley, the pedophile.
 4        Q.    Do you have personal knowledge that
 5   Greg Hurley is a pedophile?
 6        A.    No, unless I believed the court
 7   documents, which should be true.
 8        Q.    Can you go to the second page of
 9   this document, please (indicating)?
10        A.    Okay.
11        Q.    And actually, if you wouldn't mind,
12   going to page 5.
13            Are you at page 5?
14        A.    I'm not sure which one is page 5.
15   They're not numbered.
16        Q.    So, in the viewer for the exhibit,
17   if you hover at the bottom, there is arrows
18   like you would have like maybe an Adobe, and
19   you can scroll back and forth between pages and
20   it tells you how many pages there are, so it
21   says 5 of 6 -- if you hover at the bottom.
22            Do you see that now?
23        A.    Yes.
24        Q.    Do you recognize this document?
25        A.    No.
```



```
 1                    Merle-Huet
 2        Q.     Have you ever heard of a person
 3    named Jonathan Gazdak?
 4        A.     Unsure.
 5        Q.     Have you ever communicated with a
 6    person by the name of Jonathan Gazdak?
 7        A.     I don't recall.
 8        Q.     I'm going to show you an exhibit
 9    that's been marked as Defendants' Exhibit 9
10    (indicating).
11             (Exhibit 9 was so marked for
12          identification.)
13  BY MS. COLE:
14        Q.     Is this an e-mail from Peter
15    DiChiara on April 22nd, 2019 -- I'm sorry.
16             Do you recognize this document that's
17    marked as Defendants' Exhibit 9?
18        A.     I do not.
19        Q.     Is it an e-mail from Peter DiChiara
20    to Floyd@FloydsofLeadville, Frank DiMartini and
21    AlexandraMerle@FloydsofLeadville.com?
22        A.     I can't confirm whether this is an
23    e-mail, or it was an e-mail.  I don't know.
24        Q.     Do you recall receiving this e-mail
25    on April of 2019?
```



```
 1                    Merle-Huet
 2        A.    No, I do not recall.
 3        Q.    Were you an employee of Floyd's of
 4   Leadville on April 22nd, 2019?
 5        A.    I don't recall.
 6        Q.    Is there a document that I could
 7   show you that would help you recall when you
 8   were employed at FloydsofLeadville.com -- at
 9   Floyd's of Leadville, Inc.?
10        A.    I'm not sure.
11        MS. COLE:  It's two minutes to 1:30
12   and because you indicated you needed to stop,
13   we'll go ahead and adjourn for the day.  And we
14   will discuss with Mr. Vedra whether or not
15   you're available to come back later today or on
16   some other date.
17           THE VIDEOGRAPHER:  Before we go off
18        the record, would anyone like to order a
19        copy of today's transcript or video at
20        this time?
21           MS. COLE:  We would like a copy of
22        the transcript and the video.
23           THE VIDEOGRAPHER:  Synced video
24        transcript?
25           MS. COLE:  Yes.
```



1                    Merle-Huet

2              THE VIDEOGRAPHER:  Okay.  Any other

3        orders at this time, Mr. Vedra?

4              MR. VEDRA:  We'd like to read and

5        sign.  I'll let you know if we're going

6        to order after that.

7              THE VIDEOGRAPHER:  Mr. Rachmuth?

8              MR. RACHMUTH:  No copy for me.

9              THE VIDEOGRAPHER:  Thank you.

10             I'm sorry.  Mr. Ward.

11             MR. WARD:  Nothing to add.  Thank

12        you.

13             THE VIDEOGRAPHER:  We are now going

14        off the record on September 4th, 2024, at

15        1:29 p.m., Eastern Time.

16             (Whereupon, at 1:29 p.m. the matter

17        was concluded.)

18

19

20        _____
                 ALEXANDRA MERLE-HUET

21

22   Subscribed and sworn to before me
     this _____ day of _____, 20___.
23   _____
          NOTARY PUBLIC

24

25



```
1                    I N D E X
2
3   WITNESS              EXAMINATION BY      PAGE
4   MS. MERLE-HUET        COLE / DIRECT       6
5
6                        EXHIBITS
7   DEFENDANT'S    DESCRIPTION              PAGE
8   Exhibit 2      9/18/18 e-mail           15
9   Exhibit 4      2/5/19 e-mail            20
10  Exhibit 4A     Metadate for Exhibit 4   24
11  Exhibit 5      4/16/20 e-mail           26
12  Exhibit 6      Nikonov e-mail           39
13  Exhibit 7      E-mail                   43
14  Exhibit 8      E-mail                   55
15  Exhibit 9      4/22/19 e-mail           60
16  (The exhibits were retained Attorney Cole.)
17
18
19
20
21
22
23
24
25
```



1

                    C E R T I F I C A T I O N

2

3              I, Jeffrey Shapiro, a Stenographic

4    Reporter and Notary Public, within and for the

5    State of New York, do hereby certify:

6              That ALEXANDRA MERLE-HUET, the

7    witness whose examination is hereinbefore set

8    forth, was first duly sworn by me, and that

9    transcript of said testimony is a true record of

10   the testimony given by said witness.

11             I further certify that I am not

12   related to any of the parties to this action by

13   blood or marriage, and that I am in no way

14   interested in the outcome of this matter.

15

16             IN WITNESS WHEREOF, I have hereunto

17   set my hand this 12th day of September, 2024.

18

19

20

21   _____

22                    JEFFREY SHAPIRO

23

24

25



1      DEPOSITION ERRATA SHEET

2

3   Our Assignment No. J11628823

4   Case Caption:  FLOYD'S OF LEADVILLE vs.

5   ALEXANDER CAPITAL

6

7    DECLARATION UNDER PENALTY OF PERJURY

8            I declare under penalty of perjury

9        that I have read the entire transcript of

10       my Deposition taken in the captioned

11       matter or the same has been read to me,

12       and the same is true and accurate, save

13       and except for changes and/or

14       corrections, if any, as indicated by me

15       on the DEPOSITION ERRATA SHEET hereof,

16       with the understanding that I offer these

17       changes as if still under oath.

18

19       _____

20       Alexandra Merle-Huet

21

22   Subscribed and sworn to on the _____ day of
     _____, 20_____ before me,
23   _____

24   Notary Public,
     In and for the State of _____

25



1       DEPOSITION ERRATA SHEET

2

3    Page No._____Line No._____Change to: _____

4    _____

5    Reason for change: _____

6    Page No._____Line No._____Change to: _____

7    _____

8    Reason for change: _____

9    Page No._____Line No._____Change to: _____

10   _____

11   Reason for change: _____

12   Page No._____Line No._____Change to: _____

13   _____

14   Reason for change: _____

15   Page No._____Line No._____Change to: _____

16   _____

17   Reason for change: _____

18   Page No._____Line No._____Change to: _____

19   _____

20   Reason for change: _____

21   Page No._____Line No._____Change to: _____

22   _____

23   Reason for change: _____

24   SIGNATURE:_____DATE:_____

25          Alexandra Merle-Huet



1          DEPOSITION ERRATA SHEET

2

3    Page No._____Line No._____Change to: _____

4    _____

5    Reason for change: _____

6    Page No._____Line No._____Change to: _____

7    _____

8    Reason for change: _____

9    Page No._____Line No._____Change to: _____

10   _____

11   Reason for change: _____

12   Page No._____Line No._____Change to: _____

13   _____

14   Reason for change: _____

15   Page No._____Line No._____Change to: _____

16   _____

17   Reason for change: _____

18   Page No._____Line No._____Change to: _____

19   _____

20   Reason for change: _____

21   Page No._____Line No._____Change to: _____

22   _____

23   Reason for change: _____

24   SIGNATURE:_____DATE:_____

25          Alexandra Merle-Huet

