

**Bryan Ward**
Direct Line: 404.892.5695
bryan.ward@holcombward.com

October 14, 2024

<u>*Via ECF Filing*</u>

Hon. Dale E. Ho
District Court Judge
United States District Court for the Southern District of New York

    re:    *Floyd's of Leadville, Inc., n/k/a Valued, Inc. v. Alexander Capital, L.P., et al.*, Civil Action No. 1:22-CV-03318-DEH

Dear Judge Ho:

    Defendants Alexander Capital, L.P., NESA Management LLC, Joseph Amato, Rocco Guidicipietro, and Jonathan Gazdak ("ACLP Defendants") seek (1) a ruling on Plaintiff Floyd's of Leadville, Inc.'s ("FOL") assertion of the attorney-client privilege over FOL's communications with Carmel, Milazzo & DiChiara LLP ("CMD"), including attorneys Peter DiChiara and Kirill Nikonov and (2) an order compelling production of those communications. These documents are discoverable because FOL has put its relationship with CMD at issue in this case and FOL has waived the attorney-client privilege by, among other things, voluntarily disclosing its communications with CMD.

    After exchanging written correspondence, the parties met and conferred regarding this dispute by telephone on October 10, 2024, but were unable to resolve this dispute.

    FOL's claims in this case arise out of its engagement of ACLP to serve as placement agent and financial advisor to FOL in connection with a private placement in senior secured debt. CMD represented FOL in connection with the private placement. FOL's Complaint's allegations have put Mr. DiChiara and CMD's representation of, and interactions with, FOL directly at issue. (Ex. A, Summary of Allegations.) FOL and its agents also voluntarily disclosed the nature of its communications with DiChiara/CMD in documents produced in discovery in this litigation and to other third parties in connection with litigation filed by the lenders in Colorado.

    FOL identified CMD, DiChiara, and Nikonov as individuals with discoverable information in its Initial Disclosures. Specifically, FOL represented that CMD, DiChiara, and Nikonov "possess[] information among other things relating to **the allegations and claims in the Complaint** and the Defendants' Answers and other responses to the

Complaint, **FOL's business dealings**, **CMD's dealings with FOL** and Alexander Capital, Alexander Capital's business dealings, Alexander Capital's communications and dealings with Lenders, **CMD's dealings with the Lenders**, FOL's relationships and dealings with Alexander Capital and the other Defendants, the money raised through Alexander Capital and **the representations made in connection with the funds raised**, the **execution of the lending documents** in question, FOL's dealings with the Advisory Board, FOL's dealings with Provision, FOL's dealings with Coil, FOL's attempts to renegotiate the loans, FOL's financial performance, and FOL's damages." (Ex. B, FOL's Initial Disclosures at 13-15) (emphasis added). The ACLP Defendants requested FOL's communications with CMD in its Requests for Production of Documents. (Ex. C, RPDs 2, 4, 12, 13, 16, 17, 23, and 25.)

FOL produced some, but not all, of its communications with CMD during discovery. FOL produced email communications with CMD where a third party was included on the email. That includes an email, dated July 2, 2020, in which Floyd Landis, CEO of FOL, expressly waived FOL's attorney client privilege with CMD, stating, "please let this serve as a waiver, now in all future events, of any and all privilege enjoyed by the attorney client relationship." (Ex. D, 7.2.2020 Email.)

FOL, however, has not — in large part — produced email communications solely between FOL and CMD that concern the allegations made in this case, despite placing its relationship and communications with CMD at the center of many of its claims. For example, FOL's Complaint alleges that FOL signed an engagement agreement with CMD in December 2017 and that Mr. DiChiara backdated the engagement letter to October 2017 because CMD and Alexander Capital wanted to create a false record around the drafting of the lending documents to hide the fact that CMD created the documents while allegedly representing Alexander Capital. (FAC, Doc. 165 ¶¶ 39-40.) The engagement letter between FOL and CMD, produced in discovery, is dated October 15, 2017. FOL never produced any documents supporting its allegations until the deposition of Floyd Landis on September 26, 2024, when he testified that there were email communications between Mr. Landis and Mr. DiChiara in December 2017. Upon request during the deposition, FOL's counsel produced an email dated December 15, 2017, from Mr. DiChiara to Floyd Landis wherein he sent Mr. Landis the engagement letter and asked him to sign it. (Ex. E, 12.17.2018 Email.) If their allegations and Mr. Landis's waiver had not already waived the privilege, this belated production did.

Because FOL has failed to produce all documents related to CMD's representation of FOL in discovery, ACLP Defendants served CMD's successor firm, Sichenzia Ross Ference Carmel LLP f/k/a Carmel Milazzo & Feil, LLP ("CMF"), with a Subpoena to Produce Documents under Fed. R. Civ. 45 on September 27, 2024. (Ex. F, Letter and Subpoena to CMF.) FOL has objected, in email correspondence, to CMF's production of documents in response to the Subpoena, asserting the attorney-client privilege over the documents. (Ex. G, Vedra email correspondence.) The Subpoena was served on September 27 with a production date of October 11, 2024. CMF requested an extension on the production date to October 25, 2024.

FOL's assertion of the attorney-client privilege in this case is meritless. Courts have found waiver of the attorney-client privilege "when a client testifies concerning portions of the attorney-client communication, when a client places the attorney-client relationship directly at issue, and when a client asserts reliance on an attorney's advice as an element of a claim or defense." *In re Cty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) (cleaned up) (quoting *Sedco Int'l S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982)); *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 501 (S.D.N.Y. 2019). The privilege "may implicitly be waived when [a party] asserts a claim that in fairness requires examination of protected communications." *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991). In keeping with this principle, courts have recognized that an implied waiver "may be found even if the privilege holder does not attempt to make use of a privileged communication." *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996). For example, "waiver can occur even if the asserting party does not make direct use of the privileged communication itself when that party avers material facts at issue related to the privileged communication, and where the validity of those facts can only be accurately determined through an examination of the undisclosed communication." *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 501 (S.D.N.Y. 2019); *Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.*, 331 F.R.D. 218, 228 (E.D.N.Y. 2019). In addition, "[v]oluntary disclosure of privileged communications to a third-party results in waiver of the attorney-client privilege." *E.g., Curto v. Med. World Commc'ns, Inc.*, 783 F. Supp. 2d 373, 378 (E.D.N.Y. 2011); *see also In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987) ("Matters actually disclosed in public lose their privileged status because they obviously are no longer confidential.") A party waives attorney-client privilege where "he voluntarily undertakes actions that will predictably lead to the disclosure of the document." *Falise v. Am. Tobacco Co.*, 193 F.R.D. 73, 79 (E.D.N.Y. 2000).

FOL has waived the attorney-client privilege by placing the attorney-client relationship directly at issue. Among other things, FOL's Complaint asserts that CMD and DiChiara assisted ACLP in creating fraudulent and forged lending documents, inserted Floyd Landis's electronic signature on multiple versions of the lending documents without his knowledge or consent, manufactured false asset schedules and inserted them into the security agreements after the fact, and coordinated closely to manipulate the lending documentation and make the fabricated contracts appear legitimate to the security agreements. FOL cannot allege that CMD acted outside the scope of its representation of FOL and without FOL's knowledge while, at the same time, protecting from discovery the very communications between CMD and FOL that would reveal what CMD communicated to FOL and what authority FOL gave CMD.[1]

For these reasons, ACLP Defendants request that this Court overrule FOL's objections to the production of its communications with CMD, find that FOL has waived the attorney-client privilege, and compel the production of all documents responsive to

---

[1] Notably, Plaintiff's counsel referred to Mr. DiChiara as Floyd's of Leadville's "alleged attorney" during a deposition taken on October 11, 2024. (Ex. H, Deposition Excerpt.)

ACLP Defendants' Requests for Production of Documents and the Subpoena to CMF and permit CMF to produce documents on October 25, 2024, after the current expiration of the fact discovery deadline of October 18, 2024.

Sincerely,

Bryan Ward