# Exhibit A

# SUMMARY OF ALLEGATIONS BY FOL INVOLVING REPRESENTATION BY DICHIARA AND CARMEL MILAZZO & DICHIARA, LLP

FOL's Complaint allegations have put DiChiara and CMD's representation of FOL at issue. (FAC, Doc. 165 ¶¶ 38-41, 58, 71, 80, 88, 90, 93, 96, 98-100, 103-105, 110-111, 115, 117-118, 125-126, 129, 132, 172, 173, 191, 193, 212, 225, 234.) The Complaint alleges:

- Alexander Capital recommended that Floyd's hire CMD/DiChiara as its legal counsel without disclosing that CMD/DiChiara were actively representing Alexander Capital in connection with the lending documents at issue (as well as other matters).
- FOL trusted and relied upon the legal advice of DiChiara and CMD. FOL would never have continued working with Alexander Capital had FOL known that CMD, DiChiara, and Alexander Capital were colluding to benefit Alexander Capital at FOL's expense.
- CMD/DiChiara backdated the engagement agreement with Floyd's because Alexander Capital and CMD wanted to create the false record that CMD/DiChiara were Floyd's lawyers when they were drafting the lending documents on Alexander's behalf.
- Alexander Capital and CMD arranged for the investment funds to be held in an escrow account (and placed Kelly in control of the escrow account) before being distributed to Floyd's and arranged for kickbacks to be paid to Three DDD, an entity owned by Kelly, and CMD. Because of these illegal kickbacks, FOL actually received far less than 90% of the funds.
- When FOL became aware of and questioned why Three DDD was receiving a portion of the principal amount of the investments, DiChiara responded that Kelly and DiMartini were "doing business deals together" and Kelly needed to receive a commission because he was not an employee of Alexander Capital.
- DiMartini, Kelly, and DiChiara were in regular contact throughout this period, but rarely relayed their conversations to FOL. FOL later learned that CMD and DiChiara provided undisclosed legal services to Alexander Capital, Kelly, DiMartini, and others in additional transactions and dealings adverse to FOL. Although FOL placed its trust in Alexander Capital, Gazdak, and DiMartini as its financial advisors and in CMD and DiChiara as its counsel, all were secretly working together behind FOL's back to injure FOL and advance their own interests.
- CMD helped draft the documents that created Coil, without disclosing to FOL that CMD was providing legal services to Coil or that Kelly and DiMartini were secret owners of Coil. After forming Coil, Leonard introduced himself to FOL and told FOL that Coil was a longstanding distribution company that could help distribute FOL's products to thousands of stores. In exchange for Coil's "services," Leonard proposed that Coil receive a significant percentage of FOL's equity and a lucrative commission on all sales. CMD helped Leonard and Kelly draft the proposed distribution agreement. Neither Leonard, Kelly, DiMartini, DiChiara, nor CMD ever disclosed that Coil could not distribute FOL's products, that Kelly and DiMartini were owners of Coil, or that making a deal with Coil would be making Kelly and DiMartini de facto shareholders of FOL and lining their pockets at FOL's expense.
- FOL learned that CMD secretly negotiated terms of the agreement with Provision, without informing FOL that CMD was working with Provision directly and involved in the deal. Provision, DiChiara, Leonard, and Kelly secretly worked together on the terms and

- documentation of the Provision deal without FOL's knowledge and consent. For instance, on August 24, 2018, Curt Thornton, the founder and former CEO of Provision sent an email to DiChiara, Kelly, and Leonard, which Thornton addressed to "Team." Neither CMD nor DiChiara ever shared these emails with FOL (FOL first received them, years after the fact, in discovery in the Colorado Litigation).
- Before Leonard approached FOL about a potential deal with Provision, both CMD and Kelly had filed UCC-1 statements indicating that they were secured creditors of Provision. Neither CMD nor Kelly informed FOL that Provision was not credit-worthy, that Provision was already indebted to CMD and Kelly before FOL ever considered loaning money to Provision, or that CMD and Kelly would be repaid their debts as senior secured creditors before FOL could expect to be repaid as an unsecured creditor. CMD and Kelly's interests were adverse to FOL's throughout its dealings with Provision, and neither CMD nor Kelly ever informed FOL of these adverse interests.
- CMD and Alexander Capital advised Leonard in connection with a fraudulent sale of FOL stock. DiChiara advised DiMartini and others that the "Common Stock issued to Mark Leonard is legitimate" and opined that Leonard's fraudulent resale "is a valid agreement and I will issue a stock certificate upon confirmation of receipt of funds." Neither CMD nor DiChiara shared these legal opinions with FOL, or informed FOL that CMD had been advising Alexander Capital and Leonard on these transactions. On information and belief, Alexander Capital and CMD received commissions on Leonard's fraudulent sale, and Gazdak on behalf of Alexander Capital signed off on payment of the commissions.

The Complaint also asserts that Alexander Capital, assisted by CMD/DiChiara created fraudulent and forged lending documents:
- Alexander Capital, assisted by CMD/DiChiara, inserted Floyd's electronic signature on multiple versions of the lending documents without Floyd's knowledge or consent.
- CMD and DiChiara assisted Alexander Capital in manipulating the lending documents. Although it was purportedly acting as FOL's counsel, at no point did CMD ask FOL for FOL's approval in entering into any of the lending documents or for any of the many changes Alexander Capital and CMD made to these documents without informing FOL of the changes or obtaining FOL's consent. Even after the fact, Alexander Capital and CMD did not ever provide FOL with fully and properly executed copies of the sets of lending documents.
- Because of Alexander Capital and CMD's misconduct, signed, executed, original lending documents do not exist.
- Alexander Capital and CMD just manufactured documents after the fact and passed them off as contracts, in violation of legal requirements and their duties to FOL.
- Because CMD and Alexander Capital added false asset schedules after the fact to the security agreements, Redemption sued FOL and claimed fraud by FOL relating to those assets.
- Discovery in the Colorado Litigation discussed below has revealed that Gazdak, DiMartini, and DiChiara coordinated closely to manipulate the lending documentation and make the fabricated contracts appear legitimate.
- Alexander Capital and CMD's fraudulent conduct hurt FOL in numerous ways.
- Neither CMD nor Alexander Capital: (1) informed FOL that they intended to attempt to

2

- alter the lending documents retroactively; (2) asked for FOL's consent or approval to include these schedules; nor (3) consulted with FOL as to whether the schedules contained accurate information.
- Alexander Capital and CMD also applied scanned signature pages supplied by the Investors.
- CMD and DiChiara assisted Alexander Capital in brokering the Secret Side-Deal with the Investors by proposing changes to the initial drafts of the lending documents that created ambiguity about key terms, including the 30% premium. This language solely benefitted Alexander Capital and the Investors and was substantially detrimental to FOL.

In FOL's fraud claim (Count I), securities fraud claim (Count III), and violation of the Investment Advisers Act (Count IV), FOL alleges that to induce FOL to enter into the lending documents, Alexander Capital omitted disclosing material facts including that: CMD and DiChiara were providing legal services and serving as counsel to Alexander Capital, Coil, Provision, Kelly, DiMartini, and Leonard during their purported representation of FOL and that the matters on which CMD and DiChiara were providing legal services to Alexander Capital, Coil, Provision, Kelly, DiMartini, and Leonard were related to the subject matter of CMD and DiChiara's representation of FOL and involved interests adverse to FOL's interests.