## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Civil Action No.:  1:22-CV-03318-DEH

Floyd's of Leadville, Inc. N/K/A Valued, Inc.,

        Plaintiff,

v.

Alexander Capital L.P., et al.

        Defendants.

---

## MEMORANDUM OF LAW

---

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................1

II. BACKGROUND........................................................................................................2

    A.  Alexander Capital Engages In Fraud To Obtain Liens On All Of FoL's Assets....2

    B.  Leonard And Clapham Participate In The Attempt To Take All Of FoL's Assets. ........................................................................................................................4

    C.  Leonard and Clapham Knowingly Engage Unlicensed Person to Serve as Leonard's Counsel—Twice. ...................................................................................4

    D.  Leonard And Clapham File Answers By A Disbarred Lawyer. ...............................6

    E.  McKenna Withdraws from the Case without Disclosing he was Disbarred. ......8

III. LEGAL STANDARD .................................................................................................8

    A.  Striking Answer. .....................................................................................................8

    B.  Contempt Sanctions. .............................................................................................8

IV. ARGUMENT ...........................................................................................................9

    A.  Rule 11 Requires Striking Leonard And Clapham's Answers. ...............................9

    B.  Leonard And Clapham Should Be Ordered To Show Cause Why They Should Not Be Held In Contempt For Sponsoring And Participating In The Unauthorized Practice Of Law. ...........................................................................11

        1.  Leonard and Clapham Benefitted from McKenna's Unauthorized Practice of Law in this Case. .......................................................................12

        2.  Leonard and Clapham Orchestrated the use of Leonard's Cousin as a Shadow Lawyer who has not been Admitted to Practice in this Court...........................................................................................................12

        3.  Leonard and Clapham Have Utilized Non-lawyer Greg Hurley to Prepare Filings in this Case. ........................................................................13

    C.  Paul Rachmuth Should Also Show Cause Why He Should Not Be Sanctioned For Participating In The Unauthorized Practice Of Law. ...................................14

    D.  A Significant Civil Contempt Sanction Is Warranted. .........................................15

        1.  The Character and Magnitude of the Harm Warrants a Significant Sanction. ....................................................................................................16

        2.  The Sanction Must be Significant to be Effective. ....................................16

3.    Leonard and Clapham's Financial Resources Suggest a Significant Sanction is Warranted. ................................................................................................17

V.    CONCLUSION ................................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Chevron Corp. v. Donziger*, 384 F. Supp. 3d 465 (S.D.N.Y. 2019) ........................................15

*Clark v. Rearden*, 104 S.W.2d 407 (Mo. App. 1937) ................................................................16

*Dean v. Westchester County P.R.C.*, 309 F. Supp. 2d 587 (S.D.N.Y. 2004) ......................10

*Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106 (2d Cir. 1987)........................15

*Ebomwonyi v. Sea Shipping Line*, 473 F. Supp. 3d 338 (S.D.N.Y. 2020)............................10

*Gucci Am. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014) ....................................................15

*Marcure v. Lynn*, 992 F.3d 625 (7th Cir. 2021) ......................................................................10

*Moro Aircraft Leasing, Inc. v. Keith*, 789 F. Supp. 2d 841 (N.D. Ohio 2011) ..................10

*N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339 (2d Cir. 1989)..........................15

*Perfect Fit Indus. Inc. v. Acme Quilting Co.*, 673 F.2d 53 (2d Cir. 1982)..........................15

*Spanos v. Skouras Theatres Corp.*, 364 F.2d 161 (2d Cir. 1966) .................................11, 12

*United States v. Peterson*, 550 F.2d 379 (7th Cir. 1977) ...............................................8, 9, 11

*United States v. United Mine Workers of Am.*, 330 U.S. 258 (1947)....................................15

*Vuitton et Fils S. A. v. Carousel Handbags*, 592 F.2d 126 (2d Cir. 1979) ..........................15

*Wrenn v. New York City Health & Hospitals Corp.*, 104 F.R.D. 553 (S.D.N.Y. 1985)..............10. 11

**Statutes**

18 U.S.C. § 401 .................................................................................................................8, 13

N.Y. Judiciary Law § 486 ........................................................................................................16

**Rules**

Fed. R. Civ. P. 11 ..................................................................................................8, 9, 10, 11, 14

Local Rule 1.5 ...........................................................................................................................12

## I.    INTRODUCTION

This is a motion for sanctions for the unauthorized practice of law by Defendants Mark Leonard ("<u>Leonard</u>") and Ronald Barrie Clapham ("<u>Clapham</u>") and their now-former counsel Bryan A. McKenna ("<u>McKenna</u>").  Defendants Leonard and Clapham have been represented by McKenna and Paul Rachmuth throughout this case.  On September 23, 2024, FoL learned that McKenna had resigned his law license and was disbarred.[1] Notwithstanding his resignation, McKenna filed answers for Defendants Leonard and Clapham and concealed that he had resigned and been disbarred.  When undersigned learned this fact and alerted Mr. Rachmuth, Mr. Rachmuth notified the Court that McKenna had resigned his license but lacking candor, Mr. Rachmuth did not disclose to the Court that McKenna had been disbarred.  Knowing that McKenna had been disbarred, Mr. Rachmuth did not seek leave to re-file the answers signed by McKenna.  For the past six weeks, he has known without doubt that McKenna was no longer an attorney authorized to practice in this Court.  And for six weeks, he has done nothing to rectify McKenna's actions.

FoL only learned of McKenna's resignation and disbarment by happenstance.  Mere weeks ago, FoL inquired about McKenna's availability for a deposition.  For the first time, Mr. Rachmuth announced that McKenna was "going in-house".  Confused as to the strange explanation that implied McKenna was still an attorney, FoL googled McKenna and learned that he had resigned his law license and been disbarred.  His resignation and subsequent order of disbarment were effective prior to McKenna signing and filing answers for Leonard and Clapham in this case.  By this motion, FoL asks the Court to strike those answers because they were not signed by an attorney or a party as required under Rule 11.

These defendants have earned this severe sanction.  First, this Court has previously counted four sanctionable offenses by Defendants Leonard and Clapham.  (Doc. 161)

---

[1] FoL has been attempting to bring this issue to the Court's attention for a month.  During this time, FoL has defended ten different motions while defending and taking a similar number of depositions.

(counting three sanctionable offenses).  The fourth and most recent sanctionable offense, for which the Court awarded attorney fees, was for both defendants' failure to provide timely disclosures and responses to requests for production.  (Doc. 177).  This sanction has had little effect on the defendants, who appear to enjoy significant monetary resources and were unaffected by the sanction, which was paid directly by McKenna.

Second, Clapham's document production showed more malfeasance.  The disclosures revealed that Leonard and Clapham had likely engaged in the unauthorized practice of law.  In WhatsApp messages between Clapham and Gregory Hurley (a defendant who settled his personal liability in this case), Clapham and Hurley discussed and encouraged the use of Leonard's cousin—an attorney not admitted to this Court—as counsel for Leonard.  Based on these text messages, it appeared that Mark Leonard's cousin was providing the legal work while counsel of record just does the filing.  This is the unauthorized practice of law and sanctionable as contempt of court.  When asked, Leonard and Clapham's counsel vehemently denied that Leonard's cousin had anything to do with Leonard and Clapham's defense.  FoL gave Leonard and Clapham the benefit of the doubt and moved on.  Given the lack of candor demonstrated by McKenna's opaque withdrawal from this case, there is no longer any reason to grant this benefit of the doubt to Leonard and Clapham.

Third, Leonard appears to have received assistance preparing at least one motion from non-attorney Greg Hurley.  Clapham facilitated and encouraged this action contemporaneously to Leonard's engagement of McKenna and Mr. Rachmuth.  This too constitutes the unauthorized practice of law.

The Court should not countenance such illicit and impermissible practices.  FoL, therefore, seeks a sanction striking pleadings signed by McKenna when he was not a lawyer and an order to show cause why Leonard and Clapham should not be held in contempt for sponsoring and engaging and participating in the unauthorized practice of law.

II.    **BACKGROUND**

A.    **Alexander Capital Engages In Fraud To Obtain Liens On All Of FoL's Assets.**

This case concerns the fraudulent sale of securities by Defendant Alexander Capital, L.P. ("AC") and the unlawful attempt by AC's associates and investors to take over FoL's business.[2]  AC was FoL's investment advisor.  (FAC ¶ 220).  AC raised capital for FoL through the sale of debt securities in the form of promissory notes.    (FAC ¶ 31).  To sell these promissory notes to investors, Frank DiMartini, an investment representative acting on behalf of AC ("DiMartini"), misrepresented the terms to investors by promising the investors more favorable terms than had been represented to the borrower, FoL.  (FAC ¶¶ 65-68).  AC and DiMartini sealed the deal by providing only signature pages to the investors.  (FAC ¶ 99).

After raising more money than AC told the lenders that FoL had agreed to borrow, AC further broke its promises to FoL by refusing to restructure or renegotiate the debt on terms acceptable to FoL.  (FAC ¶ 147-149).  Rather than fulfill its fiduciary duties as financial advisor to FoL, AC sided with the investors and sought to force FoL to accept the undisclosed terms DiMartini had promised to investors.  (FAC ¶ 151-162).  AC then abdicated its responsibilities to FoL and assigned collection of the promissory notes to Redemption Holdings, LLC, a limited liability company formed specifically to sue FoL and its principals ("Redemption").  (FAC ¶ 167).  The result was predictable: when two parties to a simple contract disagree about the terms, there will be litigation.  And when the lender is secured by all of the debtor's assets, all the lender has to do is starve the borrower of cash until the borrower gives up and the lender seizes all of the borrower's assets.  Redemption sued FoL and accused FoL's principals of fraud.  (FAC ¶ 172).  But the "fraud" Redemption sued over was actually misrepresentations that AC and Clapham had made up.   (Id.).

---

[2] Background references are made to the allegations in the First Amended Complaint, Doc. 165 (hereinafter, the "FAC").

**B.    Leonard And Clapham Participate In The Attempt To Take All Of FoL's Assets.**

Clapham and Leonard were key players in this scheme.  (See FAC ¶ 167).  Greg Hurley, one of the promissory note investors and childhood friend of DiMartini ("Hurley"), led the charge for Redemption.  Redemption paired up with Defendant Clapham, an equity investor in FoL.  Hurley convinced Clapham to invest in a lawsuit against FoL to acquire all of FoL's assets.  As Hurley described it to Clapham:

> [Hurley] - we can talk tomorrow (or now if you are available) but I wanted to make comment (and maybe this is obvious) that I see counsel (paid by you) as representing Note holders to collect their money.  *This is the Trojan horse to allow for gaining control.*  Of course counsel will keep that strategic objective in mind throughout[.]

(Ex. A at 1) (emphasis added)(parentheses in original).  Difficult to believe as it is, Clapham paid for Redemption to sue FoL, a company in which he owned $2m in equity.  This bizarre action—suing a company you own—has only one explanation: Clapham did this so Redemption could seize the assets of FoL and transfer them to Redemption, where Clapham had a larger percentage equity interest.  (See FAC ¶ 169).

Defendant Leonard participated in this scheme.  Leonard is an associate of Clapham's and investor in multiple AC-led deals.  Clapham intended to install Leonard as an executive of Redemption (and the successor to FoL) once it acquired all of FoL's assets.  This was not Leonard's first attempt to injure FoL.  He previously caused a company in which he was the CEO to borrow $200,000.00 from FoL to pay his salary.  (FAC ¶¶ 124-132).  He also acquired phantom stock in FoL and sold it to others before he even paid for it, pocketing hundreds of thousands of dollars.  (Id.).

**C.    Leonard and Clapham Knowingly Engage Unlicensed Person to Serve as Leonard's Counsel—Twice.**

Leonard and Clapham's willingness to bend and break the rules continues through this litigation.  After repeated, sanctionable conduct, Leonard and Clapham provided their initial disclosure documents.  The documents show that Leonard and Clapham knowingly

participated in the unauthorized practice of law.  In WhatsApp messages exchanged between Clapham and Hurley, Clapham and Hurley discuss Leonard's use of Leonard's cousin—a lawyer from Wisconsin[3], who is not admitted to this Court—to do his legal work.  (Ex. A at 42).  Under this scheme, Leonard's cousin would provide his substantive legal work, while either Leonard himself or Rachmuth (Leonard's current counsel of record) would take the ministerial step of filing while concealing the illicit practice from this Court.  When Hurley asked Clapham whether Leonard was going to use Paul Rachmuth, Clapham responded:

> Just trying to help Mark limit his costs by letting Paul submit Mark's lawyers [sic] answers. His lawyer, his cousin, is I believe in Milwaukee and *isn't licensed to practice in New York*.

(Ex. A at 42) (emphasis added).  Clapham confirmed that this was the plan:

> Thanks so much. *I will speak to him about getting his cousin to prepare his defences* [sic] but enabling him to submit them himself Is that a workable combination do you think??

(Id.) (emphasis added).  And again:

> All I was thinking was if *Marc [sic] got his cousin to do the drafting and then put his own signature at the bottom* and get it submitted but at least he has the comfort of knowing it's been done by somebody who is professionally qualified[.]

(Id.) (emphasis added).  After worrying these conversations were not privileged, Hurley suggested another way for Leonard's cousin to engage in the unauthorized practice of law:

> Yes I get it.  Btw. Arguably this conversation and all conversations between parties are discoverable so, act accordingly.  *I want to ask Mark to ask his cousin about a joint defense agreement which will make conversations/ correspondence privledged* [sic].

(Id. at 43).  To be certain, Hurley and Clapham knew their plan was improper.  From Hurley:

> Hmm. I am guessing here, but *I don't think a lawyer could represent someone which they'd be effectively doing by drafting everything but then have a party submit pro se.*  More of a question for the lawyer.  Also I hate to be the person throwing a

---

[3] Clapham refers to Leonard's cousin as being from Wisconsin.  Leonard's cousin is Clarence J. Kuhn of Edina, Minnesota.  Kuhn represented Leonard *pro hac vice* in Colorado when Leonard sued one of FoL's consultants.

> monkey wrench into things but as I was saying when we spoke last week I could see instances where appearances somehow reflect on SEI when that is the last thing you'd want. Also I expect there is counsel out there who can provide this function on the cheap, effectively a conduit. But that is my guess and I don't know that.

(Id. at 42).[4]

After suggesting a lawyer not licensed in New York should assist, Hurley then assists Leonard in drafting a motion that was filed in this Court. The above conversations all occurred over May 22, 2022. (Id. at 42-43). On May 23, 2022, Leonard filed a motion for extension of time stating that he was "not represented by counsel." (Doc. 51 at ¶ 2)(attached as Exhibit B). This motion is substantially identical to the motion that Hurley filed seeking to extend the time for Hurley to respond to the complaint: the caption is formatted identically (note the unusual use of semi-colons); the valediction is the same; the signature block is formatted the same; and there is no certificate of service in either. (Doc. 46)(attached as Exhibit C). These two documents' striking resemblance suggest that Hurley, who is not an attorney, assisted Leonard in drafting his motion, as contemplated in the WhatsApp messages. Indeed, Hurley states that he "helped Mark setup online and submit motion for extension himself on Friday." (Ex. A at 42).

### D. Leonard And Clapham File Answers By A Disbarred Lawyer.

But Leonard's cousin was not the only person who engaged in the unauthorized practice of law. Bryan A. McKenna, until recently counsel of record for Defendants Leonard and Clapham, resigned his law license by sworn affidavit on November 20, 2023. (Ex. D). By application dated December 6, 2023, Mr. McKenna sought for his resignation to be accepted. (Ex. D at 2). Attached to that motion was McKenna's affidavit of resignation, in which

---

[4] The "SEI" referred to in these passages is Stewart's Enterprises Holdings Inc. ("Stewart's"). Stewart's is owned, in part, by Clapham and Hurley. Paul Rachmuth is its general counsel and counsel of record for Leonard and Clapham in this case. Hurley is concerned about appearances because Stewarts involves the same cast of characters (AC, DiMartini, Clapham, Leonard, Hurley, and others) as were involved with FoL and the same apparent game plan as was run on FoL.

McKenna "attest[ed] that he [was] currently the subject of an [Attorney Grievance Committee ("AGC")] investigation involving allegations of professional misconduct, [including] allegations that he converted and misappropriated $184,600 in client funds." (Id.) On March 19, 2024, the Supreme Court, Appellate Division, First Department, New York, accepted Mr. McKenna's resignation and revoked Mr. McKenna's law license *nunc pro tunc* to November 20, 2023. In that order, the Court ordered:

> Bryan Aaron McKenna, is: (1) commanded to desist and refrain from the practice of law in any form, either as principal or agent, clerk or employee of another, or from holding himself out in any way as an attorney and counselor-at-law; (2) forbidden to appear as an attorney or counselor-at-law before any court, judge, justice, board or commission or other public authority; and (3) forbidden to give another an opinion as to the law or its application or advice in relation thereto.

(Ex. D at 4).

Nevertheless, on February 26, 2024, ninety-eight days after he swore out his resignation, McKenna filed answers on behalf of Defendants Leonard and Clapham in response to FoL's First Amended Complaint. (Doc's 170 and 171). At the time he signed and filed these answers, McKenna had already resigned his license, an act confirmed and approved by the New York Supreme Court *nunc pro tunc* to the date of his resignation. (Ex. D at 3). With full knowledge that he had resigned his license, he filed answers on behalf of Leonard and Clapham. Even after the order disbarring McKenna became effective, McKenna continued to participate in conferences with counsel, attended depositions, and held himself out as an attorney. (Vedra Decl. ¶ 7). When the Court sanctioned Leonard and Clapham for failing to make timely disclosures and respond to discovery, McKenna paid the sanction. (Vedra Decl. ¶ 8). It was not until Mr. Rachmuth had a scheduling conflict that the undersigned counsel learned that something was not right. (Vedra Decl. ¶ 9). In response, Mr. Rachmuth announced that McKenna was "going in-house." (Vedra Decl. ¶ 10). Confused as to the strange explanation, FoL googled McKenna and learned that he had been disbarred

effective November 20, 2023.  (Vedra Decl. ¶ 11).  He had not, as Mr. Rachmuth misleadingly implied, gone to work "in-house" as an attorney, since he no longer was one.

        **E.**        **McKenna Withdraws from the Case without Disclosing he was Disbarred.**

McKenna did not withdraw from this case until after undersigned counsel learned of McKenna's disbarment.  (Vedra Decl. ¶ 12).  Contrary to Local Rules 1.5(h)(1) and (2), McKenna did not notify the Court that he had resigned and been disbarred.  Instead, Mr. Rachmuth filed a letter informing the Court that stated that McKenna had resigned from the state bar of New York, but omitted to disclose that McKenna had been disbarred.  (Ex. E).  It appears, however, that McKenna was aware of his obligation to notify the Court.  In another matter pending in this District, McKenna notified the court on March 22, 2024, that he was no longer an attorney.  (Ex. F).  Similarly to Mr. Rachmuth's filing in this action, McKenna did not disclose that he had been disbarred, but stated that he had "learned that [he was] no longer admitted to practice law."  (Id.).

**III.**      **LEGAL STANDARD**

        **A.**        **Striking Answer.**

The obligation to sign pleadings is set by Rule 11.  "Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented."  Fed. R. Civ. P. 11(a).  "The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention."  *Id.*

        **B.**        **Contempt Sanctions.**

The power of federal courts to punish for contempt is contained in 18 U.S.C. § 401.  "A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as -- (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice . . . ."  18 U.S.C. § 401(1).  The unauthorized practice of law in federal court is punishable as contempt under 18 U.S.C. § 401.  *United States v. Peterson*, 550 F.2d 379, 384 (7th Cir. 1977) ("We believe the

unauthorized practice of law in federal courts in violation of § 1654 and the rules of the court to constitute 'misbehavior' within the broad meaning of that term, and that such practice could tend to obstruct the administration of justice. The use of the contempt power to punish in such circumstances is not new and it is adequate.").

## IV.    ARGUMENT

FoL seeks four forms of relief.  First, FoL seeks an order striking Leonard and Clapham's answers under Federal Rule of Civil Procedure 11(a) for failing to be signed by an attorney or party.  Second, FoL seeks an order for Leonard and Clapham to show cause why they should not be held in contempt for: (1) continuing to allow McKenna to represent them after his resignation and disbarment; (2) using Leonard's cousin to engage in the unauthorized practice of law by an attorney not admitted to practice in this Court or state; and (3) drafting motions with the assistance of Hurley, a non-attorney, which were filed in this Court.  Third, FoL seeks an order for Mr. Rachmuth to show cause why he should not be held in contempt for his participation in the unauthorized practice of law.  Fourth, FoL seeks a significant monetary sanction against Leonard and Clapham, including an award of its attorney fees and costs, to ensure that Leonard, Clapham, and Mr. Rachmuth comply with their future legal and ethical obligations.

### A.    Rule 11 Requires Striking Leonard And Clapham's Answers.

Leonard and Clapham's answers must be struck because they were not signed by an attorney or a party.  Rule 11 *requires* all pleadings to be signed by either an attorney of record or the party.  Fed. R. Civ. P. 11(a) ("Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented.").  Rule 11 *requires* a court to strike any pleading that does not comply.  *Id.*  ("The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.").  "Since its original promulgation, Rule 11 has provided for the striking of pleadings and the imposition of disciplinary sanctions to check abuses in the signing of pleadings." *Id.* (Notes of Advisory

Committee on 1983 amendments). The only exception to the requirement to strike a pleading is when "the omission is promptly corrected after being called to the attorney's or party's attention." *Id.*; *Marcure v. Lynn*, 992 F.3d 625, 628 (7th Cir. 2021) ("By its plain terms, Rule 11(a) is mandatory when triggered—'must' does not mean 'may.' The text indicates that courts have discretion only when the party corrects its omission promptly, not as a blanket rule."). Prompt correction is required for a court to exercise its discretion. Fed. R. Civ. P. 11(a); *Wrenn v. New York City Health & Hospitals Corp.*, 104 F.R.D. 553, 556-57 (S.D.N.Y. 1985) (five-week delay is not prompt under Rule 11(a)). Courts have dismissed cases when plaintiffs filed complaints in violation of Rule 11(a)'s requirements. *Ebomwonyi v. Sea Shipping Line*, 473 F. Supp. 3d 338, 346 (S.D.N.Y. 2020) (dismissing amended complaint for failing to be signed by party); *but see Dean v. Westchester County P.R.C.*, 309 F. Supp. 2d 587, 596 (S.D.N.Y. 2004) (declining to strike *pro se* complaint). There is no indication in either Rule 11 or interpreting caselaw that defendants should not be held to the same standards as plaintiffs. *Moro Aircraft Leasing, Inc. v. Keith*, 789 F. Supp. 2d 841, 845 (N.D. Ohio 2011) (striking answer that was not signed by licensed attorney). Consequently, Defendants Leonard and Clapham's answers must be stricken if they were not signed by an attorney of record or the defendants and that error was not promptly corrected.

Here, Leonard and Clapham's answers must be stricken because their answers were signed and filed by McKenna *after he resigned his license to practice law* and *after his resignation was effective as disbarment*. Upon resigning his license, McKenna was no longer an attorney, a fact confirmed by the New York Supreme Court, Appellate Division's order of disbarment striking his name from the roll of attorneys and counselors-at-law. (Ex. D). The facts are indisputable: McKenna filed and signed Leonard and Clapham's answers on February 26, 2024 (Doc's 170, 171), three months after his license was resigned on November 20, 2023. (Ex. D). As such, the answers patently were signed by an unlicensed attorney. Nor have they been corrected; nearly a year after the effective date of his disbarment, the answers remain signed only by McKenna. This is dispositive. Fed. R. Civ. P.

11(a); *see, e.g.*, *Wrenn*, 104 F.R.D. at 556-57 (five-week delay in correcting an unsigned pleading is not "prompt").

Leonard and Clapham will likely argue that the answers were filed after McKenna resigned but before the New York Supreme Court disbarred McKenna. Such an argument would deny effect to the order disbarring McKenna. That order was made effective November 20, 2023. (Ex. D at 3). The court disbarring McKenna did not disbar him effective the date of the order. The New York Supreme Court disbarred McKenna effective on the date that he admitted by sworn affidavit that he could not defend the allegation that he stole $184,600.00 from his client. (Ex. D at 3-4). All of his misconduct in this case—including signing and filing Leonard and Clapham's answers—occurred *after* McKenna had sought to resign his license with effect of disbarment.

Moreover, allowing McKenna to continue acting as an attorney between when he resigned and when the order was entered would reward unethical conduct in this case. This Court's Local Rule 1.5(h)(2) required McKenna to report his resignation, and Local Rule 1.5(h)(1) required McKenna to report his disbarment. Despite the clear obligations of the Court's local rules, neither McKenna nor Mr. Rachmuth reported either the resignation or the disbarment. Indeed, Mr. Rachmuth's letter to the Court omits these facts entirely. This deliberate disregard for the clear requirements of this Court warrants a sanction consistent with its willfulness.

### B. Leonard And Clapham Should Be Ordered To Show Cause Why They Should Not Be Held In Contempt For Sponsoring And Participating In The Unauthorized Practice Of Law.

FoL submits that Leonard and Clapham should be ordered to show cause why they should not be held in contempt for sponsoring and participating in the unauthorized practice of law. The unauthorized practice of law is contempt. *United States v. Peterson*, 550 F.2d 379, 384 (7th Cir. 1977). The Second Circuit, in applying New York law, has concluded that the unauthorized (and unlawful) practice of law includes both "counseling as well as court

appearances." *Spanos v. Skouras Theatres Corp.*, 364 F.2d 161, 165 (2d Cir. 1966). "And it extends to advice involving federal law as well as New York law." *Id.*

FoL requests the Court to order Leonard and Clapham to show cause why they should not be held in contempt for three reasons. First, McKenna was disbarred and continued to act as an attorney in this case. Second, Clapham, Leonard, or both appear to have used Leonard's cousin, who is not admitted in New York, to prepare filings. Third, Leonard appears to have received legal advice from Hurley with the assistance of Clapham on how to file at least one motion.

### 1.    Leonard and Clapham Benefitted from McKenna's Unauthorized Practice of Law in this Case.

As described above, McKenna resigned his license to practice in the State of New York on November 2, 2023. Contrary to Local Rule 1.5(h), McKenna did not report either his resignation or disbarment, and he continued to practice as though he were a licensed attorney. Indeed, he continued to act as an attorney until FoL's counsel discovered that McKenna was disbarred. There is no indication that McKenna ever intended to stop practicing or withdraw from this case. To this day, Leonard and Clapham have failed to remedy their pleadings or even advise the Court of McKenna's disbarment in violation of Rule 11 and Local Rules 1.5(h)(1) and 1.5(h)(2). Not only is their use of an unlicensed lawyer the *sine qua non* of the unauthorized practice of law, but it violates the New York Supreme Court's order, Local Rules 1.5(h)(1) and 1.5(h)(2), and McKenna's own sworn-resignation of his law license. Leonard and Clapham should be ordered to show cause why they should not be held in contempt for participating in or sponsoring this conduct.

### 2.    Leonard and Clapham Orchestrated the use of Leonard's Cousin as a Shadow Lawyer who has not been Admitted to Practice in this Court.

Leonard and Clapham also should be required to show cause why they should not be held in contempt for engaging in the unauthorized practice of law by using Leonard's cousin—an attorney not admitted to practice in this Court—as their legal counsel. As

demonstrated in the WhatsApp messages between Clapham and Hurley, Leonard's cousin was apparently involved in drafting legal documents, including motions and defenses, despite his lack of admission to the New York bar or authorization to practice before this Court and despite them knowing this practice was unethical.  By facilitating and allowing an unlicensed individual to perform legal work on their behalf, Leonard and Clapham violated federal, state, and local rules governing the practice of law, and obstructed the administration of justice.  Such conduct, especially when knowingly facilitated by Clapham and Leonard, is sanctionable as contempt under 18 U.S.C. § 401, which empowers the Court to impose penalties for misbehavior that undermines the integrity of the judicial process. Leonard and Clapham's deliberate involvement in this scheme warrants a thorough examination and an order to show cause why they should not be held in contempt for their role in permitting, and perhaps orchestrating, the unauthorized practice of law.

### 3.   Leonard and Clapham Have Utilized Non-lawyer Greg Hurley to Prepare Filings in this Case.

Leonard and Clapham should be ordered to show cause why they should not be held in contempt for using Greg Hurley to assist in drafting legal documents. Hurley—a non-lawyer—participated in preparing and possibly filing motions on behalf of the defendants. Specifically, Hurley appears to have advised Leonard on the preparation of at least one motion in this case.  This was accomplished through Clapham, as reflected in WhatsApp messages between Hurley and Clapham.  This conduct directly violates the prohibition against the unauthorized practice of law.  Leonard and Clapham were fully aware that Hurley had no legal credentials, yet they permitted him to advise on legal filings.  Such actions undermine the integrity of the judicial process and obstruct the administration of justice. The Court should require Leonard and Clapham to show cause why they should not be sanctioned for permitting this conduct.

### C.    Paul Rachmuth Should Also Show Cause Why He Should Not Be Sanctioned For Participating In The Unauthorized Practice Of Law.

Leonard and Clapham's remaining and current counsel Mr. Rachmuth also should be ordered to show cause why he should not be held in contempt for his direct participation in the unauthorized practice of law.  Mr. Rachmuth has worked side-by-side with McKenna since before McKenna admitted to stealing from his client and resigning his license to practice law.  Remarkably, Mr. Rachmuth allowed McKenna to continue to serve and appear as counsel of record, sign and file pleadings, and otherwise operate as "counsel" in this Court—without saying a word.  Rather than comply with his clear obligations under law, Rachmuth endorsed and facilitated McKenna's unauthorized practice by copying him on written and oral communications, allowing McKenna to attend depositions and otherwise hold himself out as counsel, and all along covering up his fraud.  It was not until the undersigned counsel discussed this matter with Mr. Rachmuth that Mr. Rachmuth notified the Court.

Even after McKenna was exposed, Mr. Rachmuth did not notify the Court that McKenna actually had been disbarred.  Instead, he stated that McKenna resigned without disclosing when or that his resignation had the effect of disbarment.[5]  This statement lacked the candor required of attorneys complying with Rule 3.3 of the Rules of Professional Conduct.  Nor has Rachmuth made any effort to correct or remedy McKenna's unlicensed practice throughout this case—including refusing to correct Leonard and Clapham's answers.  This, too, violates Rule 11, which requires prompt correction when called to the attorney's attention, Fed. R. Civ. P. 11(a), and further endorses McKenna's unlicensed practice of law throughout this case.

Accordingly, FoL respectfully requests that the Court order Mr. Rachmuth to show cause why he should not be held in contempt for participating in the unauthorized practice

---

[5] McKenna withdrew from *Icon Int'l, Inc. v. Elevation Health LLC, et al*, 1:22-cv-4303-MKV-GWG.

of law.  This should include, at minimum, a requirement that Mr. Rachmuth show that he was not aware of McKenna's resignation and disbarment when it occurred.

> **D.      A Significant Civil Contempt Sanction Is Warranted.**

Civil contempt sanctions may be used to "coerce the contemnor into future compliance with the court's order or to compensate the complainant for losses resulting from the contemnor's past noncompliance." *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir. 1989); *see United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947); *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 6 (2d Cir. 1989).  "It is basic law that a civil contempt sanction must only be compensatory or coercive, and may not be punitive."  *Gucci Am. v. Bank of China*, 768 F.3d 122, 144 (2d Cir. 2014).  When the purpose of a sanction is coercive, courts have "broad discretion to design a remedy that will bring about compliance."  *Perfect Fit Indus. Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982); *see also Vuitton et Fils S. A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979) ("[T]he district judge, sitting in equity, is vested with wide discretion in fashioning a remedy.").  In devising a remedy for a party or non-party's civil contempt, courts must consider: "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon [it]."  *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987).  Essentially, a fine must "be substantial enough to make it more economical for [the contemnor] to comply than not to comply." *Perfect Fit Indus., Inc.*, 673 F.2d at 57.  Moreover, the party seeking contempt may be awarded attorney fees and costs. *Chevron Corp. v. Donziger*, 384 F. Supp. 3d 465, 506 (S.D.N.Y. 2019) ("Attorneys' fees may be awarded with respect to civil contempt regardless of whether the other relief granted is coercive, compensatory or both.")

Applying the three-part test from *Dole Fresh Fruit Co. v. United Banana Co.*, FoL respectfully submits that the Court should impose a significant financial sanction and additional remedies to ensure compliance and address their egregious misconduct.

### 1.    The Character and Magnitude of the Harm Warrants a Significant Sanction.

The right to punish the unauthorized practice of law by contempt "is based upon the necessity for the protection of the court, the proper administration of justice, the dignity and purity of the profession, and for the public good and the protection of clients." *Clark v. Rearden*, 104 S.W.2d 407, 411-12 (Mo. App. 1937) (quotations omitted).    Leonard and Clapham's manipulation of the legal process, including using unauthorized legal counsel and filing fraudulent motions, constitutes serious interference with the administration of justice. The unauthorized practice of law by a disbarred attorney is a crime.    N.Y. Judiciary Law § 486.  So is the practice of law by a non-attorney.  *Id.*  Clapham was aware that the practice of law by Leonard's cousin was impermissible, as reflected in the WhatsApp messages, but he sought to do it anyways to limit Leonard's costs.  Clapham also knew that having an attorney draft pleadings to be signed *pro se* was impermissible, but again, he cared more about saving time and money than following the rules.  Once Clapham and Hurley realized that their discussions were discoverable, they then considered (another) means to practice law without a license and to cover their tracks: having Leonard's cousin draft a joint defense agreement.  These actions constitute a conscious and deliberate disregard for the rules that govern the practice of law from state rules of ethics to federal rules of procedure to criminal prohibitions against the unauthorized practice of law.

### 2.    The Sanction Must be Significant to be Effective.

A sanction must be severe enough to deter Leonard and Clapham from further misconduct and ensure compliance. Considering their continuous, calculated, and repeated actions to engage in the unauthorized practice of law, a significant monetary fine is necessary.  As indicated by the WhatsApp messages, Clapham knew that his actions were not

permitted.  His motivations demonstrate why a financial sanction must be significant to be effective.  Clapham countenanced deliberate law breaking just to save money.  He said it to Greg Hurley.  He considers this lawsuit a "distraction" and a waste of resources for himself and for Mark Leonard.  This callous disregard for the rules deserves a stern rebuke.

### 3.    Leonard and Clapham's Financial Resources Suggest a Significant Sanction is Warranted.

Given Leonard and Clapham's history of investing in complex financial deals and their substantial expenditures to gain control of FoL, they appear to have significant financial resources.  Clapham was the owner of the largest potato producer in the United Kingdom and the largest daffodil producer in the world.  (Vedra Decl. ¶ 13).  He invested $2 million into FoL and then paid approximately half a million dollars to finance a lawsuit against FoL. (Vedra Decl. ¶ 14).  Similarly, Leonard allegedly spent $200,000.00 to acquire shares in FoL and then sold some of those same shares for over $500,000.00.  (Vedra Decl. ¶ 15).  This suggests that a substantial financial penalty is both necessary and appropriate to compel compliance. The fine should be set at a level that makes it economically irrational for them to continue their course of misconduct. A sanction of $500,000, for instance, would likely be sufficient to make further non-compliance more costly than compliance. FoL respectfully suggests, however, that a sanction of $151,072.00 is appropriate.  This is the average cost of tuition for three years of law school in 2024.[6]  Given that Leonard and Clapham have behaved as though having a lawyer with a law degree and a license to practice is an expense that they wish to avoid, sanctioning them with the cost of attendance is an appropriate and fitting sanction for their conduct.

## V.    CONCLUSION

Leonard and Clapham view complying with the rules as a nuisance.  At the outset, they treated compliance with the rules as optional and sought to limit their costs by knowingly engaging in forbidden activity.   This stands in stark contrast to when Clapham hired

---

[6] According to https://educationdata.org/average-cost-of-law-school.

expensive counsel at a national law firm to accuse FoL and its principals of fraud. They chose counsel consistent with these views. When McKenna was caught misappropriating money from clients, he continued to represent Leonard and Clapham contrary to law. Only when FoL learned that McKenna had been disbarred did McKenna withdraw from this case, nearly ten months after his resignation and disbarment. That withdrawal lacked candor and failed to inform the Court that McKenna had been disbarred. With full knowledge that McKenna had signed the answers while not admitted to practice, Leonard and Clapham failed to take remedial action and seek leave to file answers that comply with Rule 11(a).

Leonard and Clapham have given no indication that they intend to follow the rules in the future. They view this lawsuit as a distraction and are willing to sanction illegal and unethical conduct to save money. Without a significant sanction, FoL reasonably believes that this conduct will continue unabated. Consequently, FoL respectfully requests that the Court enter sanctions against Leonard and Clapham for their conduct.

WHEREFORE, Plaintiff Floyd's of Leadville, Inc. n/k/a Valued, Inc. respectfully requests that the Court:

1.    Strike Leonard and Clapham's answers pursuant to Rule 11(a) for failure to comply with the signing requirements.

2.    Order Leonard and Clapham to show cause why they should not be held in contempt for their participation in the unauthorized practice of law.

3.    Order Paul Rachmuth to show cause why he should not be held in contempt for his participation in the unauthorized practice of law.

4.    Impose civil contempt sanctions to remedy the harm caused by the Defendants' unlawful actions, including reasonable attorney fees and costs.

DATED: November 4, 2024

Respectfully submitted,

/s/ Daniel J. Vedra
Daniel J. Vedra
Vedra Law LLC
1444 Blake Street
Denver, CO 80202
Phone: (303) 937-6540
Fax: (303) 937-6547
Email: dan@vedralaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the date first written above the foregoing was served
CM/ECF on all parties of record:

/s/ Daniel J. Vedra
Daniel J. Vedra