**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

Civil Action No.:  1:22-CV-03318-DEH

Floyd's of Leadville, Inc. N/K/A Valued, Inc.,

       Plaintiff,

v.

Alexander Capital L.P., et al.

       Defendants.

---

**REPLY IN SUPPORT OF MOTION TO STRIKE AND ORDER TO SHOW CAUSE**

---

Plaintiff Floyd's of Leadville, Inc. n/k/a Valued Inc. ("FoL") submits the following reply in support of its Motion to Strike and Order to Show Cause directed at Defendants Mark Leonard and Ronald Barrie Clapham.

## I.    INTRODUCTION

The rules matter. Leonard and Clapham have ignored and disregarded the rules throughout this case despite multiple warnings from the Court. When FoL learned that their attorney had been disbarred, and informed (or reminded) their counsel of this fact, Leonard and Clapham did nothing. They informed the Court that Bryan McKenna had resigned but failed to disclose that he had been disbarred. Then, they waited until after the deadline to respond to FoL's motion, asking the Court to grant them leave to file an amended answer.[1] Now, they ask for no consequences for their actions and claim that they have done nothing wrong. Their response asks more questions than it answers, such as what they actually knew

---

[1] Their response to FoL's motion was not timely filed.

and when. Striking their answers and opening contempt proceedings is the appropriate next step.

**II.     ARGUMENT**

Defendants Leonard and Clapham should have their answers struck and ordered to show cause why they should not be sanctioned for their conduct. First, having a disbarred attorney sign a pleading is not a mere technical violation of Rule 11 and FoL is not required to show prejudice. Second, Leonard and Clapham cannot hide behind their self-professed ignorance. Third, sanctioning these defendants is not a windfall to FoL. Fourth, their response raises more questions than it answers, and these defendants should be ordered to show cause why they should not be sanctioned.

> **A.     This Is Not A Mere Technicality And FoL Is Not Required To Show Prejudice.**

Defendants Leonard and Clapham argue that having an unlicensed and disbarred attorney sign their pleadings should be treated as a mere technicality, and in the absence of prejudice, should not have their answers stricken. To make this argument, they do not cite to any binding precedent or even Rule 11. They do not cite to these authorities because Rule 11 clearly makes striking their answers mandatory. Fed. R. Civ. P. 11(a).

Instead, they cite to Wright & Miller. 5A Wright & Miller, *Federal Practice & Procedure* § 1333. This section of Wright & Miller stands for the proposition that a moving party needs to show prejudice if the failure to sign the pleading was a technicality. Indeed, the cases referenced in Wright & Miller refer to technical defects such as a "bungled signature". *Id.* In effect, Leonard and Clapham argue that the requirement for a licensed attorney to represent them and sign their answers is a mere technicality. But this is not a mere technical error— this is a crime. N.Y. Judiciary Law § 486.

Next, the Defendants cite to *Small v. Arch Capital Grp., Ltd.*, No. 03-cv-5604-JFK, 2005 U.S. Dist. LEXIS 23520, (S.D.N.Y. Oct. 12, 2005). In *Small*, the question was not whether the pleading was signed by a disbarred attorney, as it was here. The attorney in *Small* was duly

licensed to practice law, unlike McKenna. The question was whether a typed-signature suffced under the local rules that required a signature "as it did in John Hancock's day, a name handwritten (or a mark handplaced)." *Id.* at *7. In sum, *Small* considered whether a pleading should be struck when the signature was not properly handwritten. Importantly, the Court in *Small* held that the party satisfied its Rule 11(a) obligations when it promptly corrected the mere technical error by filing a correctly signed complaint a mere four days after learning of the error. This is distinguished from the facts here where Defendants Leonard and Clapham have waited more than eight weeks since learning of the error to take any remedial action. *Small* does not, therefore, stand for the proposition that a disbarred attorney can sign pleadings with no consequences.

The Defendants also cite to *Memisevich v. St. Elizabeth's Med. Ctr.*, 443 F. Supp. 2d 276 (N.D.N.Y. 2006) for the proposition that they should be granted additional time to file a conforming answer. That case is not on point. *Memisevich* considered whether a complaint was timely filed for statute of limitations purposes when a *pro se* party complied with the Court's order to correct an improperly signed complaint. *Id.* at 282-83. The plaintiff had filed a complaint without a signature, and upon being given forty-five days to refile, he complied. This is distinguishable from the facts here where Leonard and Clapham (1) have been represented by licensed counsel throughout and (2) did not seek leave to file a conforming answer until nearly two months after learning of their error.

FoL does not seek contempt lightly or on a mere technicality. McKenna resigned his license and was disbarred. All the while, he was of counsel to Mr. Rachmuth and continued to hold himself out as an attorney until the Appellate Division confirmed his disbarment. And even when Mr. Rachmuth finally notified this Court, he did so without any candor in violation of the local rules. These actions are not on the same level as pleadings lacking wet-ink signatures or *pro se* parties failing to sign complaints. These actions are an affront to the basic requirement that attorneys must be licensed and admitted to appear and practice before this Court.

3

### B. Leonard And Clapham's Ignorance Is No Excuse.

Defendants Leonard and Clapham's other defense is that they did not know that McKenna had been disbarred. Ignorance is no defense. "[T]he general rule [is] that civil litigants are bound by the acts and omissions of their freely selected attorneys." *Reilly v. NatWest Mkts. Grp. Inc.*, 181 F.3d 253, 271 (2d Cir. 1999). "Normally, the conduct of an attorney is imputed to his client, for allowing a party to evade 'the consequences of the acts or omissions of []his freely selected agent' 'would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent.'" *SEC v. McNulty*, 137 F.3d 732, 739 (2d Cir. 1998) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962). "[W]here the attorney's conduct has been found to be willful, the willfulness will be imputed to the party himself where he makes no showing that he has made any attempt to monitor counsel's handling of the lawsuit." *Id.* at 740. This is true even "in the context of a default judgment. . . ." *Id.* at 739. Consequently, Leonard and Clapham must demonstrate that McKenna's actions were not willful and that they have attempted to monitor McKenna's handling of the lawsuit.

Leonard and Clapham fail to show they monitored McKenna's conduct or took steps to ensure compliance with professional standards. Their professed ignorance does not absolve them. They aver that they did not know that McKenna had been disbarred. Similarly, Mr. Rachmuth claims he did not know that McKenna—an attorney practicing in Mr. Rachmuth's law firm—has resigned or been disbarred. While it is concerning that McKenna may have concealed this fact from his clients,[2] and alarming that Mr. Rachmuth did not know that an attorney in his law firm had resigned and been disbarred[3], this demonstrates that McKenna's actions were willful. He knew he had been disbarred and kept it from his clients.

---

[2] As noted in FoL's motion, Mr. Rachmuth also concealed this fact from the Court and was not forthcoming when he notified the Court that McKenna had resigned.

[3] Mr. Rachmuth was duty-bound by the Rules of Professional Conduct to monitor the attorneys in his firm and ensure that they comply with the Rules of Professional Conduct. Rule 5.1. At a minimum, Mr. Rachmuth had an obligation to ensure that McKenna had a license to practice law. Rule 5.5.

Accordingly, Leonard and Clapham must demonstrate that they "made any attempt to monitor" McKenna's handling of this lawsuit. They do not mention—much less meet—this requirement. Consequently, their professed ignorance is not a defense for allowing an unlicensed attorney to represent them.

**C.      Sanctioning Leonard And Clapham Is Not A Windfall To FoL.**

Defendants Leonard and Clapham argue that this motion attempts to create a pattern of sanctionable conduct where none exists and would create a windfall for FoL through no fault of their own. They are wrong on both accounts.

First, Defendants Leonard and Clapham created the pattern of sanctionable conduct. Their sanctionable conduct does not begin and end with using unlicensed attorneys. They were ordered on multiple occasions to produce documents improperly withheld. They have failed to file timely answers on multiple occasions. They have failed to appear at hearings. At present, they are more than eight months late in responding to requests for admission. FoL did not cause them to ignore and disregard the rules. That was their choice.

Second, this does not create a windfall to FoL. Defendant Clapham financed a lawsuit against FoL to take FoL's assets and FoL spent millions of dollars defending this suit. And despite his eager and admitted champerty, he claims that this lawsuit is baseless. Had that been the case, he would have responded to requests for admission that are now over two-hundred and fifty days past due. Neither Leonard nor Clapham have asked for relief from this Court for their failure to respond to requests for admission that are now deemed admitted. In short, striking their answers leaves them in nearly the same place as they currently stand: having admitted to the material allegations of the complaint.

Last, Defendants Leonard and Clapham chose this for themselves. The choice of inadequate or even unlicensed counsel is a risk that Defendants Leonard and Clapham accepted. *See Link v. Wabash R. Co.*, 370 U.S. 626, 633 (1962) ("There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client."). Leonard and Clapham may not like the

consequences of their choices, they have already had adequate time to fix the problem by seeking leave to file proper answers. They did not, and instead, stood by the improper actions of their former counsel. They had the option and opportunity to correct these issues and chose not to. They should not ask the Court for help when they chose not to help themselves.

**D.  Defendants Should Be Ordered To Show Cause Why They Should Not Be Held In Contempt.**

FoL asked this Court to order Defendants Leonard and Clapham to show cause why they should not be held in contempt as a sanction beyond striking their answers for failure to comply with Rule11. Their response raises more questions than it answers and demonstrates why contempt proceedings should be initiated under Local Civil Rule 83.6.

Throughout their declarations, Leonard and Clapham dispute the facts raised by FoL and substantiated by documentary evidence. In their defense, Leonard and Clapham plead ignorance but leave important questions unanswered. For example, neither Mr. Rachmuth nor his clients state precisely when they learned that McKenna had resigned and been disbarred. (Rachmuth Decl. ¶ 3, Doc. 235) ("I was not *immediately* informed by Bryan McKenna that he had resigned from the Bar of the State of New York . . . .") (emphasis added). Mr. Rachmuth then states: "Regarding the answers filed by Mr. McKenna on the defendants' behalf, I did not understand that Mr. McKenna's filings prior to the Court's order confirming his resignation could be rendered ineffective due to the State Court's Order stating that it was *nunc pro tunc*." (Id. ¶ 5). This statement suggests that Mr. Rachmuth knew that McKenna had resigned his license but permitted McKenna to file answers on behalf of Mr. Rachmuth's clients. McKenna claims that he did not inform Mr. Rachmuth until he was asked to cover a deposition but does not state which deposition. (McKenna Decl. ¶ 5, Doc. 238). These statements are vague and evasive. They fail to clarify key facts such as the precise timeline of McKenna's resignation and the defendants' knowledge of his disbarment. Leonard,

Clapham, and Mr. Rachmuth should be required to state under oath when they learned that McKenna had resigned and was disbarred.

Similarly, Mr. Rachmuth states that Leonard and Clapham's answers were "filed by an attorney who later resigned from the bar *nunc pro tunc* to a date prior to the answers' filings." (Id. ¶ 6). This statement creates the incorrect impression that McKenna signed the answers then resigned. Not so. He resigned then signed the answers.

At bottom, claiming ignorance does not excuse their failure to act. Their precise knowledge and when they learned McKenna was not licensed to practice law is material to the size of the sanction. Their vague and non-specific statements generate more questions and answers, and contempt proceedings are appropriate to reach the true extent of these defendants' knowledge.

## III. CONCLUSION

Allowing an unlicensed attorney to represent them and sign pleadings is not merely a procedural issue or trivial imperfection—it is a violation of law. Defendants Leonard and Clapham knew for at least six weeks (and probably longer) that Bryan McKenna was disbarred. When this fact became known to their counsel, they did not take any remedial measures. They waited until FoL addressed the issue to the Court. Even then, their response was not timely.

The rules do not appear to matter to Defendants Leonard and Clapham. They have repeatedly failed to comply with them and treat this lawsuit as a mere nuisance. Their goal, stated by Clapham in his WhatsApp messages to Greg Hurley, is to minimize costs so they can continue on doing what they would rather be doing. But having a license to practice law is not a mere technicality, even if Leonard and Clapham treat it as one. Their disregard for the rules justifies a stiff sanction.

WHEREFORE, Plaintiff Floyd's of Leadville, Inc. n/k/a Valued, Inc. respectfully requests that the Court:

1.	Strike Leonard and Clapham's answers pursuant to Rule 11(a) for failure to comply with the signing requirements.

2.	Order Leonard and Clapham to show cause why they should not be held in contempt for their participation in the unauthorized practice of law.

3.	Order Paul Rachmuth to show cause why he should not be held in contempt for his participation in the unauthorized practice of law.

4.	Impose civil contempt sanctions to remedy the harm caused by the Defendants' unlawful actions, including reasonable attorney fees and costs.

DATED: November 4, 2024

Respectfully submitted,

/s/ Daniel J. Vedra
Daniel J. Vedra
Vedra Law LLC
1444 Blake Street
Denver, CO 80202
Phone: (303) 937-6540
Fax: (303) 937-6547
Email: dan@vedralaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the date first written above the foregoing was served CM/ECF on all parties of record:

/s/ Daniel J. Vedra
Daniel J. Vedra