UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FLOYD'S OF LEADVILLE, INC.,
N/K/A VALUED, INC.,

        Plaintiff,

        vs.

ALEXANDER CAPITAL, L.P., NESA MANAGEMENT, LLC, JOSEPH ANTHONY AMATO, ROCCO GERARD GUIDICIPIETRO, JONATHAN GAZDAK, RONALD BARRIE CLAPHAM, MARK LEONARD, PROVISION HOLDING, INC., TIMOTHY KELLY, and THREE DDD, LLC,

        Defendants.

Case No.: 1:22-cv-03318-DEH

---

**DEFENDANTS ALEXANDER CAPITAL, L.P., NESA MANAGEMENT, LLC, JOSEPH ANTHONY AMATO, ROCCO GERARD GUIDICIPIETRO, AND JONATHAN GAZDAK'S MOTION TO STRIKE PLAINTIFF'S JURY DEMAND**

Defendants Alexander Capital, LP ("Alexander Capital"), NESA Management, LLC, Joseph Amato, Rocco Guidicipietro, and Jonathan Gazdak (collectively, "ACLP Defendants") hereby move to strike Plaintiff's jury demand improperly asserted in violation of the parties' prior contractual agreement.

**I.    FACTUAL BACKGROUND**

This case arises out of Plaintiff's engagement of ACLP to raise capital for FOL in the form of senior secured promissory notes ("Notes"). (Doc. 172, Unopposed Motion for Order of Production of Deposition Transcripts ACLP, ¶ 2.) Pursuant to the terms of the parties' Engagement Agreement, attached as Exhibit 1 to Plaintiff's Complaint[1] (Doc. 1-1), Plaintiff retained ACLP "to act as the Company's exclusive private placement agent and financial advisor in connection with the Placement" and "to consult with and advise the

---

[1] Although Paragraph 26 of Plaintiff's First Amended Complaint refers to the Engagement Agreement as Exhibit 1, the Agreement itself was not attached to the filed version of Plaintiff's First Amended Complaint at Doc. 165.

Company with respect to the Placement and anything incidental thereto, as directed by the Company." (Exhibit A, October 2017 Engagement Agreement §§ 1-2.) Section 10 of Plaintiff's Engagement Agreement with ACLP provides: "The parties hereby expressly waive all rights to trial by jury in any suit, action or proceeding arising under this Agreement." (*Id.* § 10.)

ACLP raised $4,338,565 in funds from over 60 investors between December 2017 and October 2018. Plaintiff defaulted on the loans after failing to pay the interest and principal due on the loans and negotiations for restructuring the debt were unsuccessful. (*Id.*) Several of the investors, through a special purpose entity, Redemption Holdings, Inc., filed suit against Plaintiff and other related parties in state court in Colorado. (*Id.*; *see also* Doc. 165, Am. Compl., ¶ 170.) After Plaintiff unsuccessfully attempted to assert third-party claims against ACLP in the Colorado case, Plaintiff filed this case against ACLP Defendants and several of the investors. (*See* Doc. 147, 11.3.2023 Joint Letter from Counsel to Hon. Dale E. Ho, ¶ 4 at p. 4.) Plaintiff's Complaint includes a demand for a jury trial. (Doc. 165, Am. Compl. at 72.)

## II.  ARGUMENT

ACLP Defendants[2] seek to enforce the contractual jury waiver provision in the Engagement Agreement as to all claims asserted by Plaintiff against them and hereby move to strike Plaintiff's jury demand.

Rule 39 of the Federal Rules of Civil Procedure authorizes the court, on motion, to strike a jury demand where the Court determines that there is no right to a jury trial under the circumstances. *See* Fed. R. Civ. P. 39(a)(2). "Issues on which a jury trial is not properly demanded are to be tried by the court." Fed. R. Civ. P. 39(b). "Although the right [to a jury trial] is fundamental and a presumption exists against its waiver, a contractual waiver is enforceable if it is made knowingly, intentionally, and voluntarily." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007). And while "courts have reiterated the general precept that contractual provisions containing jury trial waivers should be 'narrowly construed,'" it is equally true that "the plain language of enforceable waiver provisions must be construed literally." *Kortright*

---

[2] Defendants Amato, Guidicipietro, and Gazdak are entitled, as agents of ACLP, to invoke the jury waiver provision as to Plaintiff's claims asserted against them. *Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 707 (S.D.N.Y. 2011).

*Capital Partners LP v. Investcorp Inv. Advisers Ltd.*, 327 F. Supp. 3d 673, 686 (S.D.N.Y. 2018) (internal citations omitted). Where a party has made a jury demand contrary to its agreement by contract to "waive trial by jury," the plain language of the contractual waiver "requires the dismissal of the jury demand." *Coraud LLC v. Kidville Franchise Co., LLC*, 109 F. Supp. 3d 615, 624 (S.D.N.Y. 2015); *see also Westminster Sec. Corp. v. Uranium Energy Corp.*, 255 F. Supp. 3d 490, 495-96 (S.D.N.Y. 2017) ("[T]here is plentiful authority explicitly holding that a jury demand does not override a contractual jury waiver.") (citing cases); *Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, 2007 U.S. Dist. LEXIS 82557, at *4 (S.D.N.Y. Nov. 7, 2007) (describing a request for a jury trial as "improperly" included in a pleading "if the right to a jury trial had been waived"); *Great Earth Int'l Franchising Corp. v. Milks Dev.*, 311 F. Supp. 2d 419, 437-38 (S.D.N.Y. 2004) (holding that simply requesting a jury trial does not create the right if it did not exist at the time of the demand).

As ACLP Defendants understand it, Plaintiff's issue is with the applicable scope, not the enforceability, of the jury trial waiver provision.[3] Section 10 of Plaintiff's Engagement Agreement with ACLP provides a broad scope to the jury waiver: "The parties hereby expressly waive all rights to trial by jury in any suit, action or proceeding arising under this Agreement." (*Id.* § 10.) The simple fact is that all of the claims asserted against the ACLP Defendants arise out of Plaintiff's engagement of ACLP to act as FOL's placement agent and financial advisor to raise capital for FOL. Plaintiff asserts the following claims against the ACLP Defendants: Fraud (Count I); Securities Fraud (Count III); Violation of the Investment Advisers Act (Count IV); Breach of Fiduciary Duty (Count VI); Conversion (IX); Breach of Contract (V); and Conspiracy (VI).

Whether the claims at issue fall within the scope of the jury waiver provision is a matter of contract interpretation. Under New York law, the phrase "arising under"[4] has been interpreted, in the context of insurance coverage disputes, to mean "originating from, incident to, or having connection with," indicating that there be "some causal relationship." *E.g., Country-Wide Ins. Co. v. Excelsior Ins. Co.*, 147 A.D.3d 407,

---

[3] Federal law governs the enforceability of a jury waiver provision. *Merrill Lynch & Co v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007). New York contract law applies to the interpretation of the scope of a contractual jury waiver provision. *Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd.*, 327 F. Supp. 3d 673, 684-85 (S.D.N.Y. 2018).

[4] The phrase "arising under" as used in the Engagement Agreement is synonymous with the similar phrases "arising from" and "arising out of." *See Gluck v. Exec. Risk Indem., Inc.*, 680 F. Supp. 2d 406, 419, n. 12. (E.D. N.Y. 2010).

3

46 N.Y.S.3d 96, 98 (App. Div. 2017); *Maroney v. New York Cent. Mut. Fire Ins. Co.*, 5 N.Y.3d 467, 472, 839 N.E.2d 886, 889, 805 N.Y.S.2d 533, 536 (2005); *Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 568 (2d Cir. 2011). To determine whether Plaintiff's claims arise under the Engagement Agreement, the relevant inquiry is whether a plausible claim would exist but for the parties' relationship under the Engagement Agreement. *See, e.g., Mount Vernon Fire Ins. Co. v. Creative Housing Ltd.*, 88 N.Y.2d 347, 668 N.E.2d 404, 405, 645 N.Y.S.2d 433 (N.Y. 1996) (adopting "but-for" causation test to determine applicability of an "arising out of" exclusion); *Scottsdale Indem. Co. v. Beckerman*, 120 A.D.3d 1215, 1219, 992 N.Y.S.2d 117, 121 (App. Div. 2014) ("[I]f the plaintiff in an underlying action or proceeding alleges the existence of facts clearly falling within such an exclusion, and none of the causes of action that he or she asserts could exist but for the existence of the excluded activity or state of affairs, the insurer is under no obligation to defend the action."); *Burlington Ins. Co. v. NYC Transit Auth.*, 29 N.Y.3d 313, 321-22, 57 N.Y.S.3d 85, 89-90, 79 N.E.3d 477, 481-82 (App. Div. 2017) (explaining that "but for" causation is "[t]he cause without which the event could not have occurred" and that the term "refers to a link in the chain leading to an outcome and in the abstract does no more than state the obvious, that '[a]ny given event, including an injury, is always the result of many causes'" but stands in contrast to "proximate cause" which refers to a "'legal cause' to which the Court has assigned liability"); *see also Consol. Edison Co. v. Hartford Ins. Co.*, 203 A.D.2d 83, 610 N.Y.S.2d 219, 221 (App. Div. 1994) (stating that the phrase "arising out of" in the context of an additional insured clause in an insurance policy "focuses not upon the precise cause of the accident . . . but upon the general nature of the operation in the course of which the injury was sustained").

In the context of determining the scope of a forum selection clause, the Second Circuit and New York state courts have held that a "business tort claim arises out of a contract if the claim depends on the existence of a contractual relationship." *KnowYourMeme.com Network, Inc. v. Nizri*, No. 22-1322, 2023 U.S. App. LEXIS 26933, at *3 (2d Cir. Oct. 11, 2023) (citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 388-89 (2d Cir. 2007) and *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 724 (2d Cir. 2013)); *see also Montoya v. Cousins Chanos Casino, LLC*, 34 Misc. 3d 1211[A], 943 N.Y.S.2d 793 (N.Y. Sup. Ct. 2012) (explaining that fraud-based claims "grow out of the contractual relationship between the parties and require

interpretation of the contract for resolution"); *Triple Z Postal Servs., Inc. v. United Parcel Serv., Inc.*, 13 Misc. 3d 1241, 831 N.Y.S.2d 357 (N.Y. Sup. Ct. 2006) (stating that the resolution of a "fraudulent misrepresentation claim" is "inextricably linked to the parties['] contractual relationship, the contract and its interpretation"); *see also Bonnie-Lassie Sportswear, Inc. v. Century Factors, Inc.*, 283 A.D. 702, 127 N.Y.S.2d 740 (App. Div. 1954) (holding that the plaintiff's conversion claim arose under the parties' factoring agreement containing provision for waiver of jury trial).

In *Roby v. Corporation of Lloyd's*, the Second Circuit held that the plaintiffs' claims brought under Section 10(b) of the Securities Exchange Act fell within the scope of the parties' contractual forum selection and arbitration clauses, finding "no substantive difference in the present context between the phrases 'relating to,' 'in connection with' or 'arising from'" and rejecting the plaintiffs' "contention that only allegations of contractual violations fall within the scope of the clauses." 996 F.2d 1353, 1361 (2nd Cir. 1993). The Court in *Roby* relied on the Supreme Court's decision in *Scherk v. Alberto-Culver Co.*, holding that controversies and claims "arising out of" a contract for the sale of a business covered securities violations related to that sale. 417 U.S. 506, 519-520 (1974).

The reasoning and principles in these cases, applied to Plaintiff's claims here, compel only one conclusion: all of Plaintiffs' asserted claims against the ACLP Defendants "arise under" the Engagement Agreement and are covered by the contractual jury waiver provision. But for Plaintiff's contractual engagement of ACLP to serve as Plaintiff's placement agent and financial advisor, Plaintiff would not have incurred the multi-million-dollar debt for which it now complains. The fact that ACLP was successful in raising over $4 million in capital for Plaintiff through a senior secured debt offering is the basis for each of the claims Plaintiff asserts against the ACLP Defendants.

<u>Count I: Fraud</u>

At the crux of Plaintiff's fraud claim in Count I are allegations that Plaintiff was fraudulently induced to enter into the promissory notes with the investors based on alleged misrepresentations of the terms of the offering and were misled as to ACLP's role as financial advisor. (1st Am. Compl. ¶¶ 189, 191.) There is no question that the basis for Plaintiff's fraud claim arises under the Engagement Agreement. The very purpose

5

of the Engagement Agreement was for Plaintiff to engage ACLP to help Plaintiff, as its placement agent and financial advisor, to raise capital through the issuance of promissory notes. To the extent ACLP "induce[d]" Plaintiff to enter into the promissory notes, it did so pursuant to ACLP's role as Plaintiff's placement agent and financial advisor established by the Engagement Agreement. In short, had there been no engagement of ACLP and no private placement of the promissory notes, there would be no fraud claim.

### Count III: Securities Fraud

Similarly, Count III asserts that ACLP induced Plaintiff to issue securities – the promissory notes – through affirmative misrepresentations and omissions regarding the terms of the notes and as to ACLP's role as financial advisor. (1st Am. Compl. ¶¶ 208, 210, 213.) The Complaint alleges that Plaintiff FOL "reasonably relied upon the misrepresentations and omissions of material facts Alexander Capital and Gazdak made with respect to FOL's *solicitation of funds* and as to the specific securities issued by FOL, and the *subject transactions would not have occurred but for* Alexander Capital's and Gazdak's representations and omissions." (*Id.* ¶ 215) (emphasis added). Plaintiff FOL further alleges that ACLP engaged in the alleged fraud "in acting as FOL's financial advisor and fiduciary in connection with" the lending documents, (*id.* ¶ 209) and that Plaintiff suffered damages as a result by issuing securities "on unfavorable terms and in amounts it would not have otherwise agreed to, causing it to become over-leveraged, owe grossly increased interest amounts, and face the loss of its business due to its inability to repay the debt with which Alexander Capital saddled it," by virtue of the private placement. (*Id.* ¶ 216.) The purpose of the Engagement Agreement was to facilitate the issuance of securities via a private placement on behalf of Plaintiff. Plaintiff's claim for securities fraud in Count III therefore necessarily arises under the Engagement Agreement.

### Count IV: Investment Advisers Act

Plaintiff's claim in Count IV under the Investment Advisers Act depends entirely on the existence of the Engagement Agreement. (1st Am. Compl. ¶¶ 220-224.) Plaintiff asserts ACLP Defendants are liable under the Act because, "[p]ursuant to the Engagement Agreement, Alexander Capital and its agents served as investment advisor to FOL and received special compensation from FOL for performing investment advisory services for FOL" (*id.* ¶ 220) and that during "the course of its engagement with FOL, Alexander Capital

6

engaged in fraudulent, deceitful, and manipulative conduct" (*id.* ¶¶ 222-224.) Particularly since this claim explicitly relies upon the Engagement Agreement, there can be no debate that Plaintiff's claim in Count IV arises under the Engagement Agreement.

### Count VI: Breach of Fiduciary Duty

In support of its claim for breach of fiduciary duty in Count VI of the Complaint, Plaintiff alleges that "[a]s FOL's trusted financial advisor, fiduciary, and broker, Alexander Capital (and thus its agents, including Gazdak and DiMartini) owed fiduciary duties to FOL." (*Id.* ¶ 239.) The alleged duties stem from ACLP's role as Plaintiff's financial advisor and placement agent under the Engagement Agreement. The Complaint alleges that the ACLP Defendants breached their duties by "[f]abricating the lending documents, applying FOL's signatures to documents without FOL's knowledge and consent, and falsely representing that FOL had agreed to terms they never shared with FOL," "withholding material information about the lending documents," and "inducing FOL to borrow millions of dollars." (*Id.* ¶ 240.) The alleged breaches arise out of ACLP's alleged actions in carrying out its role as placement agent and financial advisor under the Engagement Agreement in connection with the private placement. Thus, the claims in Count VI clearly arise under the Engagement Agreement.

### Count IX: Conversion

In exchange for the performance of its services as placement agent and financial adviser to FOL, ACLP was entitled to receive compensation under the Engagement Agreement in the form of a "cash fee equal to ten (10%) of the net proceeds" of the private placement--referred to as the "Placement" and "Placement Success Fee," respectively. (Exhibit A, Engagement Agreement, § 3(a).) Under the terms of the Engagement Agreement the Placement Success Fee was "due and payable to Alexander immediately upon the closing of the Placement from cash proceeds of the Placement and shall be disbursed directly to Alexander simultaneously with the deliver of the cash proceeds of the Placement to the Company." (*Id.*)

Not only does Plaintiff's conversion claim arise from ACLP's role as Plaintiff's financial advisor for the Placement—as established by the Engagement Agreement—but the merits of Plaintiff's conversion

7

claim,[5] alleging that ACLP "took significant amounts of the investment money FOL received and distributed it to themselves and their agents, without FOL's permission and knowing that they and their agents had no right to receive the money," (1st Am. Compl. ¶ 261) depends on the parties' rights and obligations under Section 3 of the Engagement Agreement. Plaintiff's claim in Count IX therefore arises under the Engagement Agreement and falls within the scope of the jury waiver.

### Count X: Breach of Contract

Plaintiff's claim for breach of contract, alleging that ACLP breached its obligations under the Engagement Agreement arises, by definition, under the Engagement Agreement and is subject to the jury waiver provision. (1st Am. Compl. ¶¶ 272-287.)

### Count XII: Civil Conspiracy

Plaintiff's claim for civil conspiracy in Count XII is a catch-all, kitchen sink claim that incorporates all of the factual allegations and prior causes of action. (*See* 1st Am. Compl. ¶ 298.) But for the Engagement Agreement and the over $4 million raised by ACLP, Plaintiff would have no basis to assert a claim that ACLP was involved in a conspiracy to "wrongfully acquire FOL." Consistent with the reasons stated above, the conspiracy claim, like the other claims, arises out of ACLP's role as Plaintiff's financial advisor established by the Engagement Agreement and, thus, necessarily arises under the Engagement Agreement.

## III. CONCLUSION

The claims in this case unquestionably arise out of the parties' contractual business relationship during which ACLP raised a significant amount of money for FOL. After accepting $4,338,565 from over 60 investors and then defaulting on the promissory notes, Plaintiff filed this Complaint alleging a fantastic conspiracy that ACLP capitalized on its engagement as placement agent and financial advisor to purportedly design and executed a plan to steal FOL from its founder, Floyd Landis, by structuring the offering to fail and encouraging FOL to overleverage so that FOL would default and ACLP could seize control of FOL's assets.

---

[5] Plaintiff's conversion claim also asserts that ACLP "coerced FOL, after the fact, to go along with the false issuance of [FOL stock] based on the threat that otherwise Alexander Capital would immediately cut off funding and FOL would fold." (1st Am. Compl. ¶ 264.) Such an allegation implicates ACLP's role as the exclusive placement agent of FOL's securities as contemplated under the Engagement Agreement.

In consummating their business relationship, the parties agreed to "expressly waive all rights to trial by jury in any suit, action, or proceeding arising under" their Engagement Agreement. For these reasons, the ACLP Defendants respectfully request that the Court strike Plaintiff's jury demand and order that this action be tried before the Court, rather than to a jury, as the parties expressly agreed.

Respectfully submitted this 17th day of January 2025.

/s/ *Bryan Ward*
Bryan Ward (*Pro Hac Vice*)
Holly Cole (*Pro Hac Vice*)
Aaron Wright (*Pro Hac Vice*)
Holcomb + Ward, LLP
3455 Peachtree Road NE
Suite 500
Atlanta, Georgia 30326
404-601-2803
Bryan.Ward@holcombward.com
Holly@holcombward.com
Aaron@holcombward.com

*Counsel for Defendants Alexander Capital LP, Joseph Amato, Rocco Guidicipietro, Jonathan Gazdak, and NESA Management, LLC*