# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

FLOYD'S OF LEADVILLE, INC.,         :
N/K/A VALUED, INC.,             :
                                     :
             Plaintiff,        :
                                     :
               vs.           :     Case No.: 1:22-cv-03318-DEH
                                     :
ALEXANDER CAPITAL, L.P., et al.,    :
                                     :
             Defendants.     :
                                     :

-----------------------------------------------------------------

**REPLY IN SUPPORT OF MOTION TO STRIKE PLAINTIFF'S JURY DEMAND**

I.    PLAINTIFF KNOWINGLY AND VOLUNTARILY AGREED TO THE WAIVER OF JURY TRIAL

Plaintiff does not dispute the fact that it knowingly and voluntarily agreed to the jury waiver provision by entering into the Engagement Agreement with Alexander Capital.[1] FOL's jury trial waiver was knowing and voluntary as demonstrated by the fact that the terms of the Engagement Agreement were subject to negotiation, the conspicuousness of the jury waiver provision, the equal bargaining power between FOL and Alexander Capital, and the business acumen of FOL. *See Morgan Guar. Tr. Co. of N.Y. v. Crane*, 36 F. Supp. 2d 602, 603-04 (S.D.N.Y. 1999). Negotiability is evidenced here by FOL's opportunity to review and revise the Engagement Agreement prior to signing the Agreement. FOL was represented by an attorney who reviewed and made changes to the Engagement Agreement prior to Mr. Landis's execution of the Agreement on FOL's behalf. (*See* Exhibit B, Email correspondence regarding Engagement Agreement.). *See, e.g., Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd.*, 327 F. Supp. 3d 673, 685-86 (S.D.N.Y. 2018) (finding waiver was knowing and voluntary based on showing that defendant was represented by counsel throughout negotiations and provided comments on draft agreements); *Lehman Bros. Holdings Inc. v. Bethany Holdings Grp. LLC*, 801 F. Supp. 2d 224, 230 (S.D.N.Y. 2011) (agreeing that defendant's personal ignorance of waiver was inconsequential because his attorney had the opportunity to review the agreement); *Wechsler v. Hunt Health Sys.*, 94 Civ. 8294 (PKL), 2003 U.S. Dist. LEXIS 13775 at *9-10 (S.D.N.Y. Aug. 8, 2003) (Leisure, J.) (finding contract terms negotiable where "counsel

---

[1] Defendants believed the parties' dispute to be over the scope, not the enforceability, of the jury waiver provision based on communications between counsel. (*See* Exhibit A, December 10, 2024 Email correspondence between B. Ward and D. Vedra.). Should the Court have any doubts over the merits of the ACLP Defendants' contention that Plaintiff made the waiver knowingly and voluntarily, the Court may permit Plaintiff to address the question in a sur-reply. *See, e.g., Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009) (noting "the Second Circuit has made it abundantly clear that a district court has discretion to consider a belatedly-raised argument"); *Sacchi v. Verizon Online LLC*, No. 14-CV-423 (RA), 2015 U.S. Dist. LEXIS 48971, at *1 n.1 (S.D.N.Y. Apr. 14, 2015) ("since Verizon was afforded the opportunity to file a sur-reply in response to Plaintiff's new argument, the Court will consider Plaintiffs request for interlocutory appeal as an alternative to his motion for reconsideration").

1

represented defendants, reviewed the contracts, and made some revisions to the documents prior to

defendants signing them"). The conspicuous placement of the waiver in the Engagement Agreement

indicates that FOL's consent was knowing and voluntary:

> 10.    Governing Law; Jurisdiction; Waiver of Jury Trial.   This Agreement (including all exhibits hereto) shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements made and to be fully performed therein, without regard to conflicts of law principles, as more specifically set forth in Exhibit C. The Company irrevocably submits to the exclusive jurisdiction of any State or Federal court sitting in New York County, New York for the purpose of any suit, action or other proceeding arising out of this Agreement, or any of the agreements or transactions contemplated hereby, which is brought by or against the Company, and agrees that service of process in connection with any such suit, action or proceeding may be made upon the Company in accordance with Exhibit C hereof.  The parties hereby expressly waive all rights to trial by jury in any suit, action or proceeding arising under this Agreement.

(Doc. 1-1 at 3.) The waiver appears in the same size and style font as the rest of the text, is set off in

a separate paragraph containing other provisions related to litigation procedures, and is preceded by

a prominent underlined heading. It is therefore sufficiently conspicuous to be enforceable. *See, e.g.,*

*Wechsler*, 2003 U.S. Dist. LEXIS 13775 at *13-14 (concluding that waivers were conspicuous

because they were legible, in the same typeface as the rest of the document, and set off in separate

paragraphs containing other provisions related to litigation procedures); *Nat'l Westminster Bank v.

Ross*, 130 B.R. 656, 667 (S.D.N.Y. 1991) (finding a jury trial waiver knowing and intentional based

on the fact that the provision was "printed in small but entirely legible text," similar to the rest of the

agreement); *Kortright Capital Partners LP*, 327 F. Supp. 3d at 685-86 (finding that placement of

jury waiver provisions, which are set off in their own subsection in all-capital letters and in the same

size as the language in the agreements, suggests that the parties' jury trial waiver was knowing and

voluntary). FOL marketed itself as having an experienced management team operating as a

successful startup in the Colorado cannabis industry selling products "in over 30 dispensaries," with

more than $1.52 million in revenue and was under contract to purchase a 4.42-acre property and

110,000 square foot greenhouse growing facility for $3.6 million. (*See* Exhibit C, FOL Investor

Presentation Q4 2017.) Such facts dispel the notion that FOL lacked the requisite level of business

2

acumen or bargaining power to knowingly and voluntarily agree to the terms of the Engagement Agreement, including the jury waiver provision. *See Morgan Guaranty Trust Co.*, 36 F. Supp. 2d at 604 (enforcing jury waiver despite a difference in bargaining power between bank and the individual defendants because they "were not financial neophytes," had established business relationships, previously negotiated contracts, and were "experienced business people" who had previously engaged in "sophisticated business transactions"); *Wechsler*, 2003 U.S. Dist. LEXIS 13775 at *12-14 (finding defendant — corporate entities engaged in various business transactions — "possessed sufficient business acumen to understand what they were agreeing to, and thus, are deemed to have given their consent knowingly, intentionally, and voluntarily"); *Orix Credit All., Inc. v. Better Built Corp.*, No. 89 Civ. 7333 (JFK), 1990 U.S. Dist. LEXIS 8106, at *3-4 (S.D.N.Y. July 2, 1990) ("[S]ince both sides include corporations, neither should be a stranger to contract negotiations. The Court does not doubt that the BBC Defendants could have chosen not to sign the agreement.").

## II.    THE JURY WAIVER APPLIES TO FOL'S CLAIMS AGAINST DEFENDANT NESA MANAGEMENT, LLC

NESA Management, LLC is a named party only in its capacity as a partner of Alexander Capital under the theory that Alexander Capital is not a limited partnership and the "Alexander Capital Partners are liable for any tortious conduct Alexander Capital has committed." (Am. Compl. ¶ 6; *id.* at n. 1.) Plaintiff does not dispute the authority cited in the ACLP Defendants' Motion that nonsignatory agents of ACLP are entitled to invoke the jury waiver provision for the claims asserted against them. *See Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 707 (S.D.N.Y. 2011). The jury waiver in the Engagement Agreement applies to Plaintiff's claims against NESA Management, LLC as an agent/partner of Alexander Capital. *Id.*; 6 Del. C. § 15-301(1)[2] ("Each partner is an agent of the partnership for the purpose of its business, purposes or activities."); *see*

---

[2] Alexander Capital is a Delaware limited partnership. (Am. Answer, Doc. 166 ¶ 5.)

*also Hilton Hotels Corp. v. Minskoff*, 91 CIV. 8666 (LBS), 1992 U.S. Dist. LEXIS 15946, at \*2-3 (S.D.N.Y. Oct. 19, 1992) (rejecting the defendant's argument that because he was not the original signatory to the Guaranty agreement he was not bound by the jury waiver where the defendant was not being sued in his individual capacity but only as the general partner of the successor of the original guarantor).

### III.    THE PHRASE "ARISING UNDER" IS NOT LIMITED TO BREACH OF CONTRACT CLAIMS

By providing that the "parties hereby expressly waive all rights to trial by jury in any suit, action or proceeding ***arising under this Agreement***," it does not follow that the waiver is limited solely to claims ***for breach of*** the Agreement. Plaintiff does not point to any binding authority that requires this Court to adopt Plaintiff's interpretation that "non-contractual claims do not arise under the Engagement Agreement," and this interpretation is contradicted by the plain language of the waiver provision, which refers to "all rights to trial by jury **in any suit, action or proceeding** [not just a "claim"] arising under this Agreement." (Doc. 1-1 at 3 (emphasis added)); *Kortright Capital Partners LP*, 327 F. Supp. 3d at 684-85 (Despite "the general precept that contractual provisions containing jury trial waivers should be 'narrowly construed' … the plain language of 'enforceable waiver provisions must be construed literally.'"). While protesting that "arise under" is not synonymous with "arise out of," Plaintiff relies on *In re Optimal U.S. Litig.* in which the court used the terms "arise out of" and "to arise under" interchangeably:

> To "***arise out of***" means "'to originate from a specified source," and generally indicates a causal connection." . . . In *Phillips v. Audio Active Ltd.*, the Second Circuit . . . "[saw] no reason to presume the parties meant anything other than the dictionary definition of the term ["***to arise under***"]: to originate from a specified source."

813 F. Supp. 2d 351, 364-365 (emphasis added, brackets in original).

The Second Circuit in *Phillips v. Audio Active, Ltd*. rejected the argument that Plaintiff makes here that where the duty also arises under common law or a statute the claim does not arise under the

4

contract. 494 F.3d 378, 388 (2d Cir. 2007) ("We are not persuaded by Phillips' suggestion that a claim arising under the Copyright Act for jurisdictional purposes cannot also 'arise out of' a contract for purposes of interpreting a forum selection clause."); *see also Magi XXI, Inc. v. Stato della Città del Vaticano*, 714 F.3d at 724-25 (holding that a contractually-based forum selection clause covers tort claims if the tort claims "ultimately depend on the existence of a contractual relationship," reasoning that "[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract" and finding that claims for misrepresentation, negligence, and unjust enrichment related to the rights and duties set out in the parties' agreements); *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1361 (2nd Cir. 1993) (rejecting the plaintiffs' contention that "only allegations of contractual violations fall within the scope of the clauses" and equating phrase "arising from" with "relating to," and "in connection with"); *Thibodeau v. Pinnacle FX Invs.*, No. 08-CV-1662 (JFB) (ARL), 2008 U.S. Dist. LEXIS 90440, at *21 (E.D.N.Y. Nov. 6, 2008) ("[A] dispute over a contract does not cease to be such merely because instead of charging breach of contract the plaintiff charges a fraudulent breach, or fraudulent inducement, or fraudulent performance . . . the existence of multiple remedies for wrongs arising out of a contractual relationship does not obliterate the contractual setting, does not make the dispute any less one arising under or out of or concerning the contract . . .") (quoting *American Patriot Ins. Agency v. Mutual Risk Management, Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004)).

IV.    CONCLUSION

For these reasons, the ACLP Defendants move this Court to strike Plaintiff's jury demand with respect to its claims against the ACLP Defendants.[3]

---

[3] Contrary to Plaintiff's Response, the ACLP Defendants seek only to enforce the jury waiver provision as to those claims Plaintiff asserts against them.

Respectfully submitted this 7th day of February 2025.

/s/ *Bryan Ward*
Bryan Ward (*Pro Hac Vice*)
Holly Cole (*Pro Hac Vice*)
Aaron Wright (*Pro Hac Vice*)
Holcomb + Ward, LLP
3455 Peachtree Road NE
Suite 500
Atlanta, Georgia 30326
404-601-2803
Bryan.Ward@holcombward.com
Holly@holcombward.com
Aaron@holcombward.com

*Counsel for Defendants Alexander Capital LP,*
*Joseph Amato, Rocco Guidicipietro, Jonathan*
*Gazdak, and NESA Management, LLC*