### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

Civil Action No.:  1:22-CV-03318-DEH

Floyd's of Leadville, Inc. N/K/A Valued, Inc.,

      Plaintiff,

v.

Alexander Capital L.P., et al.

      Defendants.

### MOTION TO STRIKE

Plaintiff Floyd's of Leadville Inc. n/k/a Valued Inc. ("FoL") objects to and asks the Court to strike certain exhibits and arguments raised in Defendants Alexander Capital, LP ("AC"), NESA Management, LLC, Joseph Amato, Rocco Guidicipietro, and Jonathan Gazdak's (collectively, the "ACLP Defendants") reply in support of their motion to strike jury demand.

**I.  INTRODUCTION**

The ACLP Defendants have asked the Court to strike FoL's jury demand based on a contractual waiver contained in their engagement agreement with FoL. As the moving party, their motion should have contained evidence that FoL knowingly and voluntarily waived its constitutional right to a jury trial. They failed to meet this burden, and FoL addressed this in its response.

On reply, the ACLP Defendants describe their mistaken belief that the dispute is over the scope and not enforceability of the jury-trial waiver. Then, the ACLP Defendants submit evidence that they argue demonstrates FoL negotiated the engagement agreement with the jury trial waiver. To support this new argument, they submit misleading e-mail correspondence *between AC and*

*AC's own attorney*. To rectify the prejudice they caused, they assert that FoL should submit a sur-reply despite this Court's orders limiting the briefing on this issue.

## II.     ARGUMENT

FoL asks the Court to strike Section I and Exhibits B and C to the ACLP Defendants' reply. There are three reasons that the Court should strike these arguments and any documentary evidence submitted for the first time in the ACLP Defendants' reply. First, the arguments and evidence are untimely. Second, the ACLP Defendants are attempting to expand the page limitations imposed by this Court. Third, the arguments and evidence submitted are misleading and irrelevant.

### A.     ACLP Defendants' Arguments And Evidence Are Untimely.

The ACLP Defendants had the burden to prove that FoL knowingly and voluntarily waived its constitutional right. *Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd.*, 327 F. Supp. 3d 673, 685 (S.D.N.Y. 2018). "Arguments may not be made for the first time in a reply brief." *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993). When one party bears the burden of proof, that party must make a prima facie showing of facts that it is entitled to relief in its motion. *See Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 704-05 (S.D.N.Y. 2011). If the moving party fails to meet its burden, the non-moving party can respond by arguing that the moving party has not met its burden. *Id.* Pointing out that the moving party has not met its burden does not give the moving party a second bite at the apple. *Id.* Instead, it alerts the Court that the party has failed to meet a burden. *Id.*

The ACLP Defendants failed to meet their burden, and only submitted arguments and evidence after FoL had responded. Pointing this out was not an open invitation to meet their burden but a notification to the Court that the ACLP Defendants did not meet the burden assigned to them. Accordingly, FoL requests that the Court strike these untimely arguments and exhibits.

### B.     The ACLP Defendants Are Trying To Expand The Court's Page Limitations.

The ACLP Defendants' attempt to introduce evidence that they did not submit in their motion contravenes the limitations the Court set on briefing this issue. The Court limited the briefing on this issue to a ten-page motion, ten-page response, and five-page reply. By not meeting

their burden in the motion and then suggesting that FoL should simply submit a sur-reply, ACLP is attempting to force this Court to expand its previously ordered limitation.  The ACLP Defendants cannot break the rules and then unilaterally decide that the solution is to have FoL submit a sur-reply.

This is the exact type of gamesmanship in motions practice that the Court in *Price* spoke of.  Rather than meeting the page limitations set by the Court, the ACLP Defendants raised the threshold question of enforceability in their reply and attempted to force FoL to file a sur-reply that FoL has not requested and the Court has not ordered.  This is gamesmanship that contravenes the Court's order and defies the customary rule that a moving party must meet its burden in its moving papers, not reply.

        **C.**     **The ACLP Defendants Are Misleading The Court.**

The alleged evidence is misleading and irrelevant.  To support their waiver claim, the ACLP Defendants attached e-mails between Jonathan Gazdak (a managing director at AC) and Pete DiChiara (an attorney).  (Ex. B).  These e-mails concern revisions to the engagement agreement between FoL and AC.  (Id.).  The ACLP Defendants contend that these e-mails are evidence that FoL knowingly and voluntarily waived its constitutional right by having FoL's attorney—Pete DiChiara—negotiate the terms of the engagement agreement with AC.  (Ex. B).  There are three problems with these e-mails.

First, Pete DiChiara was not FoL's attorney at this time.  FoL had not met Pete DiChiara before these e-mails were exchanged.  Mr. Landis was not even introduced to Mr. DiChiara until weeks after the e-mails in Exhibit B were exchanged.  And FoL has proof. Exhibit 1 to this motion is an e-mail chain where Tim Kelly, business partner of Alexander Capital's agent Frank DiMartini, introduces Mr. Landis to Pete DiChiara.  (Ex. 1).  This exchange happened on November 20, 2017—nearly a month after the engagement agreement between FoL and AC was signed.  An attorney cannot be said to represent someone he has never met.

Second, the ACLP Defendants present the e-mails in Exhibit B to the Court as though Mr. Gazdak was sending the engagement agreement to both FoL and FoL' attorney Mr. DiChiara at the same time, but that never happened. This is misleading.

The first page of Exhibit B appears to be an e-mail from Jonathan Gazdak to both Mr. DiChiara and Floyd Landis. (Ex. B at 1). Mr. Gazdak incorrectly addressed the e-mail to Mr. Landis, and Mr. Landis did not receive it. (Id.) (e-mail addressed to floyds@floydsofleadville.com, not floyd@floydsofleadville.com). The next page in Exhibit B is an e-mail that was sent to the correct address but does not copy Mr. DiChiara. (Ex. B at 2). By attaching these e-mails without explaining that the first e-mail was not delivered to Mr. Landis, the ACLP Defendants gave a false impression that implies that the draft engagement agreement was sent to FoL and its counsel at the same time. That is not true. Mr. Landis never received the e-mail that copied Mr. DiChiara. Once Mr. Gazdak figured out that the e-mail had not been delivered, he sent a new e-mail only to Mr. Landis, (Ex. B at 2), and ACLP never notified Mr. Landis that AC had sent this draft engagement agreement to Mr. DiChiara.

Third, some of the e-mail negotiations in the emails occurred after the engagement agreement was signed. The ACLP Defendants submitted misleading Exhibit B to the Court to create the appearance that the engagement agreement was negotiated between AC and FoL's alleged attorney Pete DiChiara. Some of the e-mails with redlines of the engagement agreement are from November 17, 2017, nearly *a month after the agreement was signed*. (Ex. B at 21, 44-56). And the e-mails showing revisions to the engagement agreement are exclusively between Jonathan Gazdak and Pete DiChiara. (Ex. B at 30-56). They are not evidence that FoL negotiated the terms of the engagement agreement.

Rather than reflecting a negotiation and exchange between AC and FoL's attorney, these e-mails were *between AC and AC's own attorney*. Prior to his engagement with FoL, Mr. DiChiara had represented AC in multiple securities offerings. He continued to represent AC after his engagement with FoL. Mr. DiChiara even represented Mark Leonard, another defendant in this case, in transactions involving both Mr. Leonard and FoL after representing FoL. Although it is

almost never clear who Mr. DiChiara is representing, it is clear than he did not represent FoL in these exchanges because FoL because FoL did not meet him until November 20, 2017. But the ACLP Defendants do not disclose this to the Court and do not disclose that Mr. DiChiara represented AC.

The bottom line is that e-mails between Mr. Gazdak and Mr. DiChiara is not evidence of contractual negotiations when Mr. DiChiara had not been engaged to represent FoL.[1] If these e-mails reflect anything, they reflect that the ACLP Defendants were revising the engagement agreement with their own attorney before AC agents Frank DiMartini and Tim Kelly referred FoL to that attorney without disclosing the significant conflict of interest.

## III. CONCLUSION

The ACLP Defendants have improperly raised evidence on reply. Their solution contravenes this Court's limitations on briefing this issue. And the evidence they submit is misleading and irrelevant.

WHEREFORE, FoL respectfully requests that the Court strike Exhibits B and C and Section I of the ACLP Defendants' reply. FoL has conferred with the ACLP Defendants, who oppose this relief.

DATED: February 19, 2025

Respectfully submitted,

/s/ Daniel J. Vedra
Daniel J. Vedra
Vedra Law LLC
1444 Blake Street
Denver, CO 80202
Phone: (303) 937-6540
Fax: (303) 937-6547
Email: dan@vedralaw.com

---

[1] Mr. DiChiara back-dated his engagement agreement with FoL perhaps to make it appear that he was representing FoL while drafting transaction documents for the offering.

**CERTIFICATE OF SERVICE**

    I hereby certify that on the date first written above the foregoing was served CM/ECF on all parties of record:

/s/ Daniel J. Vedra  
Daniel J. Vedra
