UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FLOYD'S OF LEADVILLE, INC., N/K/A VALUED, INC, <br><br>                      Plaintiff, <br><br> v. <br><br> ALEXANDER CAPITAL, L.P., et al., <br><br>                      Defendants. | 22 Civ. 3318 (DEH) <br><br> OPINION AND ORDER |

DALE E. HO, United States District Judge:

Before the Court are: (1) a Motion to Strike Plaintiff's Jury Demand ("Defs.' Mot. to Strike"), ECF No. 252, filed by Defendants Alexader Capital, L.P. ("Alexander Capital"), NESA Management, LLC ("NESA Management"), Joseph Amato, Rocco Guidicipietro, and Jonathan Gazdak (collectively, the "ACLP Defendants"); and (2) Plaintiff Floyd's of Leadville, Inc.'s ("Floyd's" or "FOL") Motion to Strike portions of the ACLP Defendants' Reply in Support of their Motion to Strike Plaintiff's Jury Demand (ECF No. 254) and various exhibits attached to it, ECF No. 260.  For the reasons set forth below, Defendants' Motion to Strike the Jury Demand is **GRANTED IN PART and DENIED IN PART**, and Plaintiff's Motion to Strike is **DENIED** as moot.

### BACKGROUND

The Court assumes familiarity with the background facts of this case, which are discussed more fully in a previous opinion denying Defendant Ronald Barrie Clapham's Motion to Dismiss. *See Floyd's of Leadville, Inc. v. Alexander Cap., LP*, No. 22 Civ. 3318, 2023 WL 6198666, at *1-2 (S.D.N.Y. Sep. 22, 2023) (Vyskocil, J.).[1]  As relevant here,

---

[1] This case was subsequently reassigned to the undersigned on October 13, 2023.

> [b]eginning in 2017, FOL and Alexander Capital were engaged in an agreement by which Alexander Capital acted as FOL's fiduciary and financial advisor and solicited investors to provide capital for FOL, for which Alexander Capital earned a commission. Compl. ¶¶ 23, 26–28. Ultimately, Alexander Capital raised over $4 million in capital for FOL from over fifty investors, including investors based in New York. Compl. ¶ 30.

*Id.* at *1.

Section 10 of the parties' Engagement Agreement provides: "The parties hereby expressly waive all rights to trial by jury in any suit, action or proceeding arising under this Agreement." Compl. Ex. 1, Engagement Agreement § 10, ECF No. 1-1 ("Engagement Agreement"). On the basis of that provision, the ACLP Defendants seek to strike Floyd's' jury demand with respect to all claims asserted against them.

## LEGAL STANDARD

The Seventh Amendment right to a jury trial "can only be relinquished knowingly and intentionally." *Sullivan v. Ajax Navigation Corp.*, 881 F. Supp. 906, 910 (S.D.N.Y. 1995) (citation omitted). A party seeking to strike a jury demand bears the burden of proof to overcome the presumption against the waiver of this "fundamental" right. *Id*. In deciding a motion to strike a jury demand, courts evaluate the "negotiability of the contract terms, disparity in bargaining power between the parties, the business acumen (or rather, lack thereof) of the party opposing the waiver, and the conspicuousness of the jury waiver provision." *Id*. at 911 (collecting cases). "When the criteria outlined above have been met, the waiver has been deemed enforceable." *Morgan Guar. Trust Co. v. Crane*, 36 F. Supp. 2d 602, 604 (S.D.N.Y. 1999).

## DISCUSSION

The ACLP Defendants' Motion to Strike the jury demand raises two issues: (1) whether the jury trial waiver in the Engagement Agreement between the parties is valid and enforceable; and (2) if so, whether it encompasses (a) NESA Management; and (b) all claims against the ACLP defendants rather than just the breach of contract claim. The Court addresses each issue in turn.

2

I. **Validity of the Waiver**

In their opening brief, the ACLP Defendants addressed the scope but not the validity of the jury waiver, stating that "[a]s ACLP Defendants understand it, Plaintiff's issue is with the applicable scope, not the enforceability, of the jury trial waiver provision." Defs.' Mot. to Strike at 3. In its opposition, however, FOL challenges the validity itself of the waiver provision, stating that "[t]he ACLP Defendants . . . have failed to produce any evidence—let alone sufficient evidence—to meet their burden" of establishing that Floyd's actually waived its right to a jury. Pl.'s Resp. in Opp. to Mot. to Strike ("Pl.'s Opp.") at 3, ECF No. 253.

But the validity of the jury trial waiver can be ascertained from the record before the Court as of the time that the ACLP Defendants made their motion to strike. The Engagement Agreement is attached to the original Complaint, *see* ECF No. 1-1, and its plain terms, combined with the allegations in the operative complaint, the First Amended Complaint, ECF No. 165 ("FAC"), are sufficient to find the relevant factors establishing waiver.

First, as to negotiability, the FAC alleges that the Engagement Agreement "constitutes a valid and binding contract under New York law." FAC ¶ 272. That allegation indicates a concession by Plaintiff that the terms of the Engagement Agreement were "the product and codification of a mutual understanding between the parties," *Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18 Civ. 5075, 2022 WL 1515120, at *2 (S.D.N.Y. May 13, 2022). Indeed, there is "no indication that the terms of the [Engagement Agreement] were not negotiable." *Morgan Guar. Trust Co.*, 36 F. Supp. at 604.

Second, as to the parties' relative bargaining power, Plaintiff is a corporation, and therefore should not "be a stranger to contract negotiations." *American Equities Group, Inc. v. Ahava Dairy Products Corp.*, No. 01 Civ. 5207, 2007 WL 4563487, at *3 (S.D.N.Y. Dec. 18, 2007) (internal quotation marks omitted) (quoting *Orix Credit Alliance, Inc. v. Better Built Corp.*, 1990 WL

3

96992, at *2 (S.D.N.Y. July 2, 1990)).  And even if there were "clearly a difference in bargaining power between the sides," that alone would not be enough to defeat waiver where, as here, the other factors supporting waiver are met.  *Morgan Guar. Trust Co.*, 36 F. Supp. 2d at 604.

Third, with regard to the business acumen of Floyd's as the party opposing the waiver, the FAC alleges that it was "a fledgling CBD company," but it also alleges that Floyd's had "considerable long-term prospects" and was privately "valued as worth more than $150 million." Compl. ¶ 1.  There is nothing to suggest that such a purportedly profitable enterprise lacked the necessary business acumen to enter into a binding agreement.  *Cf. Morgan Guar. Trust Co.*, 36 F. Supp. 2d at 604 (parties seeking waiver were business executives experienced with "sophisticated business transactions").

And finally, as to conspicuousness of the waiver, Section 10 of the Engagement Agreement covers litigation procedures and is titled "<u>Governing Law; Jurisdiction; Waiver of Jury Trial</u>," and appears <u>underlined</u>.  The waiver provision itself appears in the same size and style font as the rest of the text in that paragraph.  This is enough to establish conspicuousness for purposes of waiver. *See American Equities Group, Inc.*, 2007 WL 4563487, at *3 (finding that the waiver in that contract was "sufficiently conspicuous" where it was "in the same font and size as all other provisions").

In sum, weighing the relevant factors, the Court concludes that, on balance, they support a finding that the waiver of jury trial provision of the Engagement Agreement is valid and enforceable.[2]

---

[2] In reaching this conclusion, the Court does not rely on the portions of the Reply brief, or on the exhibits attached to it, that are the subject of Plaintiff's motion to strike.  That motion is therefore **DENIED AS MOOT**.  In any event, the Court notes that it rejects Plaintiff's contention that the ACLP Defendants inappropriately raised new arguments regarding the validity of the waiver for the first time on Reply.  The ACLP Defendants did not address that issue in their opening brief because they believed that Plaintiff was not contesting the validity of

## II. Scope of the Waiver

Having determined that the jury trial waiver is enforceable, the Court now turns to the provision's scope.

### A. Parties

The parties dispute whether the jury trial waiver applies to Defendant NESA Management. Floyd's asserts that "[t]he ACLP Defendants do not offer any explanation as to why [Floyd's] is not entitled to a jury trial against NESA Management." Opp. at 9. But that is not correct. Generally speaking, nonsignatory agents of a signatory corporation may invoke a valid contractual jury waiver provision. *See Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 707 (S.D.N.Y. 2011) (citing *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007)). Here, Plaintiff brings claims against NESA Management as "a partner of Alexander Capital," FAC ¶ 6, and alleges "liab[ility] jointly and severally for all obligations of the partnership" against all of the ACLP Defendants, *id.* at 3 n.2. Under Delaware law, "[e]ach partner is an agent of the partnership for the purpose of its business, purposes or activities." 6 Del. C. § 15-301(1). Accordingly, the Court concludes that the jury trial waiver provision in the Engagement Agreement between Floyd's and Alexander Capital applies to NESA Management.

### B. Claims

Next, the parties dispute whether the jury trial waiver provision is limited only to Floyd's' breach of contract claim, or if it applies to all of its claims against the ACLP Defendants. By its terms, the waiver applies to claims "arising under" the Engagement Agreement. Engagement

---

the waiver, only its scope. *See* Mot. to Strike at 3. The ACLP Defendants then properly raised arguments regarding the validity of the waiver on reply in response to points made by Plaintiff in its Opposition. *Compare* Pl.'s Opp. at 3-5, ECF No. 253 *with* ACLP Defs.' Reply at 1-2, ECF No. 254. This does not constitute inappropriate sandbagging.

Agreement § 10.  The question here is whether this language extends beyond claims for breach of the Agreement itself, to encompass Floyd's' various other statutory and tort claims against the ACLP Defendants.  The Court concludes that is does not.

The Second Circuit's decision in *Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2d Cir. 2007) controls here.  There, the Circuit explained that:

> [t]o "arise out of" means "to originate from a specified source," Webster's Third New International Dictionary 117 (1981), and generally indicates a causal connection.
>
> We do not understand the words "arise out of" as encompassing all claims that have some possible relationship with the contract, including claims that may only "relate to," be "associated with," or "arise in connection with" the contract.

*Id.* at 389 (internal citations omitted); *see also In re MF Glob. Inc.*, 478 B.R. 611, 621 (Bankr. S.D.N.Y. 2012) (observing that the phrase "arising under" "is narrower" than the phrase "arising out of or relating to," and "does not sweep tort claims within its ambit").  The Second Circuit then turned to the question whether, for purposes of construing a forum selection clause, the plaintiff's copyright claims "arose out" of the recording contract at issue.  It concluded that they did not, reasoning that the plaintiff did "not rely on the recording contract to establish his ownership of the relevant copyrights, but on his authorship of the work, a status afforded him as the composer who translates an idea into a fixed, tangible musical expression entitled to copyright protection." *Phillips*, 494 F.3d at 390.

Applying the reasoning of *Phillips*, the Court concludes that the jury waiver provision does not encompass the remainder of Floyd's' claims against the ACLP Defendants.  The ACLP Defendants have not established that, in bringing these claims—which include fraud (Count One), securities fraud (Count Three), violation of the Investment Advisers Act (Count Four), breach of fiduciary duty (Count Six), conversion (Count Nine), and civil conspiracy (Count Twelve)—

6

Floyd's "relies on" the Engagement Agreement, such that these claims can be said to "arise out of it." *Id.* at 390.

In reaching this conclusion, the Court relies in part on the Supreme Court's guidance that "a waiver of constitutional rights in any context must, at the very least, be clear." *Fuentes v. Shevin*, 407 U.S. 67, 95 (1972). "[A]ny such waiver must be made 'voluntarily, knowingly, and intelligently,'" and "[t]he waiver must be established by 'clear and compelling' evidence." *Legal Aid Society v. City of New York*, 114 F.Supp.2d 204, 226–27 (S.D.N.Y. 2000) (first quoting *Doe v. Marsh*, 105 F.3d 106, 111 (2d Cir. 1997); then quoting *Curtis Publishing Co. v. Butts*, 338 U.S. 130, 145 (1967)). "[C]ourts must indulge every reasonable presumption against waiver of fundamental constitutional rights." *Doe*, 105 F.3d at 111 (internal citation omitted). Here, in light of that heavy presumption against waiver, the Court cannot conclude that the waiver provision clearly applies to Floyd's' non-breach of contract claims.

## CONCLUSION

For the reasons discussed above, ACLP Defendants' Motion to Strike the Jury Demand is **GRANTED IN PART and DENIED IN PART.** Specifically, the ACLP Defendants' Motion to Strike Plaintiff's Jury Demand is granted as to the breach of contract claim against all ACLP Defendants, including NESA Management. The motion is denied as to all other claims.

Floyd's' motion to strike certain portions of the ACLP Defendants' reply brief, and various exhibits attached to it, is **DENIED** as moot.

The Clerk of Court is directed to terminate ECF Nos. 252 and 260.

SO ORDERED.

Dated: February 5, 2026

New York, New York

DALE E. HO

United States District Judge