**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, <br><br> Plaintiff, <br><br> -against- <br><br> HUDSON EXCESS INSURANCE COMPANY and STEADFAST INSURANCE COMPANY, <br><br> Defendants. | Case No. 1:24-cv-01523-DEH-BCM <br><br> **LOCAL RULE 56.1** <br> **STATEMENT OF MATERIAL** <br> **<u>FACTS</u>** |

Plaintiff, The Travelers Indemnity Company of Connecticut ("Travelers"), submits the following Statement of Material Facts pursuant to Local Civil Rule 56.1:

**<u>The Policies</u>**

1.      Travelers issued to Notias Construction, Inc. ("Notias") a policy of commercial general liability insurance bearing policy number DT-CO-3D606311-TCT-20 with effective dates of July 31, 2020 to July 31, 2021 (the "Travelers Policy"). *See* Declaration of Nicholas J. Prevete dated December 11, 2024 ("Prevete Dec."), **Ex. 1**.

2.      Subject to its terms and conditions, the Travelers Policy provides coverage for bodily injury that takes place during the policy period and is caused by an accident. *See generally* Prevete Dec., **Ex. 1**.

3.      The Travelers Policy contains "other insurance" provisions that provide that coverage under the Travelers Policy is excess over "[a]ny of the other insurance, whether primary, excess, contingent or on any other basis, that is available to the insured when the insured is an additional insured, or is any other insured that does not qualify as a named insured, under such other insurance." Prevete Dec., **Ex. 1** at TRV000102.

4.      Defendant Hudson Excess Insurance Company ("Hudson") issued to Jind

Contractors Inc. ("Jind") a policy of commercial general liability insurance bearing policy number HXMP102882 with effective dates of June 6, 2020 to June 6, 2021 (the "Hudson Policy"). *See* Declaration of Lisa Szczepanski dated December 13, 2024 ("Szczepanski Dec."), **Ex. 2**.

5.      Subject to its terms and conditions, the Hudson Policy provides coverage for bodily injury that takes place during the policy period and is caused by an accident. *See generally* Szczepanski Dec., **Ex. 2**.

6.      The Hudson Policy provides, in part, as follows:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

Szczepanski Dec., **Ex. 2** at HUD 0011.

7.      The Hudson Policy contains the following definitions:

> **16.** "Products-completed operations hazard":
>
> **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
> **(1)** Products that are still in your physical possession; or
>
> **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
>
>> **(a)** When all of the work called for in your contract has been completed.
>>
>> **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
>>
>> **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

[…]

**22.** "Your work":

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"' and

        **(2)** The providing of or failure to provide warnings or instructions.

Szczepanski Dec., **Ex. 2** at HUD 0025-6.

8.      The Hudson Policy contains endorsement CG 20 37 04 13 entitled "ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS" (the "Hudson AI Endorsement"), which provides, in part, as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| As required by written contract. | As required by written contract. |

3

|  |  |
|---|---|
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

Szczepanski Dec., **Ex. 2** at HUD 0039.

9. The Hudson Policy provides, with respect to "other insurance," in part, as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft,

4

"autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

Szczepanski Dec., **Ex. 2** at HUD 0021.

10.     The Hudson Policy contains endorsement HXMG 138 04 15 entitled "PRIMARY AND NON-CONTRIBUTING INSURANCE WHERE REQUIRED BY WRITTEN CONTRACT(S) ENDORSEMENT" (the "Hudson Priority Endorsement"), which provides, in part, as follows:

**d.** Where you are specifically required by a written contract to provide insurance that is primary and non-contributory and the written contract so requiring is executed by you before any "occurrence" or offense, this insurance will be primary and the other insurance will not contribute with this insurance, but only if and to the extent required by that written contract.

Szczepanski Dec., **Ex. 2** at HUD 0063.

11.     Defendant Steadfast Insurance Company ("Steadfast") issued to Kiska Solutions, Inc. ("Kiska") a policy of commercial general liability insurance bearing policy number EOL0662898-01 with effective dates of September 4, 2020 to September 4, 2021 (the "Steadfast Policy"). *See* Szczepanski Dec., **Ex. 3**.

12.     Subject to its terms and conditions, the Steadfast Policy provides coverage for bodily injury that takes place during the policy period and is caused by an accident. *See generally* Szczepanski Dec., **Ex. 3**.

13.     The Steadfast Policy provides, in part, as follows:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization

5

qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

Szczepanski Dec., **Ex. 3** at STEADFAST000413.

14.    The Steadfast Policy contains the following definitions:

**16.** "Products-completed operations hazard":

    **a.**  Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)**  Products that are still in your physical possession; or

        **(2)**  Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            **(a)**  When all of the work called for in your contract has been completed.

            **(b)**  When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            **(c)**  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    […]

**22.** "Your work":

    **a.**  Means:

        **(1)**  Work or operations performed by you or on your behalf; and

        **(2)**  Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"' and

**(2)** The providing of or failure to provide warnings or instructions.

Szczepanski Dec., **Ex. 3** at STEADFAST000427-8.

15.    The Steadfast Policy contains endorsement U-GL-1175-F CW (04/13) entitled "Additional Insured – Automatic – Owners, Lessees Or Contractors" (the "Steadfast AI Endorsement"), which provides, in part, as follows:

This endorsement modifies insurance provided under the:
**Commercial General Liability Coverage Part**

**A.** Section **II – Who Is An Insured** is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf,

in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement.

[…]

**D.** For the purposes of the coverage provided by this endorsement:

**1.** The following is added to the Other Insurance Condition of Section **IV – Commercial General Liability Conditions:**

**Primary and Noncontributory insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured provided

7

that:

    **a.** The additional insured is a Named Insured under such other insurance; and

    **b.** You are required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured.

Szczepanski Dec., **Ex. 3** at STEADFAST000474-5.

16.    The Steadfast Policy provides, with respect to "other insurance," in part, as follows:

**a.  Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b.  Excess Insurance**

**(1)** This insurance is excess over:

    **(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

        **(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

        **(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

        **(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

        **(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury and Property Damage Liability.

    **(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

8

Szczepanski Dec., **Ex. 3** at STEADFAST0004274.

**The Jind Subcontract and Invoice**

17.     Notias, as Contractor, and Jind, as Subcontractor, entered into a Subcontract Agreement dated October 9, 2017 (the "Jind Subcontract") in connection with the modernization and renovation of the Hope East of Fifth Apartments, including 334 E. 112th St., New York, NY. *See* Szczepanski Dec., **Ex. 4** at HUD 0773, 806, 815; *see also* Prevete Dec., **Ex. 5** at TRV000765, 798, 807.

18.     Article 13 of the Jind Subcontract required Jind to purchase and maintain certain insurance, including:

> A.  Commercial General Liability (CGL) with limits of Insurance of not less than $1,000,000 each occurrence, $2,000,000 Annual Aggregate and $2,000,000 products completed operations aggregate. However, Subcontractor's insurance coverage shall apply for the full amount of any loss up to each respective policy limit of liability and shall not be limited to the minimum required limits of this Agreement. […]
> i.  If the CGL coverage contains a General Aggregate Limit, such General Aggregate shall apply separately to each product.
> ii. CGL coverage shall be written on ISO Occurrence form CG 00 01 1001 or a substitute form providing equivalent coverage and shall provide complete contractual liability coverage as well as cover liability arising from premises, operations, independent contractors, products-completed operations, and personal and advertising injury, and permit and provide for a waiver of subrogation for all Additional Insureds.
> iii. General Contractor, Owner and all other parties required of the General Contractor shall be included as Additional Insureds on the CGL, using ISO Additional Insured Endorsement CG 20 10 11 85 or CG 20 10 (10/01) AND CG 20 37 or CG 2038 04 13 AND CG 20 37 or an endorsement providing equivalent coverage to the Additional Insureds. A list of the required Additional Insureds is annexed hereto as **Attachment "1"**. Insurance for the Additional Insureds shall be as broad as the coverage provided for the named insured Subcontractor. It shall apply as primary and non-contributing insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the Additional Insureds. This Agreement may be amended from time-

to-time to include additional individuals and entities who may be required to be named as Additional Insureds on Subcontractor's relevant policies of insurance.

iv. Subcontractor shall maintain CGL coverage for itself and all Additional Insureds for the duration of the project and maintain Completed Operations coverage for itself and each additional insured for at least three (3) years after completion of the Work.

[…]

F. Certificates of Insurance in triplicate shall be furnished the Owner and Contractor by the Subcontractor and any of its subsubcontractors prior to commencement of Work detailing all insurance required of the Subcontractor and shall state Notias Construction, Inc., 29-10-120th Street, Flushing, New York 11354, and the other required Additional Insureds by name. <u>The insurance policy shall provide by its terms or by endorsement that the Subcontractor's insurance carrier shall provide Contractor shall be given thirty (30) days prior written notice of material change, cancellation, or non-renewal of coverage indicated therein by Certified Mail.</u>

*See* Szczepanski Dec., **Ex. 4** at HUD 0792, 794; *see also* Prevete Dec., **Ex. 5** at TRV000784, 786.

19.     Attachment 2 to the Jind Subcontract, entitled "Required Additional Insureds,"

provides, in part, as follows:

1.     NOTIAS CONSTRUCTION, INC.
       29-10 120th Street
       Flushing, NY 11354

2.   Hope East of Fifth LLC (Beneficial Owner)
     c/o Hope Community, Inc.
     174 East 104th St.
     New York, NY 10029

3.   Hope East of Fifth Housing Development Fund Company, Inc. (Title Holder)
     c/o Hope Community, Inc.
     174 East 104th St.
     New York, NY 10029

*See* Szczepanski Dec., **Ex. 4** at HUD 0807; *see also* Prevete Dec., **Ex. 5** at TRV000799.

20.     Pursuant to Article 13 of the Jind Subcontract, Jind produced a Certificate of

Liability Insurance to Notias, identifying the Hudson Policy, and containing the following

description:

> The coverage is broad enough to cover all the operations of the insured as per policy terms & conditions.
> Project Name: Hope East of Fifth Apartments
> Project Description: The modernization and renovation of approximately 506 multifamily residential units located across 39 buildings including certain interior and exterior common area work. Total Buildings SEE PAGE 2
> […]
> As required by written contract, coverage applies to the certificate holder and all named/listed
> Additional Insureds on a primary/non-contriutory basis, for both ongoing and completed operations, with a 30 days notice of cancellation or non-renewal (except 10 days for non-payment of premium). Premiums have been paid.
> The Following are included as Additional Insured's, as required by written contract:
> Hope East of Fifth LLC (Beneficial Owner)
> c/o Hope Community, Inc
> 174 East 104th St.
> New York, NY 10029
> Hope East of Fifth Housing Development Fund Company, Inc. (Title Holder)
> c/o Hope Community, Inc
> 174 East 104th St.
> New York, NY 10029
> […]
> Notias Construction, Inc
> 29-10 120th Street
> Flushing, NY 11354

*See* Szczepanski Dec., **Ex. 4** at HUD 0824-5; *see also* Prevete Dec., **Ex. 5** at TRV000816-7.

21.    Jind issued an invoice to Notias dated March 7, 2018 (the "Jind Invoice") for the following:

<u>Invoice 334E 112st</u>

1. Building Main entrance gate not in working condition
2. Door frame loose , new concrete poured to hold frame in place
3. Hinges were replaced as they were broken not allowing the door to open and close with ease
4. Primer and paint

11

*See* Szczepanski Dec., **Ex. 6**; *see also* Prevete Dec., **Ex. 7**.

**The Kiska Subcontract and Payment Application**

22.     Notias, as Contractor, and Kiska, as Subcontractor, entered into a Subcontract Agreement dated September 1, 2017 (the "Kiska Subcontract") in connection with the modernization and renovation of the Hope East of Fifth Apartments, including 334 E. 112th St., New York, NY. *See* Szczepanski Dec., **Ex. 8** at STEADFAST000346, 379, 389; *see also* Prevete Dec., **Ex. 9** at TRV001076, 1109, 1119.

23.     Article 13 of the Kiska Subcontract required Kiska to purchase and maintain certain insurance, including:

> A. Commercial General Liability (CGL) with limits of Insurance of not less than $1,000,000 each occurrence, $2,000,000 Annual Aggregate and $2,000,000 products completed operations aggregate. However, Subcontractor's insurance coverage shall apply for the full amount of any loss up to each respective policy limit of liability and shall not be limited to the minimum required limits of this Agreement. […]
> i.   If the CGL coverage contains a General Aggregate Limit, such General Aggregate shall apply separately to each product.
> ii.  CGL coverage shall be written on ISO Occurrence form CG 00 01 1001 or a substitute form providing equivalent coverage and shall provide complete contractual liability coverage as well as cover liability arising from premises, operations, independent contractors, products-completed operations, and personal and advertising injury, and permit and provide for a waiver of subrogation for all Additional Insureds.
> iii. General Contractor, Owner and all other parties required of the General Contractor shall be included as Additional Insureds on the CGL, using ISO Additional Insured Endorsement CG 20 10 11 85 or CG 20 10 (10/01) AND CG 20 37 or CG 2038 04 13 AND CG 20 37 or an endorsement providing equivalent coverage to the Additional Insureds. A list of the required Additional Insureds is annexed hereto as **Attachment "1"**. Insurance for the Additional Insureds shall be as broad as the coverage provided for the named insured Subcontractor. It shall apply as primary and non-contributing insurance before an other insurance or self-insurance, including any deductible, maintained by, or provided to, the Additional Insureds. This Agreement may be amended from time-to-time to include additional individuals and entities who may be

required to be named as Additional Insureds on Subcontractor's relevant policies of insurance.

iv. Subcontractor shall maintain CGL coverage for itself and all Additional Insureds for the duration of the project and maintain Completed Operations coverage for itself and each additional insured for at least three (3) years after completion of the Work.

[…]

F. Certificates of Insurance in triplicate shall be furnished the Owner and Contractor by the Subcontractor and any of its subsubcontractors prior to commencement of Work detailing all insurance required of the Subcontractor and shall state Notias Construction, Inc., 29-10-120th Street, Flushing, New York 11354, and the other required Additional Insureds by name. <u>The insurance policy shall provide by its terms or by endorsement that the Subcontractor's insurance carrier shall provide Contractor shall be given thirty (30) days prior written notice of material change, cancellation, or non-renewal of coverage indicated therein by Certified Mail.</u>

*See* Szczepanski Dec., **Ex. 8** at STEADFAST000365-6; *see also* Prevete Dec., **Ex. 9** at TRV001095-6.

24.    Attachment 2 to the Kiska Subcontract, entitled "Required Additional Insureds," provides, in part, as follows:

1.    NOTIAS CONSTRUCTION, INC.
29-10 120th Street
Flushing, NY 11354

2.    Hope East of Fifth LLC (Beneficial Owner)
c/o Hope Community, Inc.
174 East 104th St.
New York, NY 10029

3.    Hope East of Fifth Housing Development Fund Company, Inc. (Title Holder)
c/o Hope Community, Inc.
174 East 104th St.
New York, NY 10029

*See* Szczepanski Dec., **Ex. 8** at STEADFAST000380.

25.    Kiska submitted an application and certificate for payment to Notias dated February 28, 2019 (the "Kiska Payment Application") in connection with the Hope East of Fifth Apartments

13

project. *See* Prevete Dec., **Ex. 9** at TRV001072-4.

26.     The Kiska Payment Application lists "334 E112 St" as one of the addresses where work was performed, and indicates that materials and labor in connection with the keyfob system was 100% complete at that time. *See* Prevete Dec., **Ex. 9** at TRV001073.

**The Incident and Underlying Action**

27.     Anabel Rebollar ("Claimant") alleges she was injured on October 3, 2020 by the entry system/lock on the metal gateway that borders the north side of the premises located at 334 E. 112th St., New York, NY. *See* Szczepanski Dec., **Ex. 11** at ¶¶ 3, 13; see also **Ex. 17** at ¶¶ 61, 72, 83-5, 87, 89.

28.     On February 3, 2021, Claimant filed a lawsuit against Hope East of Fifth Housing Development Fund Company, Inc., Hope East of Fifth LLC, and Hope Community, Inc. in the Supreme Court of the State of New York, County of New York, Index No. 151176/2021 (the "Underlying Action"), seeking damages as a result of Claimant's alleged accident. *See* Szczepanski Dec., **Ex. 10**.

29.     On November 18, 2021, Hope East of Fifth Housing Development Fund Company, Inc., Hope East of Fifth LLC, and Hope Community, Inc. commenced a third-party action against Notias and Jind Construction Inc. for common law indemnification, contribution, contractual indemnification, and breach of contract in the Underlying Action. *See* Szczepanski Dec., **Ex. 12**.

30.     On February 10, 2022, Claimant filed a lawsuit against Notias and Jind Construction Inc. in the Supreme Court of the State of New York, County of New York, Index No. 151263/2022 (the "Second Action"), seeking damages as a result of Claimant's alleged accident. *See* Szczepanski Dec., **Ex. 13**.

31.     On or about July 6, 2022, the Second Action was consolidated with the Underlying

14

Action. *See* Szczepanski Dec., **Ex. 14**.

32.     On February 16, 2023, Hope East of Fifth Housing Development Fund Company, Inc., Hope East of Fifth LLC, and Hope Community, Inc. commenced a second third-party action against Kiska and Jind for common law indemnification, contribution, contractual indemnification, and breach of contract in the Underlying Action. *See* Szczepanski Dec., **Ex. 15**.

33.     On March 14, 2023, Claimant amended her Complaint in the Underlying Action to add Jind as a direct defendant. *See* Szczepanski Dec., **Ex. 16**.

34.     On April 16, 2023, Claimant amended her Complaint in the Underlying Action to add Kiska as a direct defendant. *See* Szczepanski Dec., **Ex. 17**.

35.     In the Underlying Action, Claimant alleges causes of action against Hope East of Fifth Housing Development Fund Company, Inc., Hope East of Fifth LLC, Hope Community, Inc., Notias, Jind, Kiska, and Jind Construction Inc. sounding in negligence. *See* Szczepanski Dec., **Ex. 17** at ¶¶ 88-90; *see also* **Ex. 11** at ¶ 4.

36.     In the Underlying Action, Claimant alleges the underlying defendants, their agents, servants, employees, contractors, and/or subcontractors were negligent in, *inter alia*, "failing to provide an appropriate means of ingress, egress, entrance and/or exit at said premises;" "failing to maintain the equipment, locks and/or entry system on, at, and/or appurtenant to the premises;" and "negligently maintaining the equipment locks and/or entry system on, at, and/or appurtenant to the premises[.]" Szczepanski Dec., **Ex. 17** at ¶ 89.

37.     Photographs marked as exhibits in the Underlying Action depict the subject metal gateway (*see* Szczepanski Dec., **Ex. 18**, p. 1 [Exhibit A]), the entry system/lock on the metal gateway (*see id*., p. 2 [Exhibit B]), and the piece of metal that allegedly detached and struck Claimant (*see id*., p. 3 [Exhibit C]).

38. Discovery in the Underlying Action is ongoing and dispositive motion practice has not begun. *See* Prevete Dec. at ¶ 6.

**Tenders to Hudson**

39. By correspondence dated March 25, 2022, Travelers demanded additional insured coverage for Notias under Jind's insurance policies. *See* Prevete Dec., **Ex. 19**.

40. By correspondence dated April 18, 2022, Travelers retendered the defense and indemnity of Notias to Jind. *See* Szczepanski Dec., **Ex. 20**.

41. By correspondence dated May 20, 2022 Travelers tendered the defense and indemnity of Notias to Hudson. *See* Prevete Dec., **Ex. 21** at TRV001471-2.

42. By correspondence dated June 23, 2022, Travelers requested a response to its tenders on behalf of Notias. *See* Prevete Dec., **Ex. 21** at TRV001471.

43. By correspondence dated August 2, 2022, Travelers again requested a response to its tenders on behalf of Notias. *See* Prevete Dec., **Ex. 21** at TRV001470-1.

44. By correspondence dated September 7, 2022, Travelers again requested a response to its tenders on behalf of Notias. *See* Prevete Dec., **Ex. 21** at TRV001470.

45. By correspondence dated May 2, 2023, Travelers retendered the defense and indemnity of Notias to Hudson. *See* Prevete Dec., **Ex. 21** at TRV001469.

46. By correspondence dated July 11, 2023, Travelers again retendered the defense and indemnity of Notias to Hudson. *See* Prevete Dec., **Ex. 21** at TRV001469.

47. By correspondence dated February 6, 2024, Travelers' counsel demanded additional insured coverage for Notias under the Hudson Policy. *See* Szczepanski Dec., **Ex. 23**.

48. Hudson has not responded to Travelers' tenders. *See* Prevete Dec. at ¶ 17.

49. Hudson has not assumed or contributed to the defense of Notias in the Underlying

16

Action. *See* Prevete Dec. at ¶ 18.

**Tender to Steadfast**

50.    By correspondence dated November 14, 2023, Travelers demanded additional insured coverage for Notias under Kiska's insurance policies. *See* Prevete Dec., **Ex. 19**.

51.    By correspondence dated February 6, 2024, Travelers' counsel demanded additional insured coverage for Notias under the Steadfast Policy. *See* Szczepanski Dec., **Ex. 23**.

52.    Steadfast has not responded to Travelers' tenders. *See* Prevete Dec. at ¶ 21.

53.    Steadfast has not assumed or contributed to the defense of Notias in the Underlying Action. *See* Prevete Dec. at ¶ 22.

54.    Travelers has been providing and continues to provide a defense to Notias in the Underlying Action. *See* Prevete Dec. at ¶¶ 2, 4.

55.    Travelers has incurred and continues to incur costs associated with the defense of Notias in the Underlying Action. *See* Prevete Dec. at ¶ 5.

56.    To date, Travelers has incurred costs associated with the defense of Notias totaling approximately $48,866.11. *See* Prevete Dec. at ¶ 5.

Dated:  New York, New York
        December 13, 2024

USERY & ASSOCIATES


 /s/Lisa Szczepanski
By:    Lisa Szczepanski
       *Attorneys for The Travelers Indemnity Company of Connecticut*
       Mailing Address:
       P.O. Box 2996
       Hartford, CT 06104
       T. (917) 778-6680
       F. (844) 571-3789
       E. lszczepa@travelers.com

17